Kimberlee A. Rode (State Bar No. 186132)
Law Office of Kimberlee A. Rode
9284 Jackson Road
Sacramento, CA  95826
Telephone: (916) 417-4564
Facsimile: (916) 244-7006

Attorney for Plaintiff Shaunn A. Fullmer

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shaunn A. Fullmer,<br><br>            Plaintiff,<br><br>      and<br><br>JPMorgan Chase Bank, NA., as successor and/or acquirer of assets and liabilities to/from Washington Mutual Bank  and LENDER DOE ONE and OneWest Bank, FSB as successor by acquisition of Indymac Federal Bank and LENDER DOE TWO<br><br>            Defendants | Case No.:  2:09-cv-01037-GEB-JFM<br><br>OPPOSITION TO MOTION TO DISMISS BY ONEWEST BANK<br><br>[FRCP Rule 12(b)(6)]<br><br>Date:    October 15, 2009<br>Time:    11:00 a.m.<br>Ctrm:    26<br>Judge:  Hon. John F. Moulds |

Plaintiff, Shaunn A. Fullmer, through his attorney, file this opposition in response to Defendant's

Motion to Dismiss the Plaintiff's Complaint, and state:

## I. INTRODUCTION

In an extremely general and conclusory fashion, not based on any facts in this case,

Defendant OneWest attempts to characterize Plaintiff as one of many consumers who have defaulted on their

loan and is attempting to "utilize the resources of this court" for the purposes of evading his contractual and

statutory obligations.  While it may sound good in their introduction, it is just not true and more importantly

points out that OneWest has unclean hands in their request because this complaint is really about OneWest

failing to meet their statutory and contractual obligations and the subsequent default by Plaintiff is directly

related to OneWest's failure to do that which they were legally obligated to do.  This complaint would have never existed had OneWest and their investor responded to the requests of Plaintiff.

Despite the statement by OneWest that they believe Plaintiff is attempting to seek the subject property free and clear, neither Plaintiff nor OneWest can truly represent to the Court with a straight face that would be fair or equitable.  OneWest confuses Plaintiff's attempt to plead all possible remedies as stated in the statutory scheme with what is fair and equitable.  Had OneWest engaged in any meaningful discussion and response to the requests of Plaintiff, which they were required to do under his requests under RESPA and the Truth In Lending Act, they could properly represent to the Court what the Plaintiff wants.  Plaintiff represents to the Court in clear and unequivocal terms, Plaintiff does not believe that it would be a fair or equitable result to obtain the subject property free and clear of all liens.

Further, OneWest concludes that this court and other courts have rejected similar attempts as that of the Plaintiff in this case.  Again, this sounds good but is not fact based.  In fact, in a similarly drafted complaint by counsel for a different Plaintiff, this court has upheld similar claims of Plaintiff, see <u>Parveen A. Lal and Jodi L. Wright v. American Home Mortgage Servicing</u>, Case No. 2:09-CV-01585-MCE-DAD (E.D. Cal. 2009) filed September 24, 2009, which proves the claim of OneWest is without merit as the court upheld most of the causes of action such as those of this Plaintiff in a similar Motion to Dismiss.

Plaintiff requests that the court not lose sight that despite the attempted deflection by OneWest that this case is about a default of the borrower that it is factually about One West's failure to meet their statutory and contractual obligations and the subsequent default of Plaintiff is based on OneWest's failure to meet their obligations.

///

///

## II. CLARIFING POINTS RELATED TO BACKGROUND AND SUMMARY OF RELEVANT FACTS

OneWest has repeatedly claimed that Plaintiff filed this action after defaulting on his mortgage loan payments and raised this issue in an attempt to avoid foreclosure and receive a free home.

Factually, the letter demanding rescission was sent on January 14, 2009 (see Compl. Ex. C, Certificate of Mailing by United States Post Office).  Factually, Plaintiff made his payments timely up until the rescission letter was sent on January 14, 2009.  This is supported by OneWest's MTD on page 2, line 5, in which they assert, "On or about January 1, 2009, Plaintiff defaulted on the Loan."  Since the loan was not even contractually late warranting a late charge, stating the loan was in "default" is a major stretch.

Further, they claim the letter of Mortgage Litigation Consultants is a mere "form letter" without any factual support.  The letter is attached to the complaint (see Compl. Ex. C) and absent such factual basis, does not have any appearance of being a "form letter", even if that has any bearing.  Clearly, OneWest has one standard for itself and one for its customers.  Plaintiff is sure that all of the late notices and various letters that they send to their customers are "form letters" of which they expect has all of the full legal impact they intend to impart but because a consumer sends a "form letter" (which is factually disputed by Plaintiff), they get to treat it as "less" than a "non-form letter".  Plaintiff will let the court pass judgment on whether Exhibit C to the Complaint is a "form letter" and if that status as "form letter" allows the court to treat the letter as less than a "non-form letter."

As far as the status of OneWest, IndyMac, and the FDIC in relation to the complaint, it is an attempted shell game by OneWest.  The complaint clearly contends that OneWest is acting as an agent for the true lender (see Compl. ¶7), of which they have not disputed.  The complaint contends several factual allegations of agency.  Plaintiff sent the QWR to Indymac, the then current servicing agent of the true lender, and service of that correspondence on the servicing agent is service on the principal and vice versa under California agency law.  California Civil Code §2332 states:

> **As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other.**

As such, when OneWest took over the servicing of IndyMac, notice of the claims had been conveyed to Indymac, their predecessor, which imputed notice to the still unnamed principal, which also imputed notice to OneWest of the pending rescission, fair debt collection and RESPA claims.  The fact that Indymac was

under receivership by the FDIC does not negate all statutory requirements in the various statutes in Plaintiff's complaint.  In fact, it would be gross misconduct of the FDIC, as a receiver, to engage in a practice to merely ignore all statutory requirements in the collection of loan payments.  In fact, as contained in Exhibit A is the mortgage servicing web site of OneWest, which has their loan servicing operation as IndyMac Mortgage Services.

Furthermore, let's not let OneWest mislead the court, OneWest took on the same staff and operations of the servicing operation and has subsequently responded to several QWR's sent to Indymac that were pending.  The question, which cannot be answered in this MTD is:  Is an agent obligated to respond to a QWR sent to the previous servicing agent when they assumed all of the servicing functions pending?  Obviously, as they have done so in other cases (sample redacted responses are attached as Exhibit B), they certainly have and are capable of acting as they must.

As has been common by financial institutions in this mortgage crisis, they "cherry pick" all the benefits and "brush aside" all the detriment.  They certainly have no problem accepting that all of the "form letter" notices that were sent by Indymac were sufficient notice to foreclose on homes or to even continue a foreclosure started by Indymac and finished by OneWest.

Regardless, it is not a clear cut decision in a Motion to Dismiss to easily determine all of the rights of the parties based on the complaint filed and Defendants Motion to Dismiss considering the complex legal concepts of agency and notice.

## II.  APPLICABLE LEGAL STANDARD

Defendant contends that the Plaintiff's complaint fails to state a cause of action in which relief can be granted.  Generally, such requests are looked upon with disfavor and generally only appropriate when the Plaintiff can prove no set of facts supporting relief.  Guerrero v. Gates (9th Circuit 2005) 357 F3d 911, 916.  Said motions are rarely granted.  Gilligan v. Jamco Dev. Corp. (9th Circuit 1977) 108 F3d 246, 249.

Federal Rules of Civil Procedure 8(a)(2) require a Plaintiff to state a claim under liberal pleading requirements.

A complaint need only plead enough facts to state a claim to relief that is plausible on its face.  Bell Atlantic Corp. v. Twombly (2007) 550 US 544, 127 S Ct 1955, 167 L Ed2d 929, 949.

A complaint must contain sufficient allegations in the complaint to raise a right of relief above the speculative level.  Bell Atlantic Corp. v. Twombly (2007) 550 US 544, 127 S Ct 1955, 167 L Ed2d 929, 949.

### III.  Argument

### A.  OneWest Questions the Motive of Plaintiff in Filing the Action

Magically, OneWest has simply resolved the entire complaint by summarizing it that its only purpose is to avoid a non-judicial foreclosure and keep the property free and clear.  They characterize it simply that the "Plaintiff seeks to turn his default under the Loan to his advantage by obtaining an unjust windfall – ownership of the Property without an obligation to pay for it."

Despite this assertion, they offer not a single fact to support it but, as with all "magic", do so by pulling it out of the air.  The complaint contains several causes of action that are real, sustainable and require their own individual merit to be evaluated and such a summary is ridiculous.

More important, it assumes that Plaintiff believes the court and the Judge hearing the case are ignorant.  Plaintiff believes that the Court is objective, will look at the facts, apply the law and equity properly in the case and the Plaintiff does not believe as the Defendant has tried to theorize.

