IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHAUNN A. FULLMER,

            Plaintiff,                  No. 2:09-cv-1037 JFM

       vs.

JPMORGAN CHASE BANK, NA, etc.,
et al.,

            Defendants.        ORDER

_____/

          All parties have consented to proceed before the undersigned for all purposes. See 28 U.S.C. § 636(c).  The following motions came on regularly for hearing October 29, 2009: defendant JPMorgan Chase Bank NA's motion to dismiss, defendant OneWest Bank's motion to strike, and motion to dismiss.  Kimberlee A. Rode appeared for plaintiff.  There was no appearance for defendant JPMorgan Chase Bank, N.A.  Joshua R. Mandell appeared telephonically for defendant OneWest Bank.  Upon review of the motions and the documents in support and opposition, upon hearing the arguments of counsel and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

          Plaintiff alleges defendants violated federal and state laws in the execution and servicing of a mortgage agreement.

/////

1

1              Background

2              Plaintiff and his wife obtained a mortgage loan for $500,000.00 secured by a deed

3    of trust against real estate recorded on March 3, 2006.  The deed of trust identifies 1st National

4    Lending Services as the lender, Mortgage Electronic Registration Systems, Inc. as the nominee

5    beneficiary, and Greenhead Investments, Inc. as the trustee, with plaintiff and his wife as

6    borrowers.

7              Plaintiff and his wife obtained a second mortgage loan in the sum of $45,000.00

8    on or about March 3, 2006.  That deed of trust identifies 1st National as the lender, Greenhead as

9    the trustee and plaintiff and his wife as the borrowers.

10             Notice of default was recorded on June 23, 2009.[1]

11             Plaintiff believes that defendants JPMorgan Chase Bank, N.A. (hereafter "JP

12   Morgan") and OneWest Bank ("OneWest") are servicing agents for their existing mortgage, but

13   also allege defendants "could be a servicing agent, lender, or have an interest in the subject loan,

14   . . . and are intentionally keeping their true role a mystery in light of plaintiff's request for said

15   information in a Qualified Written Request."  (Complt. at ¶¶ 45, 85.)

16             On January 14, 2009, plaintiff, relying on the fact he and his wife allegedly did

17   not receive accurate Notices of Right to Cancel, sent a letter to Washington Mutual Bank,

18   IndyMac Federal Bank, and 1st National Lending Services, asserting, *inter alia*, that if

19   defendants did not agree to various loan modifications, plaintiff intended to rescind the loan.

20   Plaintiff also requested that defendants inform plaintiff of defendant's relationship to the loan

21   and to identify the owner of plaintiffs' obligation.  Finally, plaintiff directed defendants to stop

22   trying to collect on the loan and to cease all further collection communications.  Plaintiff alleges

23   defendants failed to respond to the letter or to comply with its terms.

24   /////

25

26       [1] Defendants aver plaintiff defaulted on or about January 1, 2009, and as of June 19, 2009, the defaulted amount was $16,205.28.

On April 17, 2009, plaintiff filed the instant action alleging that defendants 1) violated the Truth in Lending Act ("TILA"), 15 U.S.C. 1601 et seq., by failing to provide two accurate copies of Notice of Right to Cancel and failing to timely respond to plaintiffs' rescission letter; 2) violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq. by likewise failing to respond to the same correspondence; 3) violated the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code § 1788 et seq., by continuing to try to collect on the relevant loan after receiving plaintiff's letter; 4) violated California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 et seq.; 5) breached the Implied Covenant of Good Faith and Fair Dealing; 6) are pursuing wrongful foreclosure; 7) have recorded documents impairing plaintiff's title, constituting slander of title; and 8) have taken actions and inaction that have impaired plaintiff's credit.

STANDARDS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1974 (2007). Thus, a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the plaintiff's claims, even if the plaintiff's allegations are true.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

The court is permitted to consider material properly submitted as part of the complaint, documents not physically attached to the complaint if their authenticity is not

1   contested and the complaint necessarily relies on them, and matters of public record.  Lee v. City

2   of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  Matters of public record include

3   pleadings and other papers filed with a court.  Mack v. South Bay Beer Distributors, 798 F.2d

4   1279, 1282 (9th Cir. 1986).  The court need not accept as true conclusory allegations,

5   unreasonable inferences, or unwarranted deductions of fact.  Western Mining Council v. Watt,

6   643 F.2d 618, 624 (9th Cir. 1981).

