Kimberlee A. Rode (State Bar No. 186132)
Law Office of Kimberlee A. Rode
9284 Jackson Road
Sacramento, CA  95826
Telephone: (916) 417-4564
Facsimile: (916) 244-7006

Attorney for Plaintiff Shaunn A. Fullmer

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shaunn A. Fullmer,<br><br>          Plaintiff,<br><br>    and<br><br>JPMorgan Chase Bank, NA., as successor and/or acquirer of assets and liabilities to/from Washington Mutual Bank  and LENDER DOE ONE and OneWest Bank, FSB as successor by acquisition of Indymac Federal Bank and LENDER DOE TWO<br><br>        Defendants | Case No.:  2:09-cv-01037-GEB-JFM<br><br>OPPOSITION TO MOTION TO DISMISS BY JPMORGAN CHASE<br><br>[FRCP Rule 12(b)(6)]<br><br>Date:    December 10, 2009<br>Time:    11:00 a.m.<br>Ctrm:   26<br>Judge:  Hon. John F. Moulds |

Plaintiff, Shaunn A. Fullmer, through his attorney, file this opposition in response to Defendant, JPMorgan's Motion to Dismiss the Plaintiff's First Amended Complaint, and state:

## I. INTRODUCTION

Defendant JPMorgan asks the Court to dismiss the case for a variety of reasons.  These reasons include:

- As to Plaintiff's TILA claims, that JPMorgan has no "recorded" interest the Plaintiffs loan and asserts that the subject loans are purchase money loans and therefore not subject to the rescission provisions of the Truth In Lending Act.  Further, they state that rescission is time barred.

- As to Plaintiff's RESPA claim, they state Plaintiff has not alleged any pecuniary loss.

– 1 –

- As to Plaintiff's Fair Debt Collection Practices Act they state the claims are based on conclusionary allegations.

- As to Plaintiff's RESPA claims, they state the only basis for its validity is root in the TILA, RESPA and Fair Debt Collection claims which they contend fails.

- As to the Slander of Credit claim, they claim it is merely a recasting of the Fair Credit Reporting Act claims.

For reasons that we will set forth in our arguments, Plaintiff contends they arguments are flawed and without merit and their entire Motion to Dismiss should not be granted.

## II. CLARIFING POINTS RELATED TO BACKGROUND AND SUMMARY OF RELEVANT FACTS

The Grant Deed provided by JPMorgan (RJN Exhibit 1) is not how Plaintiff acquired the subject property.  Close review of the Grant Deed reveals that the Grantor and Grantee were Shaunn A. Fullmer and Detra M. Fullmer, and the Grant Deed appears to merely clarify title from community property to joint tenancy.

## II.  APPLICABLE LEGAL STANDARD

Defendant contends that the Plaintiff's complaint fails to state a cause of action in which relief can be granted.  Generally, such requests are looked upon with disfavor and generally only appropriate when the Plaintiff can prove no set of facts supporting relief.  Guerrero v. Gates (9th Circuit 2005) 357 F3d 911, 916.  Said motions are rarely granted.  Gilligan v. Jamco Dev. Corp. (9th Circuit 1977) 108 F3d 246, 249.

Federal Rules of Civil Procedure 8(a)(2) require a Plaintiff to state a claim under liberal pleading requirements.

A complaint need only plead enough facts to state a claim to relief that is plausible on its face.  Bell Atlantic Corp. v. Twombly (2007) 550 US 544, 127 S Ct 1955, 167 L Ed2d 929, 949.

A complaint must contain sufficient allegations in the complaint to raise a right of relief above the speculative level.  Bell Atlantic Corp. v. Twombly (2007) 550 US 544, 127 S Ct 1955, 167 L Ed2d 929, 949.

### III.  Argument

**A.     JPMORGAN CHASE IS NOT THE REAL PARTY IN INTEREST TO REQUEST RELIEF REQUESTED BY THEIR MOTION UNDER FRCP §17.**

Federal Rule of Civil Procedure §17(a) states that claims of Plaintiffs and Defendants can only be prosecuted in the name of the real party in interest:

**Rule 17. Plaintiff and Defendant; Capacity; Public Officers**

**(a) Real Party in Interest.**

**(1) Designation in General.**

**An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought:**

**(A) an executor;**
**(B) an administrator;**
**(C) a guardian;**
**(D) a bailee;**
**(E) a trustee of an express trust;**
**(F) a party with whom or in whose name a contract has been made for another's benefit; and**
**(G) a party authorized by statute.**
**(2) Action in the Name of the United States for Another's Use or Benefit.**

**When a federal statute so provides, an action for another's use or benefit must be brought in the name of the United States.**

**(3) Joinder of the Real Party in Interest.**

**The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.**

This is further supported by <u>Kaur v. ETS Services, LLC</u>, No. 2:09-cv-01497-JAM-EFB (E.D.Cal. 09/23/2009) :

**Federal Rule of Civil Procedure 17(a) requires every action be prosecuted in the name of the real party in interest.**

Defendant JPMorgan has brought this opposition action before the Court to dismiss parts of the action while they are not the real party in interest to the contractual obligation but are instead the servicing agent of some unknown party.  They clearly state they are not the lender of the loan (MTD Page 1, lines 18-19).

As such, related to all arguments regarding the contractual request for rescission and related claims should be denied as they are not entitled to the relief requested or any relief that they are requesting. Plaintiff believes they cannot possibly impact the underlying contract as JPMorgan is not a party to the contract for which relief is being requested. We will address their being held liable for TILA violations later.

In effect, they admit they are merely a loan servicer and not the owner of the obligation. This presents substantial standings issues. They are not listed on the Note and Deed of Trust, and they have not provided any proof to the court that they are in possession of the note and entitled to enforce it under the Uniform Commercial Code. Under UCC § 3-301:

**"Person entitled to enforce" an instrument means (i) <u>the holder of the instrument</u>, (ii) <u>a nonholder in possession of the instrument who has the rights of a holder</u>, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3-309 or 3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.**

JPMorgan has not even provided a single scintilla of evidence that they are entitled to enforce the note under the UCC. Their Request for Judicial Notice Exhibits 2 and 3 show that 1st National Lending Service is the lender.

Next, Plaintiff contends it becomes a very huge stretch that a party entitled to enforce an instrument also has the authority act on a rescission of the instrument or defend a legal action related to it. Plaintiff could not find anything in the UCC that would allow the person, who is not the owner of the instrument, the authority to act to terminate its existence or defend it. Therefore, Plaintiff contends that while the UCC does give JPMorgan the authority to "enforce" the obligation with Plaintiff, it does not give JPMorgan the authority to act as the real party in interest in litigation and ask the court to make rulings that only the real party in interest can ask the court for. Plaintiff is not even clear on how the Court could grant their motion to dismiss as to JPMorgan and it have any bearing on the underlying contract of Plaintiff since JPMorgan is not a party and the real party as to who owns the contract is completely unknown to the Plaintiff and this Court.

JPMorgan, as a servicer, <u>may</u> get its authority from some sort of a contract between the actual owner of the obligation, plead as LENDER DOE ONE, but has failed to provide any evidence to the Court that any

such agreement exists or that any such agreement grants them the authority to appear before this court and ask the court to do what it is requesting.  In fact, many Pooling and Servicing Agreements designate and define who has the authority to defend actions.  These are unknown contractual terms that JPMorgan has not provided this court any evidence of its authority.

Considering the facts and admissions in this case by the pleadings (JPMorgan admission that it is merely a servicer), Plaintiff believes that insufficient evidence is before the court to make a ruling.

Conversely, Plaintiff acknowledges that they have named JPMorgan as a Defendant in this case and they have a right to defend themselves in the action.  However, upon close scrutiny of what they are asking the Court to do, they are asking the Court to dismiss parts of the action under FRCP §12(b)(6) that do not apply to them, as it applies to some unknown entity that they merely service the obligation for.  They are asking for relief as the owner of the obligation, not defending them related to a servicer.