They go on to attack the motives of Mortgage Litigation Consultants.  Before addressing such an issue, let's first address the resources of OneWest, Indymac Bank and the FDIC.  All of those parties have legal departments staffed with an army of attorneys, they have compliance departments staffed with an army of experts and analysts all there for the purpose to mount an astronomical defense to any claim that can be asserted against them.  In addition, almost unlimited financial resources that is more than capable of writing out large checks to a variety of law firms to assist them in their legal objectives.  Out of this the Plaintiff has obtained assistance from Mortgage Litigation Consultants to review their loan transaction to ensure, as their own compliance department does, that the transaction complied with all Federal and State laws and doing so,

attempt to theorize about suspicious motives.  OneWest is the "Golliath" and the Plaintiff is the "David" who hired Mortgage Litigation Consultants to assist them.

Who is Mortgage Litigation Consultants?  Simply, it is David A. Pereira and OneWest's counsel and OneWest themselves are very familiar with him.  Why?  David A. Pereira was employed by OneWest's predecessor, IndyMac Bank, and in his role at IndyMac he was their Western Regional Manager of Compliance and had advanced to their Contract Disputes Manager.

While all of these allegations of something suspicious have no bearing on the case before this court.  Plaintiff was not delinquent at the time the rescission request was made and OneWest filed foreclosure after the complaint was filed.  It is highly unlikely that Plaintiff will even take steps to stop the foreclosure as the aggressive desires of OneWest to get to a foreclosure will merely become an issue for damages.

///

///

## B.  The issue of Tender under the Truth In Lending Act.

Much of OneWest's arguments rest on tender.  While they raise interesting arguments, the issue of tender is less important as OneWest, their predecessor, Indymac, and the yet unknown investor has never agreed to rescind giving rise to this complaint.  Tender is a subsequent event, which Plaintiff has always been prepared to address; however, was prevented from doing so because Defendant never acted on the Plaintiff's request.  Defendant has refused rescission which gave rise to this complaint and while never addressed in a response to the rescission, now raise tender as a reason.  However, Defendants have no factual evidence to support that Plaintiff was unprepared to tender if they agreed.

First, to keep this in the simplest of terms, when a consumer rescinds, they may use the form provided by the creditor, which is based on a model form provided by the Board of Governors of the Federal Reserve through Regulation Z, or by a separate notification.  If they use the form provided by the creditor, all they must do is sign their name and date the notification next to the statement "I WISH TO CANCEL."  Four very simple words begin the process and even those four words which incorporate the word "wish".  Black's

Law Dictionary defines "wish" as "eager desire; longing; expression of desire; a thing desired; an object of desire."  Desire is further defined as "to ask, to request."  In effect, a consumer merely must notify the creditor of the desire to cancel for notice to be effective <u>and is not required by said notice to contain proof of tender.</u>

Second, Defendant's cite authority in <u>Yamamoto v. Bank of New York</u>, 329 F.3d 1167 (9th Cir. 05/29/2003).  We agree that the case adequately states the law in this District as is very applicable to this case; however, they have substantially misread the ruling.  As stated at ¶ 17:

> **This appeal requires us to decide whether a court <u>may</u> order borrowers who seek recission of a mortgage under the Truth in Lending Act (TILA), 15 U.S.C. § 1635, <u>to show that proceeds can be tendered if they prevail</u>. Here, the borrowers testified that they could not fulfill TILA's tender requirement, and the district court gave them sixty days before dismissing their recission claim to attempt to do so. When they were unable to provide evidence that they could tender the proceeds, the court granted summary judgment in favor of the lender. <u>We hold that a district court has discretion to modify the sequence of rescission events in these circumstances</u>, and affirm.**

The facts in *Yamamoto* are the District Court had actually modified the sequence of rescission events as allowed by 15 U.S.C. § 1635, gave the consumer 60 days to attempt tender before foreclosing the consumer's rescission right.  The 9th Circuit properly ruled, using the black letter of the statute, that the court has the jurisdiction to modify the process.  That is not the case before this Court.  Defendant has not even agreed to rescission and is now claiming, in a Motion to Dismiss, that they do not even have to act on a rescission request without a proof of tender.  In effect, Defendant appears to want to step into the shoes of the Court and apply the Court's discretion as their own.

Third, this brings Plaintiff to a very important point, the current "un-modified" process stated in 15 U.S.C. §1635(b):

> **(b) Return of money or property following rescission**
>
> **When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. <u>Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given</u> as earnest money, downpayment, or otherwise, and  <u>shall take any action necessary or appropriate to reflect the  termination of any security interest created under the transaction</u>. If the creditor has delivered any property**

**to the obligor, the  obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender  the property to the creditor,** except that if return of the property  in kind would be impracticable or inequitable, the obligor shall  tender its reasonable value. Tender shall be made at the location  of the property or at the residence of the obligor, at the option  of the obligor. If the creditor does not take possession of the  property within 20 days after tender by the obligor, ownership of  the property vests in the obligor without obligation on his part to pay for it. **The procedures prescribed by this subsection shall  apply except when otherwise ordered by a court.**

This process is further supported by Regulation Z §226.23(d):

**(d) Effects of rescission.**

**(1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.**

**(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.**

**(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value.** At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

**(4) The procedures outlined in paragraphs (d) (2) and (3) of this section may be modified by court order.**

Dissecting these statutes for clarity, the process, as defined in those statutes is summarized as follows:

- Within 20 days after receipt of notice:

    - the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise

    - shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction

    - If the creditor has delivered any property to the obligor, the obligor may retain possession of it

- Upon performance by creditor:
    - the obligor shall tender the property to the creditor
    - except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value
    - Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor
- Creditor's failure to accept tender:
    - If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it
- Modification of procedures:
    - The procedures prescribed by this subsection shall apply except when otherwise ordered by a court

However, the Board of Governors to the Federal Reserve is also authorized to issue Official Staff Commentary to Regulation Z to further assist creditors and the public with the statute and regulations.  They have done so related to Regulation Z 226.23(d) as follows:

**23(d)  Effects of rescission.**

**Paragraph 23(d)(1).**

**1.  Termination of security interest.  Any security interest giving rise to the right of rescission becomes void when the consumer exercises the right of rescission. <u>The security interest is automatically negated regardless of its status</u> and whether or not it was recorded or perfected. Under § 226.23(d)(2), however, <u>the creditor must take any action necessary to reflect the fact that the security interest no longer exists.</u>**

**Paragraph 23(d)(2).**

**1.  Refunds to consumer.  <u>The consumer cannot be required to pay any amount in the form of money or property either to the creditor or to a third party as part of the credit transaction. Any amounts of this nature already paid by the consumer must be refunded.</u> "Any amount" includes finance charges already accrued, as well as other charges, such as broker fees, application and commitment fees, or fees for a title search or appraisal, whether paid to the creditor, paid directly to a third party, or passed on from the creditor**

to the third party. It is irrelevant that these amounts may not represent profit to the creditor.

**2. Amounts not refundable to consumer.** Creditors need not return any money given by the consumer to a third party outside of the credit transaction, such as costs incurred for a building permit or for a zoning variance. Similarly, the term "any amount" does not apply to any money or property given by the creditor to the consumer; those amounts must be tendered by the consumer to the creditor under § 226.23(d)(3).

**3. Reflection of security interest termination.** <u>The creditor must take whatever steps are</u> <u>necessary to indicate that the security interest is terminated.</u> Those steps include the cancellation of documents creating the security interest, and the filing of release or termination statements in the public record. In a transaction involving subcontractors or suppliers that also hold security interests related to the credit transaction, the creditor must insure that the termination of their security interests is also reflected. <u>The 20-day</u> <u>period for the creditor's action refers to the time within which the creditor must begin the</u> <u>process.</u> *<u>It does not require all necessary steps to have been completed within that time, but</u>* *<u>the creditor is responsible for seeing the process through to completion</u>*.

Paragraph 23(d)(3).

**1. Property exchange.** <u>Once the creditor has fulfilled its obligations under § 226.23(d)(2),</u> <u>the consumer must tender to the creditor any property or money the creditor has already</u> <u>delivered to the consumer</u>. At the consumer's option, property may be tendered at the location of the property. For example, if lumber or fixtures have been delivered to the consumer's home, the consumer may tender them to the creditor by making them available for pick-up at the home, rather than physically returning them to the creditor's premises. Money already given to the consumer must be tendered at the creditor's place of business.

**2. Reasonable value.** <u>If returning the property would be extremely burdensome to the</u> <u>consumer, the consumer may offer the creditor its reasonable value rather than returning</u> <u>the property itself.</u> For example, if building materials have already been incorporated into the consumer's dwelling, the consumer may pay their reasonable value.

Paragraph 23(d)(4).