7           Rule 12(e) of the Federal Rules of Civil Procedure is designed to strike at

8   unintelligibility, rather than want of detail.  See Woods v. Reno Commodities, Inc., 600 F. Supp.

9   574, 580 (D. Nev. 1984); Nelson v. Quimby Island Reclamation Dist., 491 F. Supp. 1364, 1385

10  (N.D. Cal. 1980).  The rule permits a party to move for a more definite statement "[i]f a pleading

11  is so vague that a party cannot reasonably be required to frame a responsive pleading."  Fed. R.

12  Civ. P. 12(e).  The function of such a motion is thus not to require the pleader to disclose details

13  of the case, see Boxall v. Sequoia Union High Sch. Dist., 464 F. Supp. 1104, 1114 (N.D. Cal.

14  1979), or to provide the evidentiary material that may properly be obtained by discovery, see

15  Famolare, Inc. v. Edison Bros. Stores, Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981).  A motion

16  for more definite statement should be denied if a pleading meets federal standards by providing a

17  short and plain statement of the claim showing that the pleader is entitled to relief.  See Fed. R.

18  Civ. P. 8(a)(2).

19          Defendants request the court take judicial notice of the following documents

20  recorded by the El Dorado County Recorder:

21      1.   Plaintiff and his wife acquired title to 4048 Monte Verde Drive, El Dorado Hills,

22           CA, by grant deed recorded on March 3, 2006.

23      2.   Plaintiff and his wife obtained a mortgage loan for $500,000.00 secured by a deed

24           of trust against said real estate recorded on March 3, 2006.  The deed of trust

25           identifies 1st National Lending Services as the lender, Mortgage Electronic

26  /////

Registration Systems, Inc. as the nominee beneficiary, and
Greenhead Investments, Inc. as the trustee, with plaintiff and his
wife as borrowers.

3.    Plaintiff and his wife obtained a second mortgage loan in the sum of $45,000.00
on or about March 3, 2006.  That deed of trust identifies 1st National as the
lender, Greenhead as the trustee and plaintiff and his wife as the borrowers.

4.    Notice of default was recorded on June 23, 2009.[2]  The notice of default was
signed by Clayton Goff for NDEx West, LLC as Agent for Beneficiary, and
directed plaintiff to contact OneWest Bank, FSB, c/o NDEx West, LLC, 15000
Surveyor Boulevard, Suite 500, Addison, Texas  75001-9813 to "find out the
amount [he] must pay, or to arrange for payment to stop the foreclosure, or if [the]
property is in foreclosure for any other reason." Id.

Defendants' request for judicial notice will be granted.

ANALYSIS

Plaintiff contends that, under TILA, he is entitled to rescind the home loans as a result of 1st National's original notice violations.

As to plaintiff's TILA damages claim, plaintiff contends defendants failed to respond to plaintiff's January 14, 2009 rescission request as required by 15 U.S.C. § 1635(b). Pursuant to that section, "Within twenty (20) days of receiving a notice of rescission, the creditor is to return any money or property and reflect termination of the security interest."  15 U.S.C. § 1635(b).  According to defendants, plaintiff's correspondence did not constitute a rescission request because it was not an unequivocal notice of rescission but rather a form letter constituting a settlement offer.  Whether or not the letter mailed January 14, 2009 is a proper notice of rescission is a question of fact that is not susceptible to resolution on a motion to dismiss.

---

[2]  Defendant avers plaintiff defaulted on or about January 1, 2009, and as of June 19, 2009, the defaulted amount was $16,205.28.

However, the issue here is whether defendants JP Morgan and/or OneWest can be liable under TILA.  Both defendants argue they are neither creditors nor assignees of the creditor and thus cannot be held liable under TILA because only the original creditor and assignees of that creditor may be liable under 15 U.S.C. §§ 1640, 1641.