Plaintiff does not have a contract with JPMorgan yet JPMorgan is asking the Court to the grant them relief that is contractual in nature.  Specifically, they are asking that the rescission under TILA is invalid, lacks tender and should be dismissed.  Dismissed as to whom?  JPMorgan?  As pled, Plaintiff does not have a rescindable contract with them.

Since JPMORGAN  is not the real party in interest, has not provided any factual evidence to the court they are entitled to the relief requested, the entire Motion to Dismiss should be denied.

Furthermore, Plaintiff requests that the Court order JPMORGAN to identify and join the real party in interest under FRCP 19, which states:

**Rule 19. Required Joinder of Parties**

**(a) Persons Required to Be Joined if Feasible.**
**(1) Required Party.**
**A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:**
**(A) <u>in that person's absence, the court cannot accord complete relief among existing parties</u>; or**
**(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:**
**(i) <u>as a practical matter impair or impede the person's ability to protect the interest</u>; or**
**(ii) <u>leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest</u>.**
**(2) Joinder by Court Order.**

**If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.**

The real party in interest, named as LENDER DOE ONE in the complaint, of which JPMORGAN is attempting to seek relief for, must be joined in this action.  In the alternative, JPMORGAN may not act in this action in its own name but must do so in the name of the real party in interest.  Plaintiff does not think it is feasible for the Court to grant this Motion to Dismiss and have it actually apply to the contract in which JPMORGAN is servicing.  Plaintiff believes, since JPMORGAN is not a party to the contract, if the Court would grant the Motion, the rescission would still be a pending matter as to the true owner of the contract because the Court cannot afford relief to someone that the Court does not even know.  Which then leaves the matter unresolved thereby invoking FRCP §19.  Plaintiff does not understand how the Court can grant the relief requested in light of FRCP §19.

Furthermore, this Court on November 13, 2009 ordered:

**ORDER signed by Magistrate Judge John F. Moulds on 11/13/2009 ORDERING [30] Order on Motion to Dismiss is VACATED. Motions filed by defendants JP Morgan Chase and One West will be heard on 12/10/09 at 11:00 a.m. before the undersigned.**

Therefore, Plaintiff contends this standing issue and the requirement of FRCP §19 also applies to Defendant OneWest.  In fact on October 29, 2009, at oral arguments before your Honor, this issue of standing was raised.  Paraphrasing, the Court asked counsel for OneWest, "Someone in this Court knows who owns the loan is it that you do not know or is it none of my business?"  In response, Joshua Mandell, OneWest's counsel responded, "Deustche Bank".  Upon further inquiry, they were to provide more details on what the full ownership name was as Deustche Bank  was a trustee for a pool of mortgages.  To date, that information has not been provided to Plaintiff.

What is clear from the Courts interaction at oral arguments on October 29, 2009 and again here, where JPMorgan states they do not have an interest in the loan but are merely a servicer, all of the parties are not before the Court, not because the Plaintiff did not try to find out (contained in his Qualified Written Request) but because JPMorgan and OneWest are purposely withholding this information.  Therefore, Plaintiff requests, under FRCP §19 that both JPMorgan and OneWest be ordered to provide the names of the

true owners of their respective obligations they are servicing the loans for and that Plaintiff be allowed to amend the complaint to properly include those parties so the Court can properly disposition this matter.

**B.      JPMORGAN IS LIABLE FOR TILA VIOLATIONS AS THEY HAVE NOT DISCLOSED THEIR PRINCIPAL AS AN AGENT.**

JPMorgan contends they have no liability under TILA as servicers are not considered assignees under the statute citing 15 U.S.C. §§1640, 1641.  To that point we agree and did not plead they were liable as assignees in the complaint.  Instead, Plaintiff pled that their liability only applies under agency law, specifically, at §§'s 36, 37, 46.  Generally, an agent is liable for claims against its principal when it has failed to identify its principal.  Until their admission, which did not include disclosure of who their principal is, they have completely acted like they were the owners of the obligation and purposely refused to comply with the Plaintiff's Qualified Written Request under RESPA for the name and address of the owner of the obligation and also requested the name and address of the owner under 15 U.S.C. §1641.  To be clear, Plaintiff does not consider JPMorgan (or OneWest) to be assignees for liability but acting as agents for undisclosed principals which makes them liable under common law agency and Restatement of Agency 3d.  Undisclosed and Unidentified principals are defined at §1.04(2) as:

> **(2) Disclosed, undisclosed, and unidentified principals.**
>
> **(a) Disclosed principal. A principal is disclosed if, when an agent and a third party interact, the third party has notice that the agent is acting for a principal and has notice of the principal's identity.**
> **(b) Undisclosed principal. A principal is undisclosed if, when an agent and a third party interact, the third party has no notice that the agent is acting for a principal.**
> **(c) Unidentified principal. A principal is unidentified if, when an agent and a third party interact, the third party has notice that the agent is acting for a principal but does not have notice of the principal's identity.**

Plaintiff contends that LENDER DOE ONE to the First Amended Complaint is an undisclosed principal and now that JPMorgan has admitted they are a servicing agent and do not own the obligation, they represent an unidentified principal.

Restatement of Agency at §6.07 states that a 3rd party may demand reasonable proof of the principal's identity:

> **(1) A principal's payment to or settlement of accounts with an agent discharges the principal's liability to a third party with whom the agent has made a contract on the principal's behalf only when the principal acts**

**in reasonable reliance on a manifestation by the third party, not induced by misrepresentation by the agent, that the agent has settled the account with the third party.**
**(2) A third party's payment to or settlement of accounts with an agent discharges the third party's liability to the principal if the agent acts with actual or apparent authority in accepting the payment or settlement.**
**(3) When an agent has made a contract on behalf of an undisclosed principal, (a) until the third party has notice of the principal's existence, the third party's payment to or settlement of accounts with the agent discharges the third party's liability to the principal;**
**(b) after the third party has notice of the principal's existence, the third party's payment to or settlement of accounts with the agent discharges the third party's liability to the principal if the agent acts with actual or apparent authority in accepting the payment or settlement; and**
**(c) <u>after receiving notice of the principal's existence, the third party may demand reasonable proof of the principal's identity and relationship to the agent.</u> Until such proof is received, the third party's payment to or settlement of accounts in good faith with the agent discharges the third party's liability to the principal.**

Restatement of Agency at §2.05 states that an agent is liable to a 3rd party when the agent, JPMorgan herein, has not taken reasonable steps to ensure that the 3rd party (Plaintiff herein) was properly notified of the facts that JPMorgan was merely an agent:

**A person who has not made a manifestation that an actor has authority as an agent and who is not otherwise liable as a party to a transaction purportedly done by the actor on that person's account <u>is subject to liability to a third party</u> who justifiably is induced to make a detrimental change in position because the transaction is believed to be on the person's account, if**
**(1) the person intentionally or carelessly caused such belief, or**
**(2) having notice of such belief and that it might induce others to change their positions, the person did not take reasonable steps to notify them of the facts.**

Restatement of Agency at §2.06 renders the principal liable for the acts of its agent when it is an undisclosed principal:

**(1) An undisclosed principal is subject to liability to a third party who is justifiably induced to make a detrimental change in position by an agent acting on the principal's behalf and without actual authority if the principal, having notice of the agent's conduct and that it might induce others to change their positions, did not take reasonable steps to notify them of the facts.**
**(2) An undisclosed principal may not rely on instructions given an agent that qualify or reduce the agent's authority to less than the authority a third party would reasonably believe the agent to have under the same circumstances if the principal had been disclosed.**

Plaintiff contends that the liability of JPMorgan is based on their continual failure to disclose their principal and their continual failure to indentify the limits and scope of their agency relationship with their principal.  Plaintiff further contends they have requested, contained in a Qualified Written Request under RESPA, for the principals identity, clearly allowed under common law, Restatement of Agency, RESPA and the Truth In Lending Act and they have refused to do so thereby subjecting themselves to liability to Plaintiff for the liabilities of their principal.