**1. Modifications.** The procedures outlined in § 226.23(d)(2) and (3) may be modified by a court. For example, when a consumer is in bankruptcy proceedings and prohibited from returning anything to the creditor, or when the equities dictate, a modification might be made. <u>The sequence of procedures under § 226.23(d)(2) and (3), or a court's modification</u> <u>of those procedures under § 226.23(d)(4), does not affect a consumer's substantive right to</u> <u>rescind and to have the loan amount adjusted accordingly.</u> Where the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property.

The issue, as stated in the complaint, is that Defendant did not act on the request within the twenty

days and they appear to want to impose additional requirements on the Plaintiff that do not exist in the

statute before they have to act within the twenty days. As stated in the Official Staff commentary, the

consumer, Plaintiff herein, <u>must merely notify Defendant that they wish to cancel and from that point</u> <u>forward</u>, ***"…the creditor is responsible for seeing the process through to completion*.**"  At this point in time, factually, Defendant has not offered any proof that they acted on any "notice of rescission" within twenty days of receipt of the notice.  In fact, they appear to argue that they did not act as the request did not contain a tender.

The process is commonly addressed by creditors across the country and is typically done as follows:

- Consumer notifies creditor of desire to cancel.

- Within 20 days of receipt, creditor or assignee makes contact with consumer to begin process and usually proposes an agreement for an orderly rescission that includes creditors' agreement to rescission and by negotiation creates a simultaneous exchange of the release for the tender.

- If the consumer refuses to enter into such an agreement, most creditor's or assignee's will then file an action in District Court for Declaratory Relief requesting modification of the process to maintain their security interest pending tender.

The above process is consistent with the facts and holding in *Yamamoto* supra.  This is a very sound approach and followed by most creditors/assignees across the country.  However, Defendant did not follow that process and instead wants to ignore the requests within the twenty days, not act on the rescission request at all, not seek court modification of the process but seek the benefit like it had followed the process and also obtained court modification.  Unfortunately, they have overlooked that they have damaged Plaintiff and forced Plaintiff to file this suit to even get to a discussion and in doing so violated 15 U.S.C. §1640.

More important, the discretion the Court has to modify is an equitable remedy. As stated in ¶16 of *Yamamoto supra*:

> **As we explained, whether <u>a decree of rescission should be conditional depends</u> upon "<u>the</u>** **<u>equities present in a particular case</u>, as well as <u>consideration of the legislative policy of full</u>** **<u>disclosure</u> that underlies the Truth in Lending Act and <u>the remedial-penal nature of the</u>** **<u>private enforcement provisions of the Act.</u>**

In effect, Yamamoto requires the court considering rescission to evaluate the equities in each particular case. The court in *Yamamoto supra* went on to elaborate further in ¶21:

**Thus, a court <u>may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations</u>. Our precedent is consistent with the statutory and regulatory regime of leaving courts free to exercise <u>equitable discretion to modify rescission procedures</u>. This also comports with congressional intent that "the courts, at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required by the act." S. Rep. No. 368, 96th Cong., 2d Sess. 29 (1980), reprinted in 1980 U.S.C.C.A.N. 236, 265.**

The court in *Yamamoto supra* clearly has stated that the court can impose conditions on rescission once the creditor has performed its obligation.  In this case before the Court, the <u>Defendants have done nothing to even begin the process of rescission</u>.   As such, the equitable remedy of Yamamoto supra should only be considered if OneWest and their investor come to the court with clean hands.

Plaintiff contends that OneWest and their investor may not request from the court equity because of the doctrine of unclean hands. The doctrine is based on the maxim that one who comes into equity must come with clean hands. <u>Stein v. Simpson</u>, 37 Cal. 2d 79, 83 (1951). Unclean hands is generally an affirmative defense in actions seeking equitable relief, but the defense is not limited to equity and may be asserted in legal action as well. <u>Goldstein v. Lees</u>, 120 Cal. Rptr. 253, 255 (Ct. App. 1975). In short, the unclean hands doctrine requires that a plaintiff act fairly in the matter for which he or she seeks a remedy.  Here, OneWest, their investor and their predecessor IndyMac were required to act on the rescission request within 20 days and did not.  This failure to act violated the Truth In Lending Act and now they are asking the court for equity in a Motion to Dismiss that requests the court apply its equitable powers retroactively for their own misconduct.  This is improper. Even more important OneWest is taking the position that Courts will merely "rubber stamp" their demand for proof of tender before even acting on a request.  This presumed "rubber stamp" approach "slaps the face" of the statutes and case law that requires the Court to weigh the equities in each individual case.

Furthermore, the court has not made a legal determination that rescission is warranted as of yet or that grounds for rescission exist.  As stated in Yamamoto supra at **¶22:**

**As rescission under § 1635(b) is an on-going process consisting of a number of steps, <u>there is no reason why a court that may alter the sequence of procedures after deciding that</u>**

**rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what.**

**Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.**

Most important, if the Court were to decide that it could apply equitable remedies despite the unclean hands of Defendants, no factual evidence exists before the court that Plaintiff does not have the ability to tender.  In *Yamamoto supra*, the court actually gave the Plaintiff 60 days in which to tender and did not dismiss the case until they were unable to perform.   In a Motion to Dismiss, it would be inappropriate to dismiss the complaint merely on the pleadings absent factual evidence of a lack of tender upon giving the Plaintiff an opportunity to tender. Supporting this assertion are several recent cases right on point:

**Horton v. California Credit Corp. Retirement Plan, No. 09-cv274-IEG-NLS (S.D.Cal. 08/13/2009)**

**The Ninth Circuit has not established whether a plaintiff seeking rescission of a loan under TILA must allege at the pleading stage the ability to tender the proceeds of a loan. Although Defendant relies on La Grone v. Johnson, in that case the Ninth Circuit reversed a grant of summary judgment in favor of a borrower, holding that the district court should have conditioned rescission of the loan upon the borrower's ability to tender the amounts advanced by the lenders. La Grone v. Johnson, 534 F.2d 1360, 1362 (9th Cir. 1976). In another case Defendant cites, Yamamoto v. Bank of New York, the Ninth Circuit similarly affirmed a district court's grant of summary judgment in favor of a creditor, when the borrowers admitted an inability to tender. Yamamoto v. Bank of N.Y., 329 F.3d 1167, 1169 (9th Cir. 2003).**

**In fact, it is the Ninth Circuit's position that "whether a decree of rescission should be condition[ed upon the borrower's tender] depends upon 'the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that underlies the Truth in Lending Act and the remedial-penal nature of the private enforcement provisions of the Act.'" Yamamoto, 329 F.3d at 1171 (citation omitted). The Court declines to engage in such an inquiry at this stage of the litigation and accordingly declines to alter the rescission-tender chronology set out in 15 U.S.C. § 1635(d). The Court therefore denies Defendant's motion to dismiss Plaintiffs' TILA rescission claim.**

The court in this case found that it was improper to engage in an inquiry of the equities of the case so early in the litigation in a Motion to Dismiss.

**Ozuna v. Countrywide's Home Capital Funding, No. 08cv2367 - IEG - AJB (S.D.Cal. 08/13/2009)**

**"[15 U.S.C. 1635(b)] adopts a sequence of rescission and tender <u>that must be followed unless the court orders otherwise</u>: within twenty days of receiving a notice of rescission, the creditor is to return any money or property and reflect termination of the security interest; when the creditor has met these obligations, the borrower is to tender the property."**

**Yamamoto v. Bank of N.Y., 329 F.3d 1167, 1170 (9th Cir. 2003). However, under Yamamoto, a district court has discretion to alter the rescission-tender chronology. Id. at 1171.**

**<u>At this procedural juncture, the Court declines to alter the rescission-tender chronology because, at the pleading stage, TILA does not require tender as a prima facie element of a rescission claim.</u> Therefore, the Court denies Countrywide's motion to dismiss Plaintiff's TILA claims.**

This decision is important as the court determined that tender was not a requirement to advance a rescission claim at the initial pleadings stage and was not appropriate to dismiss the complaint in a Motion to Dismiss.

**<u>Bantique v. Greenpoint Mortgage Funding, Inc.</u>, No. CIV. 09-663 WBS DAD (E.D.Cal. 04/30/2009)**

**In light of their "equitable discretion" to modify the rescission process, <u>many courts have held that motions to dismiss claims for rescission on the ground that plaintiffs are unable to tender back the property received are "premature."</u> See Jones v. Rees-Max, LLC, 514 F. Supp. 2d 1139, 1146 (D. Minn. 2007) ("Given the discretion within which the Court may condition the right to rescission, it is not necessary that the [plaintiffs] demonstrate that they have the means to secure the necessary financing at this point in time."); see also Cosio, 2009 WL 201827, at *3 ("<u>[S]imply because [plaintiffs] presently do not have sufficient funds available to make certain payments does not necessarily mean that at the time of rescission [they] will be unable to tender. Circumstances may very well change between now and the time of tender</u>."). In light of this reasoning, <u>plaintiff's failure to allege that he is "ready, willing, and able" to tender his loan proceeds in the event of rescission is not fatal to his claim at this early stage of the proceedings.</u>**

The Honorable William B. Shubb in the Eastern District of California found that the granting of Motions to Dismiss based on a lack of tender is premature and that a Plaintiff's failure to plead they were "ready, willing and able" to tender is not fatal at the initial complaint and pleading stage.