Civil liability under TILA applies to creditors.  See 15 U.S.C. § 1640(a) (2009) (establishing civil liability for "any creditor" for failure to comply with any requirement of "[15 U.S.C. §§ 1631 et seq.], including any requirement under section 125 [15 U.S.C. § 1635].").  Title 15 U.S.C. § 1641 provides that any TILA action (including a rescission claim) which may be brought against a creditor may also be brought against the assignee of a creditor.  In the next section, entitled "Liability of Assignees," TILA clearly contemplates that a court can levy damages against assignees if the disclosure violations made by the original lender are "apparent on the face of the disclosure statement."  15 U.S.C. § 1641(a).[3]

However, under § 1641, loan servicers "shall not be treated as an assignee of [a consumer] obligation for purposes of this section unless the servicer is or was the owner of the obligation."  15 U.S.C. § 1641(f) (2009) (emphasis added).  See also Marks v. Ocwen Loan Servicing, 2008 U.S. Dist. LEXIS 12175, at *4-5, 2008 WL 344210 (N.D.Cal. Feb. 6, 2008) ("Although TILA provides that assignees of a loan may be liable for TILA violations, loan servicers are not liable under TILA as assignees unless the loan servicer owned the loan obligation at some point.")

The complaint identifies JPMorgan as successor and/or acquirer of assets and liabilities to/from Washington Mutual, and which holds and services loans, and OneWest as a bank that holds and services the loan and was successor to IndyMac Federal Bank.  (Id. at 4.)

---

[3]  Section 1641(c) explicitly states that § 1641 does not affect the right of a consumer to rescind a transaction against an assignee under § 1635.  Thus, a consumer may rescind against an assignee to the full extent it would be able to rescind against the original creditor.  The violation need not be apparent on the face of the statement in order to pursue a rescission remedy.  Rowland v. Novus Financial Corp., 949 F.Supp. 1447, 1458-59 (D.Hawaii, 1996).

1    Construing the facts and all reasonable inferences from them in favor of plaintiff,

2    the court finds it plausible that JPMorgan was an assignee of the loan.[4]  See Bell Atl., 550 U.S. at

3    555.  Based on plaintiff's allegation that JP Morgan succeeded to and/or acquired assets and

4    liabilities from Washington Mutual, plaintiff has sufficiently pled that JP Morgan is subject to

5    liability under TILA.  See Pelayo v. Home Capital Funding, 2009 WL 1459419 (S.D. Cal. 2009)

6    (Pelayo sufficiently pled defendant mortgage servicer was liable under TILA under

7    circumstances where "it [was] not clear who the loan's holder [was]" and "documents submitted

8    by defendants [did] not show [an assignment of the loan] was never made.")  Defendants' motion

9    to dismiss plaintiff's TILA claims against JPMorgan will be denied.

10    It appears that OneWest, however, is just a loan servicer.  As a loan servicer,

11    defendant OneWest cannot be held liable under TILA.  Thus, defendant OneWest's motion to

12    dismiss the TILA claim is granted.  Plaintiff will be granted leave to amend the complaint to

13    name the creditor or assignee.

14    TILA provides for private causes of action for monetary damages, pursuant to 15

15    U.S.C. § 1640(a).  Section 1640 also establishes a limitations period on damages claims,

16    providing that "[a]ny action under this section may be brought in any United States district court,

17    or in any other court of competent jurisdiction, within one year from the date of the occurrence of

18    the violation."  15 U.S.C. § 1640(e) (2009).  When a TILA violation is based on an insufficient

19    disclosure, the limitations period generally "starts at the consummation of the [loan] transaction."

20    King v. California, 784 F.2d 910, 915 (9th Cir.1986); see also Hubbard v. Fidelity Federal Bank,

21    91 F.3d 75, 79 (9th Cir.1996) (holding that when a lender fails to comply with TILA's initial

22    disclosure requirements, a borrower has one year from obtaining the loan to file suit).  However,

23

24    [4]  JP Morgan argues it has no recorded interest in the loan and is not the lender.  Although
     the documents JP Morgan submitted for judicial notice suggest that JP Morgan was not the
25    original lender or an assignee of the loan, the documents do not conclusively establish that the
     loan was never assigned to JP Morgan.  The Court declines to find at this juncture that JP
26    Morgan never had any ownership interest in the loan.

1    when a lender has refused to rescind a loan in violation of TILA, a borrower has one year from

2    the date of a lender's refusal to rescind to file suit for damages arising from that violation.

3    Miguel v. Country Funding Corp., 309 F.3d 1161, 1164 (9th Cir.2002); see also 15 U.S.C.

4    § 1635(g) (2009) (TILA's "Right of Rescission" section, providing, "[i]n any action in which it is

5    determined that a creditor has violated this section, in addition to rescission the court may award

6    relief under section 1640 of this title for violations of this subchapter not relating to the right to

7    rescind.")