///

**C.      PUBLIC LAW 111-22 APPLIES TO THE SUBJECT LOANS.**

JPMorgan contends they have no liability under public law 11-22 that went into effect on May 22, 2009.  JPMorgan appears confused as to what Plaintiff contends in this regard.  As clearly articulated at §48, "impose liability on servicers who do not disclose the identity of the owners of the obligations they service loans for."  At §42, Plaintiff has pled that JPMorgan "failed to comply with Plaintiff's request for the name, address and telephone number of the true note holders…"

Public Law111-22 amended § 130 (contained in 15 U.S.C. 1640):

**(a)  Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this chapter, including any requirement under section 125 *subsection (f) or (g) of section 131 (added per the May 20, 2009 amendment)* or chapter 4 or 5 of this title with respect to any person is liable to such person in an amount equal to the sum of—**

This amendment was important in that it made creditors liable for servicers who fail to disclose the name, address and telephone of the owner of the obligation.  Section 131(f), stated above, is contained in the United States Code as 15 U.S.C. 1641 and both state:

**§ 131.  Liability of assignees**

**(f)  TREATMENT OF SERVICER.--**

**(2) … Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.**

In effect, the owner of the obligation is liable for the servicer failing to provide the name, address and telephone number of the owner of the obligation.  As previously stated, JPMorgan is liable for its acts as a servicer since they have not disclosed their principal under agency law.

**D.  PLAINTIFFS RESCISSION CLAIM AND REQUEST FOR DAMAGES IS TIMELY.**

Based on the standings issue raised previously, Plaintiff contends that JPMorgan does not have standing to request this portion of the complaint be dismissed as they are not the real party in interest.  By their own admission, they are not the owners of the obligation and the granting them o the relief they are requesting will not resolve the rescission issue pending before the court with the an unknown party.

JPMorgan assertion that a claim for rescission must be brought within 3 years of consummation is flawed.  This was recently decided in this District in <u>Santos v. Countrywide Home Loans</u>, No. 1: 09-CV-00912-AWI-SMS (E.D.Cal. 08/14/2009), in which the court analyzed in detail the Miguel case cited in JPMorgan's MTD as follows:

> **Immediately following the Miguel court's strong language barring TILA suits filed after the three year statute of repose, the court states:**

> **Miguel argues that she should have been allotted an additional year in which to file suit after the expiration of the three-year period afforded by the statute.** <u>**While Miguel is correct that 15 U.S.C. § 1640(e) provides the borrower one year from the refusal of cancellation to file suit, that is not the issue before us. Rather, the issue is whether her cancellation was effective even though it was not received by the Bank-the creditor-within the three-year statute of repose.**</u>

> **Miguel 309 F.3d at 1165. This language has led some courts to cite Miguel for the proposition that hold plaintiffs have an additional year in which to file suit if creditors fail to properly respond to a consumers notice of rescission. Horton v. California Credit Corp. Retirement Plan, 2009 WL 700223 at \*5 (S.D. Cal. 2009); Madura v. Countrywide Home Loans, Inc., 2008 WL 2856813 at \*13 (M.D. Fla. 2008) (recognizing courts are split on whether a suit must be filed within three years and citing Miguel for allowing suits brought after the three year limitations period).**

> **The question before the Ninth Circuit in Miguel was not whether a plaintiff who had timely given notice could file suit outside the three year limitations period, but rather whether a plaintiff who had not timely given notice to the correct Defendant could substitute said Defendant outside the three year limitations period. Miguel is therefore not controlling on the issue before the court.** <u>**The court finds that if Plaintiff--the borrower--had provided notice prior to the end of the limitations period on December 21, 2008, and Defendant--the creditor-- did not properly respond to that notice, Plaintiff could file suit after the end of the three year period of repose but within the one year limitations period borrowed from Section 1640.**</u>

The court in this District is clear, if the notice has been made within the 3 years, as the Plaintiff did in this case, and the creditor did not properly respond to the notice, as is pled in this case, the Plaintiff has one year to file suit under 15 U.S.C. §1640.

Another recent holding in this District, <u>Ramos v. Citimortgage</u> 2009 WL 86733, 3 (ED Cal. 2009) provides insight into this case.  The court stated in Ramos:

> **To exercise the right to rescind, a borrower must "notify the creditor of the rescission by mail, telegram or other means of written communication." 12 C.F.R. § 226.23(a)(2). Notice is deemed effective "when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business." Id.** <u>**If a creditor then refuses to cancel the loan, the borrower has one year from the refusal to file suit for damages pursuant to 15 U.S.C. § 1640.**</u> **Miguel v. Country Funding Corp., 309 F.3d 1161, 1165 (9th Cir. 2002) (citing 15 U.S.C. § 1640(e)). However, if the borrower files his or her suit over three years from the date of a loan's consummation, a court is powerless to grant rescission.  Id. at 1164 ("[S]ection 1635(f) represents an'absolute limitation on rescission actions' which bars any claims filed more than three years after the consummation of the transaction. (quoting King v. California, 784 F.2d 910, 913 (9th Cir. 1986)); accord Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998) ("[Section]**

1635(f) completely extinguishes the right of rescission at the end of the 3-year period."); see also Cazares v. Household Fin. Corp., 2005 U.S. Dist. LEXIS 39222, at *24-25 (C.D. Cal. 2005) (concluding that "[i]f certain <u>Plaintiffs did exercise their rights to rescind[] prior to the expiration of the three-year limitation period,</u>" such facts "would only entitle Plaintiffs to damages, not rescission" (citing 15 U.S.C. § 1640(a); Belini v. Wash. Mut. Bank, FA, 412 F.3d 17 (1st Cir. 2005))).

In this case, Plaintiff has pled for damages in his complaint as stated and as allowed in the Ramos case and consistent with 15 U.S.C. §1640.

However, Plaintiff contends that the <u>Ramos</u> case is flawed and is supported by the previously cited *Santos supra*. Arguing as true the <u>Ramos</u> holding, it would be wholly inconsistent with the process detailed in 15 U.S.C. §1635. Consider the consumer who mails the notice within the initial three day rescission period, arguing the logic of <u>Ramos</u> would mean that the consumer would not only have to send the notice but actually file suit within the three days or they would be completely barred using the logic in <u>Ramos</u>. This seems inconsistent with the nature of the consumer protection statutes we are dealing with in this case.

Regardless, since the Plaintiff has also pled damages pursuant to §1640 and filed suit within one year of exercising his right to cancel that was done within the three years under §1635, Plaintiff is entitled to damages for the Defendant's failure to honor the timely rescission.

## E.  PLAINTIFF'S LOAN WAS NOT A PURCHASE MONEY LOAN.

Based on the standings issue raised previously, Plaintiff contends that JPMorgan does not have standing to request this portion of the complaint be dismissed as they are not the real party in interest. By their own admission, they are not the owners of the obligation and the granting them o the relief they are requesting will not resolve the rescission issue pending before the court with the an unknown party.

This argument easily fails on their own evidence. The Grant Deed provided by JPMorgan in their Request for Judicial Note, Exhibit 1, clearly shows that the grantor and the grantee are one in the same and the deed was done to merely correct title from community property to joint tenancy.   While JPMorgan is correct, 15 U.S.C. 1635(e)(1) does not allow a rescission of residential mortgage transaction:

**Exempted transactions; reapplication of provisions**
**This section does not apply to—**
**(1) a residential mortgage transaction as defined in section 1602 (w) of this title;**

The definition of a residential mortgage transaction is defined in §1602(w) as:

**Residential mortgage transaction means a transaction in which a mortgage, deed of trust, <u>purchase money security interest</u> arising under an installment sales contract, or equivalent consensual security interest is created or retained in the consumer's principal dwelling <u>to finance the acquisition or initial construction of that dwelling</u>.**

No stretch of one's imagination that a Grant Deed by both spouses to themselves for a property they have owned for years can be construed to be a purchase money security interest to *finance the acquisition of that dwelling*. The entire argument by JPMorgan does not appear to have any factual basis and was done in error on their part.