**<u>Aurora Loan Services, LLC v. Britton,</u> No. 2:08-cv-01535-GEB-KJM (E.D.Cal. 08/13/2009)**

**When weighing the equities, "<u>all the circumstances</u>" are taken into consideration, "including the nature of the [TILA] violations." Id. at 1173. As the Ninth Circuit observed in LaGrone v. Johnson, 534 F.2d 1360, 1362 (9th Cir. 1976), <u>when the TILA violations are "not egregious," "[r]escission [] should [be] conditioned on a tender by [the borrower] of the [loan proceeds] advanced by the [creditor]."</u>**

- 14 -

The Honorable Garland E. Burrell, Jr. in the Eastern District of California found that all of the equities must be weighed and that the Defendant must show that their TILA violations are not egregious.  At this stage of the Defendants' Motion to Dismiss, they did not provide any factual evidence that the TILA violations were not egregious.  In fact, they contend that no violation has occurred.  Therefore, "all of the circumstances" are not before the court and the court conditioning tender as part of the Motion to Dismiss request would be inappropriate.

Since this is a Motion to Dismiss, the court must accept the allegations in the complaint as true and ***draw all reasonable inferences in favor of the plaintiff***. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Cruz v. Beto, 405 U.S. 319, 322 (1972).

Therefore, the issue of tender is premature since the court has not determined that rescission is proper yet at the pleading stage.  Furthermore, since Defendants have "unclean hands" the equitable remedy of altering the rescission process would be inappropriate in a Motion to Dismiss.

**C.  Plaintiffs Rescission Claim and Request for Damages is Timely.**

OneWest assertion that a claim for rescission must be brought within 3 years of consummation is flawed.  This was recently decided in this District in Santos v. Countrywide Home Loans, No. 1: 09-CV-00912-AWI-SMS (E.D.Cal. 08/14/2009), in which the court analyzed in detail the Miguel case cited in OneWest's MTD as follows:

**Immediately following the Miguel court's strong language barring TILA suits filed after the three year statute of repose, the court states:**

**Miguel argues that she should have been allotted an additional year in which to file suit after the expiration of the three-year period afforded by the statute.  <u>While Miguel is correct that 15 U.S.C. § 1640(e) provides the borrower one year from the refusal of cancellation to file suit, that is not the issue before us. Rather, the issue is whether her cancellation was effective even though it was not received by the Bank-the creditor-within the three-year statute of repose.</u>**

**Miguel 309 F.3d at 1165. This language has led some courts to cite Miguel for the proposition that hold plaintiffs have an additional year in which to file suit if creditors fail to properly respond to a consumers notice of rescission. Horton v. California Credit Corp. Retirement Plan, 2009 WL 700223 at \*5 (S.D. Cal. 2009); Madura v. Countrywide Home Loans, Inc., 2008 WL 2856813 at \*13 (M.D. Fla. 2008) (recognizing courts are split on**

**whether a suit must be filed within three years and citing Miguel for allowing suits brought after the three year limitations period).**

**The question before the Ninth Circuit in Miguel was not whether a plaintiff who had timely given notice could file suit outside the three year limitations period, but rather whether a plaintiff who had not timely given notice to the correct Defendant could substitute said Defendant outside the three year limitations period. Miguel is therefore not controlling on the issue before the court. <u>The court finds that if Plaintiff--the borrower--had provided notice prior to the end of the limitations period on December 21, 2008, and Defendant--the creditor-- did not properly respond to that notice, Plaintiff could file suit after the end of the three year period of repose but within the one year limitations period borrowed from Section 1640.</u>**

The court in this District is clear, if the notice has been made within the 3 years, as the Plaintiff did in this case, and the creditor did not properly respond to the notice, as is pled in this case, the Plaintiff has one year to file suit under 15 U.SC. §1640.

Another recent holding in this District, <u>Ramos v. Citimortgage</u> 2009 WL 86733, 3 (ED Cal. 2009) provides insight into this case.  The court stated in Ramos:

**To exercise the right to rescind, a borrower must "notify the creditor of the rescission by mail, telegram or other means of written communication." 12 C.F.R. § 226.23(a)(2). Notice is deemed effective "when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business." Id. <u>If a creditor then refuses to cancel the loan, the borrower has one year from the refusal to file suit for damages pursuant to 15 U.S.C. § 1640.</u> Miguel v. Country Funding Corp., 309 F.3d 1161, 1165 (9th Cir. 2002) (citing 15 U.S.C. § 1640(e)). However, if the borrower files his or her suit over three years from the date of a loan's consummation, a court is powerless to grant rescission.  Id. at 1164 ("[S]section 1635(f) represents an'absolute limitation on rescission actions' which bars any claims filed more than three years after the consummation of the transaction. (quoting King v. California, 784 F.2d 910, 913 (9th Cir. 1986)); accord Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998) ("[Section] 1635(f) completely extinguishes the right of rescission at the end of the 3-year period."); see also Cazares v. Household Fin. Corp., 2005 U.S. Dist. LEXIS 39222, at *24-25 (C.D. Cal. 2005) (concluding that "[i]f certain <u>Plaintiffs did exercise their rights to rescind[] prior to the expiration of the three-year limitation period," such facts "would only entitle Plaintiffs to damages, not rescission</u>" (citing 15 U.S.C. § 1640(a); Belini v. Wash. Mut. Bank, FA, 412 F.3d 17 (1st Cir. 2005))).**

In this case, Plaintiff has pled for damages in his complaint as stated and as allowed in the Ramos case and consistent with 15 U.SC. §1640.

However, Plaintiff contends that the <u>Ramos</u> case is flawed and is supported by the previously cited *Santos supra*.  Arguing as true the <u>Ramos</u> holding, it would be wholly inconsistent with the process detailed in 15 U.SC. §1635.  Consider the consumer who mails the notice within the initial three day rescission

period, arguing the logic of <u>Ramos</u> would mean that the consumer would not only have to send the notice but actually file suit within the three days or they would be completely barred using the logic in <u>Ramos</u>.  This seems inconsistent with the nature of the consumer protection statutes we are dealing with in this case.

Regardless, since the Plaintiff has also pled damages pursuant to §1640 and filed suit within one year of exercising his right to cancel that was done within the three years under §1635, Plaintiff is entitled to damages for the Defendant's failure to honor the timely rescission.

**D.  Damages as to OneWest is proper.**

As previously address in this response, the complaint clearly contends that OneWest is acting as an agent for the true lender (see Compl. ¶¶7, 85, 86, 95), which they have not disputed.  The complaint contends several factual allegations of agency.  Plaintiff sent the QWR and Rescission to Indymac, the then current servicing agent of the true lender, and service of that correspondence on the servicing agent is service on their principal and vice versa (back on any agent, current or subsequent) under California agency law.  California Civil Code §2332 states:

> **As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other.**

As such, when OneWest took over the servicing of IndyMac, notice of the claims had been conveyed to Indymac, their predecessor, which imputed notice to the still unnamed principal, which also imputed notice to OneWest of the pending rescission, fair debt collection and RESPA claims.

Furthermore, let's not let OneWest mislead the court, OneWest took on the same staff and operations of the servicing operation and has subsequently responded to several QWR's sent to Indymac that were pending.  The question, which cannot be answered in this MTD is: Is an agent obligated to respond to a rescission request and QWR sent to the previous servicing agent when they assumed all of the servicing functions pending?  Obviously, as they have done so in other cases (sample redacted responses are attached as Exhibit B), they certainly have and are capable of acting as they must.

As has been common by financial institutions in this mortgage crisis, they "cherry pick" all the benefits and "brush aside" all the detriment.  They certainly have no problem accepting that all of the "form letter" notices that were sent by Indymac were sufficient notice to foreclose on homes or to even continue a foreclosure started by Indymac and finished by OneWest.

Regardless, it is not a clear cut decision in a Motion to Dismiss to easily determine all of the rights of the parties based on the complaint filed and Defendants Motion to Dismiss considering the complex legal concepts of agency and notice.