8          Plaintiff signed the promissory note on or about February 24, 2006, and brought

9    the instant action over three years later, on April 17, 2009.  Plaintiffs' damages claim is therefore

10   barred by the statute of limitations to the extent it is based on alleged violations resulting from

11   insufficient disclosures at the time of consummation of the loan.

12          However, plaintiff also alleges he is entitled to damages because defendants failed

13   to respond to the rescission notice of January 14, 2009.  Plaintiff's notice of rescission was

14   timely if, as alleged, defendants did not provide the required transaction documents, including

15   required copies of the notice of right to cancel containing the date of expiration of the

16   cancellation period.[5]  Because defendants' refusal to rescind the loan following plaintiff's request

17   occurred less than a year before plaintiff filed the claim for TILA damages, the claim for this

18   violation is not time-barred.  Accord Rowland v. Novus Fin. Corp., 949 F.Supp. 1447, 1455

19   (D.Haw.1996).  Defendants' motion to dismiss plaintiff's TILA claims as time-barred will be

20   denied.

21          Defendants contend that plaintiff's claim for rescission under TILA also fails

22   because plaintiff has not alleged an ability to tender.  However, the TILA statute does not

23   specifically require plaintiff to plead tender in order to state a cognizable TILA claim.  15 U.S.C.

24

25        [5] While a debtor normally has three days to rescind a loan transaction after it has been
26   consummated, the debtor has up to three years to rescind the transaction if the required notice or
material disclosures are not delivered.  See 15 U.S.C. § 1635(f) (2009); 12 C.F.R. 226.23 (2009).

§ 1635.  <u>Singh v. Washington Mut. Bank</u>, 2009 WL 2588885 *4 (N.D. Cal. 2009)(collecting cases).  Defendants' motion to dismiss the rescission claim for failure to plead ability to tender will be denied.

Defendants move to dismiss plaintiff's RESPA claim that defendants failed to respond to plaintiff's qualified written request ("QWR"), mailed January 14, 2009.  RESPA defines a QWR as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that-[¶] (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and [¶] (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B) (2009).  When a loan servicer receives a QWR, it must either correct the borrower's account or, after conducting an investigation, provide the borrower with a written explanation of:  (1) why the servicer believes the account is correct; or (2) why the requested information is unavailable.  <u>See</u> 12 U.S.C. § 2605(e)(2).

On or about January 14, 2009, plaintiff mailed what he claims was a "Qualified Written Request" (as defined under RESPA) and a demand for rescission (under TILA) to the following:  Washington Mutual Bank, IndyMac Federal Bank, and 1st National Lending Services.  (Docket 14-2 at 57.)  Plaintiff alleges that defendants JP Morgan and OneWest are agents of the owner of the obligation and are therefore jointly and severally liable for the RESPA violations under a common law theory of agency.  (Complt. at 20.)

However, as defendant OneWest points out, defendant OneWest was not served with a copy of the QWR and, in fact, wasn't even in existence on January 14, 2009, the date the QWR was mailed.  Plaintiff has failed to rebut this evidence.[6]  Defendant JP Morgan was also

---

[6] Plaintiff alleges that defendants JPMorgan and OneWest received the plaintiff's letter dated January 14, 2009, referencing Exhibits "C" and "D."  (Complt. at 23.)  However, review of exhibits C & D reflect that the January 14, 2009 letter was mailed to Washington Mutual Bank, IndyMac Federal Bank, and 1st National Lending Services, not to JP Morgan or OneWest.

1   not mailed the QWR.  The complaint, as presently written, fails to allege facts sufficient for the

2   court to draw a reasonable inference that either defendant OneWest or JP Morgan actually

3   received the alleged QWR.  See 12 U.S.C. § 2605(e)(1)(A).  Accordingly, plaintiff's RESPA

4   claims will be dismissed with leave to amend.

5           Defendants move to dismiss plaintiff's claims under the RFDCPA arguing that a

6   loan servicer on a mortgage secured by real estate cannot be held liable under the RFDCPA.