**F.  THE ISSUE OF TENDER UNDER THE TRUTH IN LENDING ACT.**

Much of JPMorgan's arguments rest on tender. While they raise interesting arguments, the issue of tender is less important as JPMorgan, their predecessor, Washington Mutual, and the yet unknown investor has never agreed to rescind giving rise to this complaint. Tender is a subsequent event, which Plaintiff has always been prepared to address; however, was prevented from doing so because Defendant never acted on the Plaintiff's request. Defendant has refused rescission which gave rise to this complaint and while never addressed in a response to the rescission, now raise tender as a reason. However, Defendants have no factual evidence to support that Plaintiff was unprepared to tender if they agreed.

First, to keep this in the simplest of terms, when a consumer rescinds, they may use the form provided by the creditor, which is based on a model form provided by the Board of Governors of the Federal Reserve through Regulation Z, or by a separate notification. If they use the form provided by the creditor, all they must do is sign their name and date the notification next to the statement "I WISH TO CANCEL." Four very simple words begin the process and even those four words which incorporate the word "wish". Black's Law Dictionary defines "wish" as "eager desire; longing; expression of desire; a thing desired; an object of desire." Desire is further defined as "to ask, to request." In effect, a consumer merely must notify the creditor of the desire to cancel for notice to be effective <u>and is not required by said notice to contain proof of tender.</u>

Second, Defendant's cite authority in <u>Yamamoto v. Bank of New York</u>, 329 F.3d 1167 (9th Cir. 05/29/2003).  We agree that the case adequately states the law in this District as is very applicable to this case; however, they have substantially misread the ruling.  As stated at ¶ 17:

> **This appeal requires us to decide whether a court <u>may</u> order borrowers who seek recission of a mortgage under the Truth in Lending Act (TILA), 15 U.S.C. § 1635, <u>to show that proceeds can be tendered if they prevail</u>. Here, the borrowers testified that they could not fulfill TILA's tender requirement, and the district court gave them sixty days before dismissing their recission claim to attempt to do so. When they were unable to provide evidence that they could tender the proceeds, the court granted summary judgment in favor of the lender. <u>We hold that a district court has discretion to modify the sequence of rescission events in these circumstances</u>, and affirm.**

The facts in *Yamamoto* are the District Court had actually modified the sequence of rescission events as allowed by 15 U.S.C. § 1635, gave the consumer 60 days to attempt tender before foreclosing the consumer's rescission right.  The 9th Circuit properly ruled, using the black letter of the statute, that the court has the jurisdiction to modify the process.  That is not the case before this Court.  Defendant has not even agreed to rescission and is now claiming, in a Motion to Dismiss, that they do not even have to act on a rescission request without a proof of tender.  In effect, Defendant appears to want to step into the shoes of the Court and apply the Court's discretion as their own.

Third, this brings Plaintiff to a very important point, the current "un-modified" process stated in 15 U.S.C. §1635(b):

> **(b) Return of money or property following rescission**
>
> **When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. <u>Within 20 days after receipt of a notice of rescission</u>, the <u>creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and  shall take any action necessary or appropriate to reflect the  termination of any security interest created under the transaction.  If the creditor has delivered any property to the obligor, the  obligor may retain possession of it.  Upon the performance of the  creditor's obligations under this section, the obligor shall tender  the property to the creditor</u>, except that if return of the property  in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location  of the property or at the residence of the obligor, at the option  of the obligor. If the creditor does not take possession of the  property within 20 days after tender by the obligor, ownership of  the property vests in the obligor without obligation on his part to  pay for it. <u>The procedures prescribed by this subsection shall  apply except when otherwise ordered  by a court.</u>**

This process is further supported by Regulation Z §226.23(d):

> **(d) Effects of rescission.**

**(1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.**

**(2) <u>Within 20 calendar days after receipt of a notice of rescission,</u> the <u>creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.</u>**

**(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. <u>When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value.</u> At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.**

**(4) <u>The procedures outlined in paragraphs (d) (2) and (3) of this section may be modified by court order.</u>**

Dissecting these statutes for clarity, the process, as defined in those statutes is summarized as follows:

- Within 20 days after receipt of notice:
    - the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise
    - shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction
    - If the creditor has delivered any property to the obligor, the obligor may retain possession of it

- Upon performance by creditor:
    - the obligor shall tender the property to the creditor
    - except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value
    - Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor

- Creditor's failure to accept tender:

- If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it

- Modification of procedures:
  - The procedures prescribed by this subsection shall apply except when otherwise ordered by a court

However, the Board of Governors to the Federal Reserve is also authorized to issue Official Staff Commentary to Regulation Z to further assist creditors and the public with the statute and regulations.  They have done so related to Regulation Z 226.23(d) as follows:

**23(d)  Effects of rescission.**

**Paragraph 23(d)(1).**

**1.  Termination of security interest.  Any security interest giving rise to the right of rescission becomes void when the consumer exercises the right of rescission. <u>The security interest is automatically negated regardless of its status</u> and whether or not it was recorded or perfected. Under § 226.23(d)(2), however, <u>the creditor must take any action necessary to reflect the fact that the security interest no longer exists.</u>**

**Paragraph 23(d)(2).**

**1.  Refunds to consumer.  <u>The consumer cannot be required to pay any amount in the form of money or property either to the creditor or to a third party as part of the credit transaction. Any amounts of this nature already paid by the consumer must be refunded.</u> "Any amount" includes finance charges already accrued, as well as other charges, such as broker fees, application and commitment fees, or fees for a title search or appraisal, whether paid to the creditor, paid directly to a third party, or passed on from the creditor to the third party. It is irrelevant that these amounts may not represent profit to the creditor.**

**2.  Amounts not refundable to consumer.   Creditors need not return any money given by the consumer to a third party outside of the credit transaction, such as costs incurred for a building permit or for a zoning variance. Similarly, the term "any amount" does not apply to any money or property given by the creditor to the consumer; those amounts must be tendered by the consumer to the creditor under § 226.23(d)(3).**

**3.  Reflection of security interest termination.  <u>The creditor must take whatever steps are necessary to indicate that the security interest is terminated.</u> Those steps include the cancellation of documents creating the security interest, and the filing of release or termination statements in the public record. In a transaction involving subcontractors or suppliers that also hold security interests related to the credit transaction, the creditor must insure that the termination of their security interests is also reflected. <u>The 20-day period for the creditor's action refers to the time within which the creditor must begin the process.</u> <u>*It does not require all necessary steps to have been completed within that time, but the creditor is responsible for seeing the process through to completion*</u>.**

**Paragraph 23(d)(3).**

**1.  Property exchange.  <u>Once the creditor has fulfilled its obligations under § 226.23(d)(2), the consumer must tender to the creditor any property or money the creditor has already delivered to the consumer.</u> At the consumer's option, property may be tendered at the location of the property. For example, if lumber or fixtures have been delivered to the consumer's home, the consumer may tender them to the creditor by making them available for pick-up at the home, rather than physically returning them to the creditor's premises. Money already given to the creditor must be tendered at the creditor's place of business.**

**2.  Reasonable value.  <u>If returning the property would be extremely burdensome to the consumer, the consumer may offer the creditor its reasonable value rather than returning the property itself.</u> For example, if building materials have already been incorporated into the consumer's dwelling, the consumer may pay their reasonable value.**

**Paragraph 23(d)(4).**

**1.  Modifications.  The procedures outlined in § 226.23(d)(2) and (3) may be modified by a court. For example, when a consumer is in bankruptcy proceedings and prohibited from returning anything to the creditor, or when the equities dictate, a modification might be made. <u>The sequence of procedures under § 226.23(d)(2) and (3), or a court's modification of those procedures under § 226.23(d)(4), does not affect a consumer's substantive right to rescind and to have the loan amount adjusted accordingly.</u> Where the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property.**

The issue, as stated in the complaint, is that Defendant did not act on the request within the twenty days and they appear to want to impose additional requirements on the Plaintiff that do not exist in the statute before they have to act within the twenty days.  As stated in the Official Staff commentary, the consumer, Plaintiff herein, <u>must merely notify Defendant that they wish to cancel and from that point forward</u>, *"…the creditor is responsible for seeing the process through to completion*."  At this point in time, factually, Defendant has not offered any proof that they acted on any "notice of rescission" within twenty days of receipt of the notice.  In fact, they appear to argue that they did not act as the request did not contain a tender.