**E.  SETTLEMENT PROPOSAL IN RESCISSION LETTER**

Defendant points to the offer of the Plaintiff in their rescission letter of a settlement offer.  While they couch such an act as not a valid tender or an attempt to create some highly favorable terms from the Defendant, they miss a very important point to the offer.  Plaintiff believes they are legally obligated to mitigate the damages to Defendant.  In an attempt to mitigate the damages, Plaintiff offered alternatives in its rescission request by agreeing to settle the issue in multiple manners such as a modification and even left open the door to counterproposals from Defendant.

    a.  Plaintiff did so on the belief of the general principal that "victims of legal wrong should make reasonable efforts to avoid incurring further damage."

    b.  Furthermore, since every contract has an element of "good faith and fair dealing" said attempts were to act in good faith in attempting to resolve the rescission issue.

Unfortunately, showing incredibly bad faith on their part, Defendant did not act upon Plaintiff's attempt to mitigate damages or acknowledge Plaintiff's attempts to act in good faith towards a resolution.  Even in their motion they couch these "good faith" efforts as something foul despite the fact they themselves come to the table with "unclean hands" as they never acted in any good faith towards the rescission or the attempt to mitigate the damages.  After all, if Defendants were to foreclose on the property or if the Plaintiff were to return the property to Defendant, the loss to Defendant would be far greater.

///

**F. PLAINTIFF HAS A VALID RESPA CLAIM**

Again, the basis for OneWest's claim that a RESPA claim does not exist is due to the letter being addressed to Indymac.  We reference the separate section on this issue above titled, <u>"D.  Damages as to OneWest is proper."</u>

As for the reference to excluding the FDIC as a servicer for purposes of RESPA has no merit.  Plaintiff has not named nor claimed that the FDIC has violated RESPA.  The previous entity, Indymac, was under a receivership, but was <u>an existing entity</u> in which the FDIC was merely a receiver.  Service of a QWR on Indymac does not mean that Indymac, as a servicer, does not have to comply, just that the FDIC is not a servicer.  The FDIC was not collecting payments and making demands on consumers, Indymac was and the FDIC was merely acting as a receiver.  12 U.S.C. §2605(i)(2) is clear in that regard:

(2) **Servicer**
**The term "servicer" means the <u>person responsible for servicing of a loan</u> (including the person who makes or holds a loan if such person also services the loan). The term does not include—**

(A) **the Federal Deposit Insurance Corporation or the Resolution Trust Corporation, in connection with assets acquired, assigned, sold, or transferred pursuant to section 1823 (c) of this title or as receiver or conservator of an insured depository institution; and**

Logically, this makes complete sense.  The government entity, in this case the FDIC, has merely taken control of the entity as a receiver.  In fact, as was the case with Indymac, the entity is typically set up as a separate entity from the FDIC.  This is best articulated by the FDIC itself from their website related to their receivership of Indymac (Exhibit C):

**On July 11, 2008, IndyMac Bank, F.S.B., Pasadena, CA was closed by the Office of Thrift Supervision (OTS) and the FDIC was named Conservator.  All non-brokered insured deposit accounts and substantially all of the assets of IndyMac Bank, F.S.B. <u>have been transferred to IndyMac Federal Bank, F.S.B. (IndyMac Federal Bank), Pasadena, CA "assuming institution") a newly chartered full-service FDIC-insured institution</u>.  No advance notice is given to the public when a financial institution is closed.**

Therefore, Plaintiff's claim was not sent to the FDIC but sent to the newly chartered institution which must comply with RESPA and Plaintiff has never implied that the FDIC has any liability for RESPA violations.

The issue of damages and its application to this case is best answered in the case of <u>Parveen A. Lal and Jodi L. Wright v. American Home Mortgage Servicing</u>, Case No. 2:09-CV-01585-MCE-DAD (E.D. Cal. 2009) filed September 24, 2009.  The court related to RESPA stated:

> **Defendant's argument as to actual damages is without merit because, while in the section of the Complaint dedicated to the RESPA claim Plaintiffs allege only that they have suffered "actual damages," Plaintiffs also incorporated by reference all prior allegations as well. Accordingly, the same allegations regarding damages alleged under Plaintiffs' TILA claim are applicable here, and Plaintiffs adequately alleged they suffered injury as a result of having to resort to the filing of this litigation.**

Plaintiff contends they have adequately pled damages for failing to respond to the QWR and that when OneWest assumed the servicing obligations of Indymac, they did not just get to start collecting payments only, they assumed responsibility for the pending matters (under agency theories) advanced by the borrower.

As for dismissing the complaint on this basis, Defendants are misguided as several courts have addressed similar requests and find such actions to dismiss this action at this early stage is inappropriate.

A genuine question of fact is in dispute in the complaint.  As the court pointed out in <u>McLean v. GMAC Mortgage Corp.</u>, No. 06-22795-CIV-O'SULLIVAN (S.D.Fla. 05/02/2008):

> **"Although the March 9, 2005 correspondence may be timely as to the February 14, 2005 correspondence, <u>a jury may find</u> that the March 9, 2005 correspondence <u>does not satisfy the requirements of section 2605(e)(2) in that it fails to respond to any of the inquiries raised in the plaintiffs' letters</u>. Section 2605(e)(2) requires a loan servicer to take certain action within 60 days of receipt of a qualified written request. Such action may include:**
>
> **provid[ing] the borrower with a written explanation or clarification that includes . . . (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower. 12 U.S.C. § 2605(e)(2).**
>
> **Whether GMAC's March 9, 2005 letter _satisfied the requirements of section 2605(e) is a genuine issue of material fact and GMAC is not entitled to summary judgment on the plaintiffs' RESPA claims under section 2605(e)_ (qualified written requests).**

Plaintiffs are confused by the Defendant's statement that Plaintiff did not plead any actual damages. The statute is clear, if a servicer has not complied with the Qualified Written Request provisions of RESPA, 12 U.S.C. § 2605(f) provides for damages and costs as follows:

**(f) Damages and costs**

**Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:**

**(1) Individuals**

**In the case of any action by an individual, an amount equal to the sum of -**

   **(A) any actual damages to the borrower as a result of the failure; and**
   **(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.**

**(3) Costs**

**In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.**

Plaintiff respects that the Court may allow statutory damages up to $1,000.00 for additional damages under 12 U.S.C. § 2605(f)(1)(B) and have properly plead that request and discretion in its adversary proceeding.

At the very least, Plaintiff, in its request, wanted to know who truly holds their obligation and was forced to file suit to find out.  If Defendants had given that information, damages would be less to Plaintiff.  If Defendants had responded to the rescission request, possibly a lawsuit could have been avoided as the tender issue could have been easily resolved had they merely cooperated with the rescission.  Of course, the Plaintiff has been damaged.

Clearly, the statute allows for attorneys fees should Plaintiff prevail in this case.  It appears that Defendant is requesting exact dollar amounts from the complaint or they are entitled to the complaint being dismissed.  Plaintiff has pled in sufficient detail his claims with particular specificity to meet Fed R Civ P 8(a) requirements.

///

///

///

**G.  PLAINTIFF HAS ADEQUATELY PLED A STATE FAIR DEBT COLLECTION PRACTICES ACT CLAIM AS THE CALIFORNIA RFDCPA DOES APPLY TO DEFENDANT**

The basis for the Plaintiff's claim related to the RFDCPA is due to the fact that Plaintiff asserted his rights to curtail all contact with the Plaintiff which is specifically allowed under the RFDCPA.

Defendants' motion states that as a matter of law, loan servicers are not "debt collectors" under the RFDCPA (they reference the Federal Fair Debt Collection Practices Act in their papers however, Plaintiff has only pled in its complaint violations of the California RFDCPA).

Plaintiff intended to speak to the allegation in the broadest way but at trial, Plaintiff will show that they received numerous phone calls and received several written collection notices unrelated to foreclosure notices (which Plaintiff contends are not covered by the act) but certainly phone calls asking when the Plaintiff is going to make payments are.  Plaintiff contends that such detail is improper for the notice pleadings in a Federal case but might be proper in factual pleadings of a State case.   At this point in the pleadings, the complexity of discovery is best left for discovery and requiring this detail is inconsistent with Fed R Civ P 8(a).

However, we again reference the case of Parveen A. Lal and Jodi L. Wright v. American Home Mortgage Servicing, Case No. 2:09-CV-01585-MCE-DAD (E.D. Cal. 2009) filed September 24, 2009 which addressed this issue clearly:

**Defendant moves to dismiss the instant claim arguing that it, as a loan servicer, cannot be held liable under the RFDCPA. However, Defendant relies upon federal law, which specifically excludes loan servicers from its purview. The RFDCPA definition of a debt collector is broader than the federal definition. Izenberg v. ETS Services, LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal., 2008). Indeed, in California, a debt collector is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c).**

**In this case, Plaintiffs claim that "Defendant repeatedly contacted Plaintiff attempting to collect the debt." Compl., ¶ 86. Additionally, Plaintiffs allege they were contacted regularly by Defendant for purposes of collection, from which this Court can infer, at least for purposes of the instant Motion, that Defendant regularly engaged in the challenged practice. Accordingly, Plaintiffs have adequately stated a claim for violation of the RFDCPA. See Lemieux v. Jensen, 2004 WL 302318, *2 (S.D. Cal.) (interpreting federal law). Defendant's Motion to Dismiss Plaintiffs' third cause of action is denied.**

As to the RFDCPA claim, Plaintiff requests the court deny Defendants motion to dismiss or, in the alternative, Plaintiff requests that the court allow Plaintiff to amend the complaint.