7   However, defendants rely on federal law, which excludes loan servicers.  The RFDCPA

8   definition of a debt collector is broader than the federal definition.  Izenberg v. ETS Services,

9   LLC, 589 F.Supp.2d 1193, 1199 (C.D. Cal. 2008).  Under California law, a debt collector is

10  defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or

11  herself or others, engages in debt collection."  Cal. Civ. Code § 1788.2(c).

12          The court acknowledges that the activity of foreclosing on a property pursuant to a

13  deed of trust is not the collection of a debt within the meaning of the RFDCPA.  Izenberg v. ETS

14  Servs., LLC, 589 F.Supp.2d 1193, 1199 (C.D.Cal.2008); Walker v. Equity 1 Lenders Group,

15  2009 U.S. Dist. LEXIS 40991, at *19-20, 2009 WL 1364430 (S.D.Cal. May 14, 2009); Ines v.

16  Countrywide Home Loans, Inc., 2009 U.S. Dist. LEXIS 21016, at *10-11, 2009 WL 690108

17  (S.D.Cal. Mar. 12, 2009); Tina v. Countrywide Home Loans, Inc., 2008 U.S. Dist. LEXIS 88302,

18  at *17-19, 2008 WL 4790906 (S.D.Cal. Oct. 30, 2008).  See also Fuentes v. Deutsche Bank,

19  2009 U.S. Dist. LEXIS 57931 (S.D.Cal. July 8, 2009) (granting defendant's motion for judgment

20  "[s]ince a residential mortgage is not a debt and a home foreclosure is not debt collection within

21  the meaning of the statute"); Gamboa v. Trustee Corps., 2009 WL 656285 (N.D.Cal. March 12,

22  2009) ("[T]he law is clear that foreclosing on a property pursuant to a deed of trust is not a debt

23  collection within the meaning of the RFDCPA.").

24          Here, plaintiff alleges that defendants "repeatedly contacted plaintiff attempting to

25  collect the debt by a high volume of phone calls and written correspondence."  (Complt. at 23.)

26  This is sufficient to state a claim for violation of the RFDCPA.  See Lemieux v. Jensen, 2004

1   WL 302318 *2 (S.D. Cal.) (interpreting federal law).  Defendants' motion to dismiss plaintiff's

2   RFDCPA claim will be denied.

3            Plaintiff's Unfair Competition Law claims are preempted by federal law and will

4   be dismissed with prejudice.  Garza v. American Home Mortg., 2009 WL 188604 at *5

5   (E.D.Cal.); Adams v. SCME Mortg. Bankers, Inc., 2009 WL 1451715 at *10 (E.D.Cal.).

6            Plaintiff's claim under the implied covenant of good faith and fair dealing fails as

7   well.  "The prerequisite for any action for breach of the implied covenant of good faith and fair

8   dealing is the existence of a contractual relationship between the parties, since the covenant

9   is an implied term in the contract."  Smith v. City and County of San Francisco, 225 Cal. App. 3d

10   38, 49 (1990).  Plaintiff has not properly alleged any contractual relationship with either

11   defendant, plaintiff's' instant claim cannot survive.  Moreover, California has rejected a rule that

12   would apply tort recovery for breach of the implied covenant in "'normal commercial banking

13   transactions.'"  Velazquez v. GMAC Mortg. Corp., 605 F. Supp. 2d 1049, 1072 (C.D. Cal., 2008)

14   (quoting Mitsui Mfrs. Bank v. Superior Court, 212 Cal. App. 3d 726, 729 (1989)).  Plaintiff has

15   presented no authority to the contrary.  Thus, defendants' motion to dismiss plaintiff's claim

16   under the implied covenant of good faith and fair dealing will be granted with leave to amend.

17            Plaintiff's claim for wrongful foreclosure fails for want of tender.

18            A defaulted borrower is "required to allege tender of the amount of
19            [the lender's] secured indebtedness in order to maintain any cause of
             action for irregularity in the sale procedure." Abdallah v. United
20            Savings Bank, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286
             (1996), cert. denied, 519 U.S. 1081, 117 S.Ct. 746, 136 L.Ed.2d 684
21            (1997). In FPCI RE-HAB 01 v. E & G Investments, Ltd., 207
             Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989), the California
22            Court of Appeal explained:

23               . . . generally "an action to set aside a trustee's sale
               for irregularities in sale notice or procedure should
24               be accompanied by an offer to pay the full amount of
               the debt for which the property was security.". . . .
25               This rule . . . is based upon the equitable maxim that
               a court of equity will not order a useless act
26               performed. . . . "A valid and viable tender of
               payment of the indebtedness owing is essential to an