The process is commonly addressed by creditors across the country and is typically done as follows:

• Consumer notifies creditor of desire to cancel.

• Within 20 days of receipt, creditor or assignee makes contact with consumer to begin process and usually proposes an agreement for an orderly rescission that includes creditors' agreement to rescission and by negotiation creates a simultaneous exchange of the release for the tender.

- If the consumer refuses to enter into such an agreement, most creditor's or assignee's will then file an action in District Court for Declaratory Relief requesting modification of the process to maintain their security interest pending tender.

The above process is consistent with the facts and holding in *Yamamoto* supra.  This is a very sound approach and followed by most creditors/assignees across the country.  However, Defendant did not follow that process and instead wants to ignore the requests within the twenty days, not act on the rescission request at all, not seek court modification of the process but seek the benefit like it had followed the process and also obtained court modification.  Unfortunately, they have overlooked that they have damaged Plaintiff and forced Plaintiff to file this suit to even get to a discussion and in doing so violated 15 U.S.C. §1640.

More important, the discretion the Court has to modify is an equitable remedy. As stated in ¶16 of *Yamamoto supra*:

> As we explained, whether <u>a decree of rescission should be conditional depends</u> upon "<u>the equities present in a particular case</u>, as well as <u>consideration of the legislative policy of full disclosure</u> that underlies the Truth in Lending Act and <u>the remedial-penal nature of the private enforcement provisions of the Act</u>.

In effect, Yamamoto requires the court considering rescission to evaluate the equities in each particular case.

The court in *Yamamoto supra* went on to elaborate further in ¶21:

> Thus, a court <u>may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations</u>. Our precedent is consistent with the statutory and regulatory regime of leaving courts free to exercise <u>equitable discretion to modify rescission procedures</u>. This also comports with congressional intent that "the courts, at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required by the act." S. Rep. No. 368, 96th Cong., 2d Sess. 29 (1980), reprinted in 1980 U.S.C.C.A.N. 236, 265.

The court in *Yamamoto supra* clearly has stated that the court can impose conditions on rescission once the creditor has performed its obligation.  In this case before the Court, the <u>Defendants have done nothing to even begin the process of rescission</u>.   As such, the equitable remedy of Yamamoto supra should only be considered if JPMorgan and their investor come to the court with clean hands.

Plaintiff contends that JPMorgan and their investor may not request from the court equity because of the doctrine of unclean hands. The doctrine is based on the maxim that one who comes into equity must

come with clean hands. <u>Stein v. Simpson</u>, 37 Cal. 2d 79, 83 (1951). Unclean hands is generally an affirmative defense in actions seeking equitable relief, but the defense is not limited to equity and may be asserted in legal action as well. <u>Goldstein v. Lees</u>, 120 Cal. Rptr. 253, 255 (Ct. App. 1975). In short, the unclean hands doctrine requires that a plaintiff act fairly in the matter for which he or she seeks a remedy. Here, JPMorgan, their investor and their predecessor Wasthington Mutual were required to act on the rescission request within 20 days and did not.  This failure to act violated the Truth In Lending Act and now they are asking the court for equity in a Motion to Dismiss that requests the court apply its equitable powers retroactively for their own misconduct.  This is improper. Even more important JPMorgan is taking the position that Courts will merely "rubber stamp" their demand for proof of tender before even acting on a request.  This presumed "rubber stamp" approach "slaps the face" of the statutes and case law that requires the Court to weigh the equities in each individual case.

Furthermore, the court has not made a legal determination that rescission is warranted as of yet or that grounds for rescission exist.  As stated in Yamamoto supra at ¶22:

> **As rescission under § 1635(b) is an on-going process consisting of a number of steps, <u>there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what</u>.**

> **<u>Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds</u>. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.**

Most important, if the Court were to decide that it could apply equitable remedies despite the unclean hands of Defendants, no factual evidence exists before the court that Plaintiff does not have the ability to tender.  In *Yamamoto supra*, the court actually gave the Plaintiff 60 days in which to tender and did not dismiss the case until they were unable to perform.   In a Motion to Dismiss, it would be inappropriate to dismiss the complaint merely on the pleadings absent factual evidence of a lack of tender upon giving the Plaintiff an opportunity to tender. Supporting this assertion are several recent cases right on point:

**<u>Horton v. California Credit Corp. Retirement Plan</u>, No. 09-cv274-IEG-NLS (S.D.Cal. 08/13/2009)**

**The Ninth Circuit has not established whether a plaintiff seeking rescission of a loan under TILA must allege at the pleading stage the ability to tender the proceeds of a loan.** Although Defendant relies on La Grone v. Johnson, in that case the Ninth Circuit reversed a grant of summary judgment in favor of a borrower, holding that the district court should have conditioned rescission of the loan upon the borrower's ability to tender the amounts advanced by the lenders. La Grone v. Johnson, 534 F.2d 1360, 1362 (9th Cir. 1976). In another case Defendant cites, Yamamoto v. Bank of New York, the Ninth Circuit similarly affirmed a district court's grant of summary judgment in favor of a creditor, when the borrowers admitted an inability to tender. Yamamoto v. Bank of N.Y., 329 F.3d 1167, 1169 (9th Cir. 2003).

**In fact, it is the Ninth Circuit's position that "whether a decree of rescission should be condition[ed upon the borrower's tender] depends upon 'the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that underlies the Truth in Lending Act and the remedial-penal nature of the private enforcement provisions of the Act.'"** Yamamoto, 329 F.3d at 1171 (citation omitted). The Court declines to engage in such an inquiry at this stage of the litigation and accordingly declines to alter the rescission-tender chronology set out in 15 U.S.C. § 1635(d). The Court therefore denies Defendant's motion to dismiss Plaintiffs' TILA rescission claim.

The court in this case found that it was improper to engage in an inquiry of the equities of the case so early in the litigation in a Motion to Dismiss.

**Ozuna v. Countrywide's Home Capital Funding**, No. 08cv2367 - IEG - AJB (S.D.Cal. 08/13/2009)

"[15 U.S.C. 1635(b)] adopts a sequence of rescission and tender that must be followed unless the court orders otherwise: within twenty days of receiving a notice of rescission, the creditor is to return any money or property and reflect termination of the security interest; when the creditor has met these obligations, the borrower is to tender the property."

Yamamoto v. Bank of N.Y., 329 F.3d 1167, 1170 (9th Cir. 2003). However, under Yamamoto, a district court has discretion to alter the rescission-tender chronology. Id. at 1171.

At this procedural juncture, the Court declines to alter the rescission-tender chronology because, at the pleading stage, TILA does not require tender as a prima facie element of a rescission claim. Therefore, the Court denies Countrywide's motion to dismiss Plaintiff's TILA claims.

This decision is important as the court determined that tender was not a requirement to advance a rescission claim at the initial pleadings stage and was not appropriate to dismiss the complaint in a Motion to Dismiss.