## H.  PLAINTIFF'S UCL CAUSE OF ACTION DOES PROPERLY STATE A CLAIM

Defendants contend that this cause of action fails because the TILA, RESPA and RFDCPA claims fail and therefore, this cause of action fails.  Of course, for the reasons set forth related to those causes of action, we believe that those actions will stand and therefore the Plaintiffs UCL cause of action will also stand.

Unfortunately for Defendants, we think that Defendants' Motion to Dismiss has supported Plaintiff's claim for relief for their acts.  Defendants have intentionally ignored the TILA rescission claim and stand by their position that the QWR under RESPA did not require their responses.  If wrong, this proves they are engaging in unfair business practices as consumers should not have to litigate these statutes to force compliance.

A glaring example is contained in our complaint… their continual refusal to disclose to Plaintiff and similarly situated consumers the name, address and telephone number of the true owner of the obligation.  This conduct is so outrageous.  Said failure makes the cost to litigate by most consumers in California almost impossible.  Under basic common law, a consumer should be entitled to know with whom they have an obligation.

Regardless, under Federal pleading standards, we are to provide notice pleadings and not factual pleadings as required in State court actions.  Plaintiff believes they have met the liberal pleadings standards required in a Federal case.

Plaintiff contends that the court will find that at the minimum a federal question remains related to TILA in addition to the questions related to RESPA.  Plaintiff has maintained a cause of action for TILA and RESPA.

However, we again reference the case of <u>Parveen A. Lal and Jodi L. Wright v. American Home Mortgage Servicing</u>, Case No. 2:09-CV-01585-MCE-DAD (E.D. Cal. 2009) filed September 24, 2009 which addressed this issue clearly:

> **Plaintiffs contend various of their claims against Defendant provide independent grounds for a finding that Defendant violated California's UCL. Cal. Bus. & Prof. Code § 17200. The UCL prohibits fraudulent, unlawful, or unfair business practices and "permits violations of other laws to be treated as unfair competition that is independently actionable." Leonel v. Am. Airlines, Inc., 400 F.3d 702, 714 (9th Cir., 2005) (quoting Kasky v. Nike, Inc., 45 P.3d 243, (2002)). To the extent Plaintiffs' other claims survive, so does their UCL claim. Accordingly, Defendant's Motion to Dismiss Plaintiffs' fourth cause of action is denied.**

Dismissal of the UCL Cause of Action (B&P Code Section 17200) should be denied as we believe:

    a.   Federal questions still remain for the court to decide.

    b.   In total, all of the acts leading to all of the causes of action give rise to an Unfair Business Practice.

    c.   Plaintiff has properly pled a Business and Professions Code Section 17200 violation.

    d.   As stated above, we believe that Defendants have violated the Truth In Lending Act and RESPA and have also engaged in an unfair business practice.

As such, Plaintiff believes a genuine issue of fact and the law remains and dismissal is inappropriate.

As to the Fourth Cause of Action, Plaintiff requests the court deny Defendants motion to dismiss.  In the alternative, Plaintiff requests that the court allow Plaintiff to amend the complaint.

## I.  PLAINTIFF'S BREACH OF THE CONVENANT OF GOOD FAITH AND FAIR DEALING CAUSE OF ACTION DOES PROPERLY STATE A CLAIM

Defendant OneWest raises the issue of how can Plaintiff contend a good faith and fair dealing cause of action against them as they lack a contract with the Plaintiff.  Normally, we would agree, but Plaintiff pled, at ¶'s 36 and 37 of their complaint, as follows:

> **While Plaintiff believes that [OneWest] is a servicing agent for a securitized pool, as of the date of this filing, we believe that [OneWest] is jointly and severely liable for damages**

**related to this action as <u>they have failed to identify their principal (of who they act for agent for</u>).**

**Under common law and Restatement of Agency , if an agent has actual or apparent authority, the agent will not be liable for acts performed within the scope of such authority, so long as the relationship of the agency and the identity of the principal have been disclosed. <u>When the agency is undisclosed or partially disclosed, however, both the agent and the principal are liable</u>.**

Plaintiff contends that OneWest is liable for a good faith and fair dealing claim as they have failed to identify their principal.  Plaintiff is entitled to plead alternative theories in its complaint and has done so.

OneWest wants it both ways, not identify their principal, take all action against Plaintiff and have no liability for it.  They sure are acting like Plaintiff has a contract with them. However, Plaintiff has also pled alternative theories throughout the complaint as they are unsure of the true capacity of OneWest. Until their true status is known, this cause of action may or may not apply to OneWest directly but almost certainly applies based on agency and non-disclosure of their principal.

At this point, it is premature to dismiss a good faith and fair dealing cause of action against OneWest as their status is unclear.

**J.  <u>ONEWEST MAY OR MAY NOT BE A PARTY TO THE CONTRACT</u>**

As stated above, Plaintiff makes the contention that OneWest is a party based on a couple of key issues:

1.  Despite requesting the identity under a QWR under RESPA and requesting the identity under 15 U.S.C. §1641(f)(2) of the true contract holder, OneWest has refused to provide said information and identify the contract holder.  Coupled with the QWR was a request for copies of all of the contracts.  This leaves their status as unclear for this cause of action and it was properly pled based on the best information known to Plaintiff and due to their refusal to clearly identify themselves and others to the contract.

2.  Plaintiff has pled restatement of agency that generally an agent is not liable for their acts as an agent when they have identified their principal.  However, as clearly articulated in the complaint and throughout this response, ONEWEST has not identified their principal which now raises a

question of fact for the Court related to this failure to identify their principal now extends a Good

Faith and Fair Dealing claim against ONEWEST under the common law of agency.  No question,

this could have been easily rectified by ONEWEST by merely giving the information as properly

requested but this door was opened by their own action or lack of action.

However, ONEWEST boldly states that the covenant of Good Faith and Fair Dealing does not extend

to mortgages.  This is completely inconsistent with the holdings.

Graupner v. Select Portfolio Servicing, No. B196401 (Cal.App. Dist.2 02/23/2009) (unpublished)

which is a mortgage servicing case:

> **A covenant of good faith and fair dealing is implied in every contract in California. (Carma Developers (Cal.), Inc. v. Marathon Development California, Inc. (1992) 2 Cal.4th 342, 372; Andrews v. Mobile Aire Estates (2005) 125 Cal.App.4th 578, 589.) It "implies a promise that each party will refrain from doing anything to injure the right of the other to receive the benefits of the agreement."** (Aragon-Haas v. Family Security Ins. Services, Inc. (1991) **231 Cal.App.3d 232, 240.) As the Supreme Court has observed, "The covenant of good faith and fair dealing . . . exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made. [Citation.] The covenant thus cannot be endowed with an existence independent of its contractual underpinnings."**

Sutherland v. Barclays American/Mortgage Corp., 53 Cal.App.4th 299, 61 Cal.Rptr.2d 614 (Cal.App.

Dist.2 03/05/1997), which also recognizes in a mortgage context the obligation of Good Faith and Fair

Dealing:

> **" ' "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." . . . This duty has been recognized in the majority of American jurisdictions, the Restatement, and the Uniform Commercial Code. . . .' . . . The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." ( Carma Developers (Cal.), Inc. v. Marathon Development California, Inc. (1992) 2 Cal. 4th 342, 371-372 [6 Cal. Rptr. 2d 467, 826 P.2d 710], citations omitted.) In general, the covenant imposes a duty upon a party to a contract not to deprive the other party of the benefits of the contract. ( Floystrup v. City of Berkeley Rent Stabilization Bd. (1990) 219 Cal. App. 3d 1309, 1318 [268 Cal. Rptr. 898].) The covenant " ' . . . not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose.' " (Ibid.)**

Vale v. Union Bank, 88 Cal. App. 3d 330, 151 Cal. Rptr. 784 (Cal.App.Dist.1 01/16/1979) is another case which involves a bank and a non-insurance context:

> **The evidence clearly shows that the bank failed to act in good faith.**

Carma Developers Inc. v. Marathon Development California Inc., 2 Cal.4th 342, 826 P.2d 710, 6 Cal.Rptr.2d 467 (Cal. 03/30/1992), commonly cited in most mortgage cases since its decision, clearly shows that the covenant of Good Faith and Fair Dealing extends to all contracts, not just insurance contracts:

> **'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.' (Rest.2d Contracts, § 205.) This duty has been recognized in the majority of American jurisdictions, the Restatement, and the Uniform Commercial Code. (Burton, Breach of Contract and the Common Law Duty to Perform in Good Faith (1980)**
>
> **<u>The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith.</u> (See, Perdue v. Crocker National Bank (1985) 38 Cal. 3d 913, 923 [216 Cal. Rptr. 345, 702 P.2d 503]; California Lettuce Growers Assn. v. Union Sugar Co. (1955) 45 Cal. 2d 474, 484 [289 P.2d 785, 49 A.L.R.2d 496].)**

Regardless, ONEWEST appears to want to bring the case to trial in their brief.  This is an inappropriate forum.  Plaintiff has properly pled plausible theories related to ONEWEST and good faith and fair dealing.  Plaintiff has done so based on the lack of clarity to ONEWEST status as a contract holder and also under the restatement of agency theory related to an undisclosed principal.