1   action to cancel a voidable sale under a deed of
    trust." . . .   The rationale behind the rule is that if
2   plaintiffs could not have redeemed the property had
    the sale procedures been proper, any irregularities in
3   the sale did not result in damages to the plaintiffs.
    (Citations omitted.)
4
    An action to set aside a foreclosure sale, unaccompanied by an offer
5   to redeem, does not state a cause of action which a court of equity
    recognizes. <u>Karlsen v. American Sav. & Loan Assn.</u>, 15 Cal.App.3d
6   112, 117, 92 Cal.Rptr. 851 (1971). The basic rule is that an offer of
    performance is of no effect if the person making it is not able to
7   perform. <u>Karlsen</u>, 15 Cal.App.3d at 118, 92 Cal.Rptr. 851 (citing
    Cal. Civ.Code, § 1495.) Simply put, if the offeror "is without the
8   money necessary to make the offer good and knows it" the tender is
    without legal force or effect. <u>Karlsen</u>, 15 Cal.App.3d at118, 15
9   Cal.App.3d 112, 92 Cal.Rptr. 851 (citing several cases).

10  <u>Sitanggang v. Indymac Bank</u>, F.S.B., 2009 WL 1286484 at *2 (E.D. Cal. 2009)(Judge O'Neill).

11  Defendants' motion to dismiss this claim will be granted.

12          Plaintiff's claims for "slander of title" and "slander of credit" fail to state a

13  cognizable claim as written and are dismissed.

14          Plaintiff concedes he sought punitive damages in error.  Defendant's motion to

15  strike plaintiff's request for punitive damages with respect to the RESPA and TILA claims is

16  granted.  In all other respects, defendants' motion to strike is denied.

17          Finally, plaintiff also alleges that defendant OneWest violated 15 U.S.C.

18  § 1641(f)(2).  Plaintiff contends defendant violated this section by not providing the name,

19  address, and telephone number of the owner of the obligation after plaintiff requested this

20  information in a letter mailed January 14, 2009.  Plaintiff alleges defendant is a servicer of the

21  loan but qualifies this allegation by stating the true status of defendant is unknown.  Regardless of

22  the status of defendant, liability cannot lie under section 1641(f)(2).  Subsection (f)(2) requires the

23  servicer to provide the name, address, and telephone number of the owner of the obligation.  That

24  subsection further provides that a servicer is expressly exempted from being considered as the

25  owner of the obligation.  TILA, however, establishes a private right of action and provides for

26  statutory damages for violations of TILA only against the creditor (the owner of the obligation)

1 and assignees.  15 U.S.C. § 1640(a).  Injunctive relief is not a remedy provided in the statute and

2 should not be read into it.  See Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19

3 (1979) ("elemental canon of statutory construction that where a statute expressly provides a

4 particular remedy or remedies, a court must be chary of reading others into it"); see also Religious

5 Technology Center v. Wollersheim, 796 F.2d 1076, 1088 (9th Cir. 1986) (no private right to

6 injunctive relief under civil RICO).  Thus, section 1640(a) precludes an action against a servicer,

7 whether plaintiff seeks damages or injunctive relief.  To the extent plaintiff argues alternatively

8 that defendant is not a servicer, then section 1641(f)(2) is inapplicable in that obligations are

9 imposed under this section only on servicers.

10                 Accordingly, IT IS HEREBY ORDERED that:

11                 1.  Defendants' August 31, 2009 requests for judicial notice (#21, 22) are granted.

12                 2.  Defendant OneWest's motion to strike plaintiff's requests for punitive damages

13 (#22) is granted; in all other respects, the motion to strike is denied.

14                 3.  Defendant JP Morgan's August 31, 2009 (#20) motion to dismiss is granted in

15 part and denied in part, as set forth above.

16                 4.  Defendant OneWest's August 31, 2009 (#23) motion to dismiss is granted in

17 part and denied in part, as set forth above.

18                 5.  To the extent plaintiff may be able to cure the deficiencies noted above, plaintiff

19 may file, no later than thirty days from the date of this order, a second amended complaint.

20 DATED:  November 12, 2009.

21

22

23                     UNITED STATES MAGISTRATE JUDGE

24 /001; fullmer.mtd

25

26