**Bantique v. Greenpoint Mortgage Funding, Inc.**, No. CIV. 09-663 WBS DAD (E.D.Cal. 04/30/2009)

In light of their "equitable discretion" to modify the rescission process, **many courts have held that motions to dismiss claims for rescission on the ground that plaintiffs are unable to tender back the property received are "premature."** See Jones v. Rees-Max, LLC, 514 F. Supp. 2d 1139, 1146 (D. Minn. 2007) ("Given the discretion within which the Court may condition the right to rescission, it is not necessary that the [plaintiffs] demonstrate they have the means to secure the necessary financing at this point in time."); see also Cosio, 2009 WL 201827, at *3 ("[S]imply because [plaintiffs] presently do not have sufficient funds available to make certain payments does not necessarily mean that at the time of rescission [they] will be unable to tender. Circumstances may very well change

**between now and the time of tender."). In light of this reasoning, plaintiff's failure to allege that he is "ready, willing, and able" to tender his loan proceeds in the event of rescission is not fatal to his claim at this early stage of the proceedings.**

The Honorable William B. Shubb in the Eastern District of California found that the granting of Motions to Dismiss based on a lack of tender is premature and that a Plaintiff's failure to plead they were "ready, willing and able" to tender is not fatal at the initial complaint and pleading stage.

**Aurora Loan Services, LLC v. Britton, No. 2:08-cv-01535-GEB-KJM (E.D.Cal. 08/13/2009)**

> **When weighing the equities, "all the circumstances" are taken into consideration, "including the nature of the [TILA] violations." Id. at 1173. As the Ninth Circuit observed in LaGrone v. Johnson, 534 F.2d 1360, 1362 (9th Cir. 1976), when the TILA violations are "not egregious," "[r]escission [] should [be] conditioned on a tender by [the borrower] of the [loan proceeds] advanced by the [creditor]."**

The Honorable Garland E. Burrell, Jr. in the Eastern District of California found that all of the equities must be weighed and that the Defendant must show that their TILA violations are not egregious. At this stage of the Defendants' Motion to Dismiss, they did not provide any factual evidence that the TILA violations were not egregious. In fact, they contend that no violation has occurred. Therefore, "all of the circumstances" are not before the court and the court conditioning tender as part of the Motion to Dismiss request would be inappropriate.

Since this is a Motion to Dismiss, the court must accept the allegations in the complaint as true and *draw all reasonable inferences in favor of the plaintiff*. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Cruz v. Beto, 405 U.S. 319, 322 (1972).

Therefore, the issue of tender is premature since the court has not determined that rescission is proper yet at the pleading stage. Furthermore, since Defendants have "unclean hands" the equitable remedy of altering the rescission process would be inappropriate in a Motion to Dismiss.

**G.  DAMAGES AS TO JPMORGAN IS PROPER.**

As previously address in this response, the complaint clearly contends that JPMorgan is acting as an agent for the true lender, which they have not disputed and in fact support (MTD Page 1, lines 18-19). The complaint contends several factual allegations of agency. Plaintiff sent the QWR and Rescission to Washington Mutual, the then current servicing agent of the true lender, and service of that correspondence on

the servicing agent is service on their principal and vice versa (back on any agent, current or subsequent)

under California agency law.  California Civil Code §2332 states:

> **As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other.**

As such, when JPMorgan took over the servicing of Washington Mutual, notice of the claims had

been conveyed to Washington Mutual, their predecessor, which imputed notice to the still unnamed principal,

which also imputed notice to JPMorgan of the pending rescission, fair debt collection and RESPA claims.

## H. PLAINTIFF HAS A VALID RESPA CLAIM

The issue of damages and its application to this case is best answered in the case of <u>Parveen A. Lal</u>

<u>and Jodi L. Wright v. American Home Mortgage Servicing</u>, Case No. 2:09-CV-01585-MCE-DAD (E.D. Cal.

2009) filed September 24, 2009.  The court related to RESPA stated:

> **Defendant's argument as to actual damages is without merit because, while in the section of the Complaint dedicated to the RESPA claim Plaintiffs allege only that they have suffered "actual damages," Plaintiffs also incorporated by reference all prior allegations as well. Accordingly, the same allegations regarding damages alleged under Plaintiffs' TILA claim are applicable here, and Plaintiffs adequately alleged they suffered injury as a result of having to resort to the filing of this litigation.**

Plaintiff contends they have adequately pled damages for failing to respond to the QWR and that

when JPMorgan assumed the servicing obligations of Washington Mutual, they did not just get to start

collecting payments only, they assumed responsibility for the pending matters (under agency theories)

advanced by the borrower.

As for dismissing the complaint on this basis, Defendants are misguided as several courts have

addressed similar requests and find such actions to dismiss this action at this early stage is inappropriate.

A genuine question of fact is in dispute in the complaint.  As the court pointed out in <u>McLean v.</u>

<u>GMAC Mortgage Corp.</u>, No. 06-22795-CIV-O'SULLIVAN (S.D.Fla. 05/02/2008):

> **"Although the March 9, 2005 correspondence may be timely as to the February 14, 2005 correspondence, <u>a jury may find</u> that the March 9, 2005 correspondence <u>does not satisfy the requirements of section 2605(e)(2) in that it fails to respond to any of the inquiries raised in the plaintiffs' letters</u>. Section 2605(e)(2) requires a loan servicer to take certain action within 60 days of receipt of a qualified written request. Such action may include:**

**provid[ing] the borrower with a written explanation or clarification that includes . . . (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower. 12 U.S.C. § 2605(e)(2).**

**Whether GMAC's March 9, 2005 letter** _**satisfied the requirements of section 2605(e) is a genuine issue of material fact and GMAC is not entitled to summary judgment on the plaintiffs' RESPA claims under section 2605(e)**_ **(qualified written requests).**

Plaintiffs are confused by the Defendant's statement that Plaintiff did not plead any actual damages. The statute is clear, if a servicer has not complied with the Qualified Written Request provisions of RESPA, 12 U.S.C. § 2605(f) provides for damages and costs as follows:

**(f) Damages and costs**

**Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:**

**(1) Individuals**

**In the case of any action by an individual, an amount equal to the sum of -**

**(A) any actual damages to the borrower as a result of the failure; and**
**(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.**

**(3) Costs**

**In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.**

Plaintiff respects that the Court may allow statutory damages up to $1,000.00 for additional damages under 12 U.S.C. § 2605(f)(1)(B) and have properly plead that request and discretion in its adversary proceeding.

At the very least, Plaintiff, in its request, wanted to know who truly holds their obligation and was forced to file suit to find out. If Defendants had given that information, damages would be less to Plaintiff. If Defendants had responded to the rescission request, possibly a lawsuit could have been avoided as the tender issue could have been easily resolved had they merely cooperated with the rescission. Of course, the Plaintiff has been damaged.

Clearly, the statute allows for attorneys fees should Plaintiff prevail in this case.  It appears that Defendant is requesting exact dollar amounts from the complaint or they are entitled to the complaint being dismissed.  Plaintiff has pled in sufficient detail his claims with particular specificity to meet Fed R Civ P 8(a) requirements.

As for the reference in the loan number, it is a minor typographical error related to the identification but the <u>loan number is accurate to the loan serviced by Washington Mutual</u> and the letter is addressed to Washington Mutual.  Furthermore, on February 11, 2009, a follow-up letter was sent to Washington Mutual by David Pereira of Mortgage Litigation Consultants (See Declaration of David Pereira, Exhibit A), which accurately states the loan number and attaches the Qualified Written Request letter dated January 14, 2009 (FAC Ex. D).

The letter of meets all of the required information of being a Qualified Written Request under RESPA.

Further, as has been clearly outlined in the JPMorgan's Motion to Dismiss and Plaintiffs response herein, not giving the name of the true owner of the obligation which was contained in the Qualified Written Request stated herein, has proven to harm Plaintiff.  Plaintiff has proven that they were entitled to know the name, address and telephone of the owner of the obligation pursuant to TILA, common law, Restatement of Agency and RESPA.  Yes, after filing a complaint and an amended complaint, at great expense, JPMorgan, despite their bold assertion that they do not own the obligation, has not provided the Plaintiff the information they are required to provide.

## I.  PLAINTIFF HAS ADEQUATELY PLED A STATE FAIR DEBT COLLECTION PRACTICES ACT CLAIM AS THE CALIFORNIA RFDCPA DOES APPLY TO DEFENDANT

The basis for the Plaintiff's claim related to the RFDCPA is due to the fact that Plaintiff asserted his rights to curtail all contact with the Plaintiff which is specifically allowed under the RFDCPA.