## K.  WRONGFUL FORECLOSURE

The entire premise of OneWest's assertion is focused on the obligation of Plaintiff to tender.  Considering the pending complaints requesting rescission (and its impact on the validity of the mortgage), damages and a host of offsets against the amount owed at the conclusion of this litigation, Plaintiff does not even understand how OneWest can state a proper amount as to the amount owed to conduct its foreclosure sale and should the complaint survive this Motion to Dismiss does not understand how it can represent to bidders that they are selling the property free of any defect.  Regardless, should Plaintiff's causes of action related to TILA, RESPA, Unfair Business Practices and Fair Debt Collection claims remain, selling the property at a foreclosure sale will result in additional damages to Plaintiff.  It is doubtful that Plaintiff will

take steps to stop the foreclosure sale as OneWest, with full knowledge of the harm it will cause, is aggressively rushing to sell the property in a non-judicial foreclosure.

The court should take notice that the current statutory scheme under 15 U.S.C. §1635 renders the security interest void absent an equitable modification of void/tender process by the court.  OneWest has already attempted to "step into the shoes" of the court, rendered the equitable decision in their favor (no surprise by this decision), made the decision for the Court and has filed for non-judicial foreclosure after the complaint was filed.

It seems obvious to Plaintiff that if any of the TILA, RESPA, UCL and Fair Debt Collection causes of action survive this MTD, the wrongful foreclosure action should also remain intact.  As an additional note, since the Plaintiff has incorporated all of previous causes of action into this cause of action, by reference all of those claims are also considered part of the wrongful cause of action.

## L.  SLANDER OF TITLE

As stated above related to wrongful foreclosure, the filing of the Notice of Default was improper in light of the many other causes of actions pending in this case.  This publication meets all of the tests claimed by OneWest:

1.  The notice of default was publically recorded.

2.  Was made without privilege or justification.  A pending lawsuit which had a claim the mortgage was void was pending.  OneWest could have petitioned the court to seek approval to file the NOD but instead moved forward on the basis that it was right before the matter was adjudicated.  In doing so, if they are wrong, their act was not justified.

3.  Is false.  A pending lawsuit which had a claim the mortgage was void was pending.  OneWest could have petitioned the court to seek approval to file the NOD but instead moved forward on the basis that it was right before the matter was adjudicated.  In doing so, they are notice that their act may be wrong.

4.   Causes direct and immediate loss.  Of course, Plaintiff has now been contacted by numerous parties over the publication and is hassled and damaged by such contacts.  In fact persons even come to his home inquiring as to the purported default.

It seems obvious to Plaintiff that if any of the TILA, RESPA, UCL and Fair Debt Collection survive this MTD, this slander of title action should also remain intact.

**M.  SLANDER OF CREDIT**

Plaintiff has asserted his rights under the Truth In Lending Act for rescission, which calls into question the validity of the debt until final disposition by a court of law and has made a Qualified Written Request under RESPA.  12 U.S.C. §2605(e)(3) states:

**(3) Protection of credit rating**

**During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of title 15).**

No question, based on the Plaintiff's pending rescission and the absolute prohibition in RESPA against credit reporting while the QWR is pending (which OneWest claims they had no obligation to respond to and still have not responded to) the reporting of the debt as being delinquent to credit reporting agencies has damaged the Plaintiff.  Plaintiff has had credit lines suspended and interest rates increased.  It seems obvious to Plaintiff that if any of the TILA, RESPA, UCL and Fair Debt Collection survives this MTD, this slander of title action should also remain intact.

///

///

///

///

///

///

### **III. Conclusion**

Defendant's motion should be denied as the liberal pleading standard has been met by the Plaintiff.  In the alternative, if the court should grant Defendant's motion, we would ask that we be allowed to amend the complaint.


Dated:  September 28, 2009                    By:  /s/ Kimberlee A. Rode_____
                                              Kimberlee A. Rode, Attorney for
                                              Shaunn A. Fullmer

# - COURT EXHIBIT A -

Personal Banking | Institutional Banking

IndyMac Mortgage Services,

# 1.800.781.7399

**HOME**       **BANKING**       **MY MORTGAGE**       **HOME LENDING**       **REVERSE MORTGAGE**       Search   Go

Request Payment Help   |   Manage My Mortgage   |   Information Center   |   Real Estate Owned   |   Resources   |   Tools

**Log into your account**

-Select an account-   Go

**Need Help with Payments?**

Is making your mortgage payment becoming difficult?

**Click here.**

Get started **Call 1.800.781.7399** | Request Payment Help

**HUD Resources**

Find a HUD Certified Counseling Agency

Call: (800) 569-4287 or TTY (800) 877-8339



**Search HUD.**

## Request Payment Help

- Learn about programs and resources to help you with your unique situation
- Determine if you are eligible for a loan modification
- Update your financial information online

Click here

## Manage My Mortgage

- Make payments online
- Log into your account
- View your statement
- Access year end tax documents

Log in now

## Information Center

- View contact and payment information
- Learn how to Go Paperless
- Get a 3rd Party Authorization Form
- Set up Automatic Payments

Learn more

## Real Estate Owned

- Find the home of your dreams
- Calculate your payments
- Find out how much you can afford

Click here

## My Mortgage Resources

- Read our frequently asked questions
- Learn about mortgage products and services
- Contact information

Learn more

## My Mortgage Tools

- Find out how much interest you can save by making extra payments
- Use our interactive calculators to explore home financing options
- Check rates

Click here

Home | Branch Locations | Privacy and Security | Contact Us | Search for REO Properties | REO System | Glossary | Careers | Sitemap | MBS/ABS Investors

© 2009 OneWest Bank, FSB. Registered trade/service marks are the property of OneWest Bank, FSB and/or its subsidiaries. FDIC Insured.



1 of 1

9/24/2009 5:21 PM

# - COURT EXHIBIT B -



**imfb  IndyMac Federal Bank**

June 09, 2009

Mortgage Litigation Consultants
9245 Laguna Springs Dr.
Ste. 200
Elk Grove, CA 92758



Re: Mortgage Loan Number: ████████

Dear David Pereira:

This letter is sent to you in response to your letter to IndyMac Mortgage Services, a division of OneWest Bank, FSB. We appreciate this opportunity to address your concerns.

You have requested certain documents associated with the loan referenced above. Among the documents you requested, to the extent they are applicable and/or available, we are enclosing copies of requested disclosures and copies of requested closing documents as well as requested documents that are understood to have been provided by the borrower. We will provide a copy of the appraisal if the borrower paid for such appraisal. In additi on we have enclosed a payment history.

With regard to the other items you have requested, these requests go well beyond what is required to be produced pursuant to a Qualified Written Request and will not be provided. A Qualified Written Request only requires that a servicer supply documentation to the borrower to determine if the loan was properly serviced and whether payments were applied correctly. Generally, we will not provide copies of internal documents and notations, guidelines or other information/materials supplied to us by third parties in connection with the organization of this loan.

Please accept this letter as confirmation that the investor on your loan is Aurora. Any questions regarding your loan should be addressed directly to Indymac Mortgage Services, a division of OneWest Bank, FSB as we are responsible for the servicing of this loan. The investor should not be contacted directly.

If you have any questions, please contact our Customer Service Department at (800) 781-7399. Representatives are available Monday through Friday 8:00 A.M. to 9:00 P.M. Eastern Standard Time.