Defendants' motion states that as a matter of law, loan servicers are not "debt collectors" under the RFDCPA (they reference the Federal Fair Debt Collection Practices Act in their papers however, Plaintiff has only pled in its complaint violations of the California RFDCPA).

Plaintiff intended to speak to the allegation in the broadest way but at trial, Plaintiff will show that they received numerous phone calls and received several written collection notices unrelated to foreclosure notices (which Plaintiff contends are not covered by the act) but certainly phone calls asking when the Plaintiff is going to make payments are.  Plaintiff contends that such detail is improper for the notice pleadings in a Federal case but might be proper in factual pleadings of a State case.   At this point in the pleadings, the complexity of discovery is best left for discovery and requiring this detail is inconsistent with Fed R Civ P 8(a).  However, filed concurrently with this opposition is a Declaration of Shaunn Fullmer which reflects some of the dates and times of telephone contact by Washington Mutual.   In addition, the Declaration of David Pereira also filed concurrently reveals that David Pereira followed-up the violation with an additional letter which was ignored, based on the telephone calls in the Fullmer Declaration.

However, we again reference the case of <u>Parveen A. Lal and Jodi L. Wright v. American Home Mortgage Servicing</u>, Case No. 2:09-CV-01585-MCE-DAD (E.D. Cal. 2009) filed September 24, 2009 which addressed this issue clearly:

> **Defendant moves to dismiss the instant claim arguing that it, as a loan servicer, cannot be held liable under the RFDCPA. However, Defendant relies upon federal law, which specifically excludes loan servicers from its purview. The RFDCPA definition of a debt collector is broader than the federal definition. Izenberg v. ETS Services, LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal., 2008). Indeed, in California, a debt collector is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c).**

> **In this case, Plaintiffs claim that "Defendant repeatedly contacted Plaintiff attempting to collect the debt." Compl., ¶ 86. Additionally, Plaintiffs allege they were contacted regularly by Defendant for purposes of collection, from which this Court can infer, at least for purposes of the instant Motion, that Defendant regularly engaged in the challenged practice. Accordingly, Plaintiffs have adequately stated a claim for violation of the RFDCPA. See Lemieux v. Jensen, 2004 WL 302318, *2 (S.D. Cal.) (interpreting federal law). Defendant's Motion to Dismiss Plaintiffs' third cause of action is denied.**

As to the RFDCPA claim, Plaintiff requests the court deny Defendants motion to dismiss or, in the alternative, Plaintiff requests that the court allow Plaintiff to amend the complaint.

1  **H.  PLAINTIFF'S UCL CAUSE OF ACTION DOES PROPERLY STATE A CLAIM**

2          Defendants contend that this cause of action fails because the TILA, RESPA and RFDCPA

3  claims fail and therefore, this cause of action fails.  Of course, for the reasons set forth related to those causes

4  of action, we believe that those actions will stand and therefore the Plaintiffs UCL cause of action will also

5  stand.

6          Unfortunately for Defendants, we think that Defendants' Motion to Dismiss has supported

7  Plaintiff's claim for relief for their acts.  Defendants have intentionally ignored the TILA rescission claim

8  and stand by their position that the QWR under RESPA did not require their responses.  If wrong, this proves

9  they are engaging in unfair business practices as consumers should not have to litigate these statutes to force

10  compliance.

11          A glaring example is contained in our complaint… their continual refusal to disclose to Plaintiff

12  and similarly situated consumers the name, address and telephone number of the true owner of the

13  obligation.  This conduct is so outrageous.  Said failure makes the cost to litigate by most consumers in

14  California almost impossible.  Under basic common law, a consumer should be entitled to know with whom

15  they have an obligation.

16          Regardless, under Federal pleading standards, we are to provide notice pleadings and not factual

17  pleadings as required in State court actions.  Plaintiff believes they have met the liberal pleadings standards

18  required in a Federal case.

19          Plaintiff contends that the court will find that at the minimum a federal question remains related

20  to TILA in addition to the questions related to RESPA.  Plaintiff has maintained a cause of action for TILA

21  and RESPA.

22      However, we again reference the case of <u>Parveen A. Lal and Jodi L. Wright v. American Home

23  Mortgage Servicing</u>, Case No. 2:09-CV-01585-MCE-DAD (E.D. Cal. 2009) filed September 24, 2009 which

24  addressed this issue clearly:

25          **Plaintiffs contend various of their claims against Defendant provide independent grounds for a
          finding that Defendant violated California's UCL. Cal. Bus. & Prof. Code § 17200. The UCL**

**prohibits fraudulent, unlawful, or unfair business practices and "permits violations of other laws to be treated as unfair competition that is independently actionable." Leonel v. Am. Airlines, Inc., 400 F.3d 702, 714 (9th Cir., 2005) (quoting Kasky v. Nike, Inc., 45 P.3d 243, (2002)). To the extent Plaintiffs' other claims survive, so does their UCL claim. Accordingly, Defendant's Motion to Dismiss Plaintiffs' fourth cause of action is denied.**

Defendants also argue that plaintiff's unfair competition claim fails because plaintiff has not alleged a "pattern of behavior" or a "course of conduct" constituting a business practice. This argument relies on a prior version of the unfair competition statute. In 1992, the Legislature amended section 17200 to expand the definition of unfair competition to include "any unlawful, unfair, or fraudulent business <u>act</u> or practice." (emphasis added).

Accordingly, under the current version of the statute, even a single act may create liability. <u>United Farm Workers of America, AFL-CIO</u>, 83 Cal. App. 4th at 1163 (see <u>CRST Van Expedited, Inc. v. Werner Enterprises, Inc.</u>, 479 F. 3d 1099, 1107 (2007) ("a business act or practice need not be an ongoing pattern of conduct").

Dismissal of the UCL Cause of Action (B&P Code Section 17200) should be denied as we believe:

    a. Federal questions still remain for the court to decide.

    b. In total, all of the acts leading to all of the causes of action give rise to an Unfair Business Practice.

    c. Plaintiff has properly pled a Business and Professions Code Section 17200 violation.

    d. As stated above, we believe that Defendants have violated the Truth In Lending Act and RESPA and have also engaged in an unfair business practice.

As such, Plaintiff believes a genuine issue of fact and the law remains and dismissal is inappropriate.

As to the California B&P 17200 cause of Action, Plaintiff requests the court deny Defendants motion to dismiss.  In the alternative, Plaintiff requests that the court allow Plaintiff to amend the complaint.

///

///

## I.  PLAINTIFF'S BREACH OF THE CONVENANT OF GOOD FAITH AND FAIR DEALING CAUSE OF ACTION DOES PROPERLY STATE A CLAIM

Defendant JPMorgan raises the issue of how can Plaintiff contend a good faith and fair dealing cause of action against them as they lack a contract with the Plaintiff.  Normally, we would agree, but Plaintiff pled, at ¶'s 36 and 37 of their complaint, as follows:

**While Plaintiff believes that [JPMorgan] is a servicing agent for a securitized pool, as of the date of this filing, we believe that [JPMorgan] is jointly and severely liable for damages related to this action as <u>they have failed to identify their principal (of who they act for agent for</u>).**

**Under common law and Restatement of Agency , if an agent has actual or apparent authority, the agent will not be liable for acts performed within the scope of such authority, so long as the relationship of the agency and the identity of the principal have been disclosed.  <u>When the agency is undisclosed or partially disclosed, however, both the agent and the principal are liable.</u>**

Plaintiff contends that JPMorgan is liable for a good faith and fair dealing claim as they have failed to identify their principal.  Plaintiff is entitled to plead alternative theories in its complaint and has done so.