Respectfully,

Customer Service
Indymac Mortgage Services

RS104 003 41D

www.imb.com

 # Mortgage Litigation Consultants

9245 Laguna Springs Drive, Suite 200
Elk Grove, CA 95758
Phone: (916) 275-0907
Fax: (916) 244-7006
Email: dpereira@loandefects.com

| IMPORTANT LEGAL DEADLINES CONTAINED IN THIS CORRESPONDENCE | | | |
|---|---|---|---|
| **Issue** | **Number of Days** | **Deadline** | **Statute** |
| Date to act on rescission (TILA) | 20 calendar days | 2/4/2009 | 15 U.S.C. §1635 (b) |
| Date to Acknowledge QWR (RESPA) | 20 business days | 2/12/2009 | 12 U.S.C. §2605(e)(1) |
| Date to answer QWR (RESPA) | 60 business days | 4/9/2009 | 12 U.S.C. §2605(e)(2) |

January 16, 2009


**MortgageIT, Inc.**
**8880 Rio San Diego Drive #250**
**San Diego, CA  92108**


**IndyMac Federal Bank, FSB**
**P.O. Box 4045**
**Kalamazoo, MI  49003-4045**


RE:   MortgageIT Loan No. ▓▓▓
      Indymac Loan No ▓▓▓

      ▓▓▓▓▓▓▓▓ Sacramento, CA  95828

To Whom It May Concern:

Mortgage Litigation Consultants have been retained to represent Ms.
▓▓▓.  Ms. ▓▓▓▓ signature to the attached authorization (Exhibit
"A") is notification to you of our representation of him.

It is our belief that INDYMAC FEDERAL BANK is not the
owner/beneficiary/note holder/master servicer of the above referenced
loan.  Pursuant to 15 U.S.C. §1641(f)(2) and as a Qualified Written
Request pursuant to RESPA (if applicable and/or contract law) (15
U.S.C. §1641(f)(2) request is not a QWR), we request the following:

• The <u>name, address and telephone number</u> of the owner/note
  holder/beneficiary/master servicer of the obligation. This request

**Page 1 of 4**

should be broadly interpreted to include the true owners and not
merely a trustee or attorney in fact.

  o **Please note, under 15 U.S.C. §1641 (f)(2), you are required to
    give the name of the "owner of the obligation or the master
    servicer of the obligation", the master servicer is the master
    servicer and securities administrator of a "Pooling and
    Servicing Agreement" or similar document.**
  o Please note, failing to provide us with the name, address and
    telephone number by the end of the rescission response time
    pursuant to 15 U.S.C. §1635(b) may result in a Declaratory
    Relief action to seek the proper party for litigating the
    rescission.

- Copies of all assignments, recorded or unrecorded, purporting to
  evidence who has the beneficial interest of the security instrument
  and corresponding promissory note at this time.
- If the note contains a "blind endorsement" the name, address and
  telephone number of the person who has the note in their possession.
- Copies of all documents from the beneficial holder that purports to
  grant authority or direction in which to service the above
  referenced loans.
- Copies of all securities documents using whatever security
  instrument in which the underlying debt was securitized.  This
  includes any stripping of payment streams, principal, future value,
  derivatives, tranches or any other device or artifice related to the
  underlying debt.
- Copies of all documents and/or communications contained in the loan
  servicing file of INDYMAC FEDERAL BANK.
  o If a litigation and or attorney-client privilege is asserted
    for any documentation contained in the file, please provide a
    privilege log.  The log shall contain:
    - The claim expressly stated
    - Describe the nature of the documents/communications in a
      manner that, without revealing information itself
      privileged or protected, will enable other parties to
      assess the applicability of the privilege or protection.
- Copies of documents contained in your loan file that bears the
  signature of Ms. ▇▇▇▇▇▇▇
- Statement of all payments made on this loan.
- Refusing to provide the above information will result in a lawsuit
  being filed and the same information being secured as a party to
  legal discovery.  It is more beneficial to give the information
  absent litigation and save yourself the cost.

The loan being serviced is defective.  Ms. Rogers was provided four
copies of the Notice of Right to Cancel (attached as Exhibit "B"). The
copies provided have blank dates for the date her right of rescission
expires.

As such, this error of not providing copies with the correct dates of
the Notice of Right to Cancel as required by TILA, extends the right

to cancel for 3 years. Since the loan was consummated on ~September 2006, we are within the 3 year period.

Since the Truth In Lending Act renders Ms. ██████ signature on the original Notice of Right to Cancel as a "rebuttable presumption" that she did get the proper copies, we are giving you a copy of what was actually received from the closer.  Possession of these incorrect copies, which has blank dates, <u>could only come from you or your agents.</u>  As such, possession of inaccurate Notices of Right to Cancel, we strongly feel that we have overcome the rebuttable presumption and are allowed to rescind.

We have been instructed by Ms. ██████ to offer the following option to settle this rescission issue with INDYMAC FEDERAL BANK:

- INDYMAC FEDERAL BANK modify and reform the existing loans as follows:
    o The first loan balance to be modified to the fair market value of the property.  We have determined the fair market value to be ~$235,000.00.
    o A fixed interest rate of 5.25%.
    o The terms remain amortized over the term remaining.
- A full settlement agreement executed by both parties.
- Ms. Rogers will pay her own costs for attorney fees to date.

Of course, we would be interested in a <u>reasonable counter proposal</u>. If you reject our settlement or we do not come to a resolution, by this letter, as instructed in the attached document by Ms. ██████ Ms. ██████ <u>hereby rescinds the above referenced loan</u>.

In addition, Ms. ██████ is asserting her rights under Section 805 of the Federal Fair Debt Collections Practices Act and the California Rosenthal's Fair Debt Collection Practices Act (applying to all creditors the Federal statute) in that she wishes that all communications cease in relation to the debt except in the form of a written response to the request contained in this letter or those allowed per the statute.

Please send your response as follows:

        Mortgage Litigation Consultants
        9245 Laguna Springs Drive, Suite 200
        Elk Grove, CA  95758

While this letter has been sent as a Qualified Written Request under RESPA (as applicable) and you have 60 business days to respond to the QWR, <u>you must comply with the request under the Truth In Lending Act related to the rescission and identifying the true owners of the loan within twenty calendar days</u>.

If you should have any questions, please feel free to contact me at (916) 275-0907.

Sincerely,

David A. Pereira

---

[i] Failing to comply with these deadlines (individual or together) may result in a legal court filing without any further notice to enforce the statutes.  If you require more time to respond, please request an extension.  No extension is granted without our specific approval.

# - COURT EXHIBIT C -

Case 2:09-cv-01037-JFM    Document 25    Filed 09/28/09    Page 40 of 40

Home > Industry Analysis > Failed Banks > Failed Bank Information

# Failed Bank Information

## Information for IndyMac Bank, F.S.B., and IndyMac Federal Bank, F.S.B., Pasadena, CA

I. **Introduction**
II. **Press Release**
III. **Acquiring Financial Institution**
IV. **Question and Answer Sheet**
   - En Español
   - Chinese Language Version  (350 kb PDF File PDF Help)
V. **Banking Services**
VI. **Loan Customers**
VII. **Possible Claims Against The Failed Institution**
VIII. **Dividend Information**
IX. **Brokered Deposits (Institutional Brokers)**
X. **Agreements**
   - Purchase and Assumption Agreement  (1.1 mb PDF File - PDF Help)
   - Master Purchase Agreement by and among FDIC as Conservator for IndyMac Federal Bank, FSB and IMB HoldCo LLC, and OneWest Bank Group LLC  (5.3 mb PDF File - PDF Help)
   - Loan Sale Agreement Between the FDIC as Receiver for IndyMac Federal Bank, FSB and OneWest Bank, FSB  (3.5 mb PDF File - PDF Help)
   - Shared Loss Agreement Between the FDIC as Receiver for IndyMac Federal Bank, FSB and OneWest Bank, FSB  (1.7 mb PDF File - PDF Help)
XI. **IndyMac Bank, F.S.B., Contact Information**
XII. **Balance Sheet Summary**

## I. Introduction

On **March 19, 2009**, the Federal Deposit Insurance Corporation (FDIC) completed the sale of IndyMac Federal Bank, FSB, Pasadena, California, to OneWest Bank, F.S.B., Pasadena, California. OneWest Bank, FSB is a newly formed  federal savings bank organized by IMB HoldCo LLC.  All deposits of indyMac Federal Bank, FSB have been transferred to OneWest Bank, FSB.

On **July 11, 2008**, IndyMac Bank, F.S.B., Pasadena, CA was closed by the Office of Thrift Supervision (OTS) and the FDIC was named Conservator.  All non-brokered insured deposit accounts and substantially all of the assets of IndyMac Bank, F.S.B. have been transferred to IndyMac Federal Bank, F.S.B. (IndyMac Federal Bank), Pasadena, CA "assuming institution") a newly chartered full-service FDIC-insured institution.  No advance notice is given to the public when a financial institution is closed.

The FDIC has assembled useful information regarding your relationship with this institution.  Besides a checking account, you may have Certificates of Deposit, a car loan, a business checking account, a commercial loan, a Social Security direct deposit, and other relationships with the institution.  The FDIC has compiled the following information which should answer many of your questions.

Back to top

## II. Press Release