JPMorgan wants it both ways, not identify their principal, take all action against Plaintiff and have no liability for it.  They sure are acting like Plaintiff has a contract with them. However, Plaintiff has also pled alternative theories throughout the complaint as they are unsure of the true capacity of JPMorgan. Until their true status is known, this cause of action may or may not apply to JPMorgan directly but almost certainly applies based on agency and non-disclosure of their principal.

Contrary to defendants' argument, Plaintiff does not merely allege the legal conclusion that a breach of the covenant occurred. Instead, plaintiff identifies the type of acts that constituted the breach and many of those have been stated by reference to other parts of the complaint.

At this point, it is premature to dismiss a good faith and fair dealing cause of action against OneWest as their status is unclear.

## J.  JPMORGAN MAY OR MAY NOT BE A PARTY TO THE CONTRACT

As stated above, Plaintiff makes the contention that JPMorgan is a party based on a couple of key issues:

1. Despite requesting the identity under a QWR under RESPA and requesting the identity under 15 U.S.C. §1641(f)(2) of the true contract holder, OneWest has refused to provide said information and identify the contract holder.  Coupled with the QWR was a request for copies of all of the contracts.  This leaves their status as unclear for this cause of action and it was properly pled based on the best information known to Plaintiff and due to their refusal to clearly identify themselves and others to the contract.

2. Plaintiff has pled restatement of agency that generally an agent is not liable for their acts as an agent when they have identified their principal.  However, as clearly articulated in the complaint and throughout this response, JPMorgan has not identified their principal which now raises a question of fact for the Court related to this failure to identify their principal now extends a Good Faith and Fair Dealing claim against JPMorgan under the common law of agency.  No question, this could have been easily rectified by JPMorgan by merely giving the information as properly requested but this door was opened by their own action or lack of action.

We find the following cases instructional related to the application of Good Faith and Fair Dealing in mortgage servicing cases:

Graupner v. Select Portfolio Servicing, No. B196401 (Cal.App. Dist.2 02/23/2009) (unpublished) which is a mortgage servicing case:

**A covenant of good faith and fair dealing is implied in every contract in California. (Carma Developers (Cal.), Inc. v. Marathon Development California, Inc. (1992) 2 Cal.4th 342, 372; Andrews v. Mobile Aire Estates (2005) 125 Cal.App.4th 578, 589.) It "implies a promise that each party will refrain from doing anything to injure the right of the other to receive the benefits of the agreement." (Aragon-Haas v. Family Security Ins. Services, Inc. (1991) 231 Cal.App.3d 232, 240.) As the Supreme Court has observed, "The covenant of good faith and fair dealing . . . exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made. [Citation.] The covenant thus cannot be endowed with an existence independent of its contractual underpinnings."**

Sutherland v. Barclays American/Mortgage Corp., 53 Cal.App.4th 299, 61 Cal.Rptr.2d 614 (Cal.App. Dist.2 03/05/1997), which also recognizes in a mortgage context the obligation of Good Faith and Fair Dealing:

" ' "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." . . . This duty has been recognized in the majority of American jurisdictions, the Restatement, and the Uniform Commercial Code. . . . ' . . . The covenant of good faith finds particular application in situations <u>where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith.</u>" ( Carma Developers (Cal.), Inc. v. Marathon Development California, Inc. (1992) 2 Cal. 4th 342, 371-372 [6 Cal. Rptr. 2d 467, 826 P.2d 710], citations omitted.) <u>In general, the covenant imposes a duty upon a party to a contract not to deprive the other party of the benefits of the contract.</u> ( Floystrup v. City of Berkeley Rent Stabilization Bd. (1990) 219 Cal. App. 3d 1309, 1318 [268 Cal. Rptr. 898].) The covenant " '. . . not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose.' " (Ibid.)

Vale v. Union Bank, 88 Cal. App. 3d 330, 151 Cal. Rptr. 784 (Cal.App.Dist.1 01/16/1979) is another case which involves a bank and a non-insurance context:

The evidence clearly shows that the bank failed to act in good faith.

Carma Developers Inc. v. Marathon Development California Inc., 2 Cal.4th 342, 826 P.2d 710, 6 Cal.Rptr.2d 467 (Cal. 03/30/1992), commonly cited in most mortgage cases since its decision, clearly shows that the covenant of Good Faith and Fair Dealing extends to all contracts, not just insurance contracts:

'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.' (Rest.2d Contracts, § 205.) This duty has been recognized in the majority of American jurisdictions, the Restatement, and the Uniform Commercial Code. (Burton, Breach of Contract and the Common Law Duty to Perform in Good Faith (1980)

<u>The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith.</u> (See, Perdue v. Crocker National Bank (1985) 38 Cal. 3d 913, 923 [216 Cal. Rptr. 345, 702 P.2d 503]; California Lettuce Growers Assn. v. Union Sugar Co. (1955) 45 Cal. 2d 474, 484 [289 P.2d 785, 49 A.L.R.2d 496].)

Plaintiff has properly pled plausible theories related to JPMorgan and good faith and fair dealing. Plaintiff has done so based on the lack of clarity to JPMorgan status as a contract holder and also under the restatement of agency theory related to an undisclosed principal.

## K.  SLANDER OF CREDIT

Plaintiff has asserted his rights under the Truth In Lending Act for rescission, which calls into question the validity of the debt until final disposition by a court of law and has made a Qualified Written Request under RESPA.  12 U.S.C. §2605(e)(3) states:

(3) Protection of credit rating

**During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of title 15).**

No question, based on the Plaintiff's pending rescission and the absolute prohibition in RESPA against credit reporting while the QWR is pending the reporting of the debt as being delinquent to credit reporting agencies has damaged the Plaintiff.  Plaintiff has had credit lines suspended and interest rates increased.  It seems obvious to Plaintiff that if any of the TILA, RESPA, UCL and Fair Debt Collection survives this MTD, this slander of title action should also remain intact.  Filed concurrently with this opposition is a Declaration of Shaunn Fullmer, the Plaintiff herein, which provides factual evidence of the negative credit reporting being done by JPMorgan (and OneWest).  Further said Declartion provides essential detail on the harm said negative credit reporting has had on Plaintiff.

## L.  LOOMING FORECLOSURE SALE BY ONEWEST

Defendant OneWest has a Trustee Sale scheduled for December 10, 2009 at 2:30 p.m., just a few hours after the Court will review this Motion and finalize the Motion to Dismiss with OneWest in oral argument.  Should OneWest go to sale on the property, not only with Plaintiff be highly prejudiced and the damages escalated, Defendant JPMorgan and their unknown investor will also be highly prejudiced as any possibility of tender to either OneWest and JPMorgan will be impossible.  Should the rescission with OneWest be resolved in Plaintiff's favor, the foreclosure sale set for December 10, 2009 at 2:30 p.m. should never have taken place and OneWest will have to address the issue of damages with Plaintiff and JPMorgan.

The one-sided events by OneWest, i.e. ignoring the rescission and QWR under RESPA, and now going to a Trustee Sale before the Court has even had the chance to rule on the Motions before this court are indicative of the unfair tactics (hence the Calif. Business and Professions §17200 claims) of Defendant OneWest.  Plaintiff contends it is of no coincidence that OneWest has scheduled the Trustee Sale immediately before Christmas (ensuring Plaintiff will have to move at Christmas) and on exactly the same day as the Court is hearing the oral arguments.   Such tactics illustrate the immoral and vicious attempt by OneWest to punish the Plaintiff for invoking the consumer protection statutes that they mock by such action.  Plaintiff requests

that the Court take such action into account when weighing the equities of the arguments before the Court as the David (Plaintiff) v. Goliath (OneWest) battle clearly has Plaintiff at a gross disadvantage.

### III. Conclusion

Defendant's motion should be denied as the liberal pleading standard has been met by the Plaintiff.  In the alternative, if the court should grant Defendant's motion, we would ask that we be allowed to amend the complaint.


Dated:  November 23, 2009                              By:_/s/ Kimberlee A. Rode_____
                                                       Kimberlee A. Rode, Attorney for
                                                       Shaunn A. Fullmer