IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHAUNN A. FULLMER,

    Plaintiff,                      No. 2:09-cv-1037 JFM

    vs.

JPMORGAN CHASE BANK, NA, etc., et al.,

    Defendants.                <u>ORDER</u>

_____/

        All parties have consented to proceed before the undersigned for all purposes. <u>See</u> 28 U.S.C. § 636(c). The following motions came on for hearing December 10, 2009: defendant JPMorgan Chase Bank NA's motion to dismiss, defendant OneWest Bank's motion to strike, and motion to dismiss. Kimberlee A. Rode appeared for plaintiff. S. Christopher Yoo appeared telephonically for defendant JPMorgan Chase Bank, N.A. Joshua R. Mandell appeared telephonically for defendant OneWest Bank. Upon review of the motions and the documents in support and opposition, upon hearing the arguments of counsel and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

        Plaintiff alleges defendants violated federal and state laws in the execution and servicing of a mortgage agreement.

/////

Background

Plaintiff and his wife obtained a mortgage loan for $500,000.00 secured by a deed of trust against real estate recorded on March 3, 2006.  The deed of trust identifies 1st National Lending Services as the lender, Mortgage Electronic Registration Systems, Inc. as the nominee beneficiary, and Greenhead Investments, Inc. as the trustee, with plaintiff and his wife as borrowers.

Plaintiff and his wife obtained a second mortgage loan in the sum of $45,000.00 on or about March 3, 2006.  That deed of trust identifies 1st National as the lender, Greenhead as the trustee and plaintiff and his wife as the borrowers.

Notice of default was recorded on June 23, 2009.[1]

Plaintiff believes that defendants JPMorgan Chase Bank, N.A. (hereafter "JP Morgan") and OneWest Bank ("OneWest") are servicing agents for their existing mortgage, but also allege defendants "could be a servicing agent, lender, or have an interest in the subject loan, . . . and are intentionally keeping their true role a mystery in light of plaintiff's request for said information in a Qualified Written Request."  (Complt. at ¶¶ 45, 85.)

On January 14, 2009, plaintiff, relying on the fact he and his wife allegedly did not receive accurate Notices of Right to Cancel, sent a letter to Washington Mutual Bank, IndyMac Federal Bank, and 1st National Lending Services, asserting, *inter alia*, that if defendants did not agree to various loan modifications, plaintiff intended to rescind the loan. Plaintiff also requested that defendants inform plaintiff of defendant's relationship to the loan and to identify the owner of plaintiffs' obligation.  Finally, plaintiff directed defendants to stop trying to collect on the loan and to cease all further collection communications.  Plaintiff alleges defendants failed to respond to the letter or to comply with its terms.

/////

---

[1] Defendants aver plaintiff defaulted on or about January 1, 2009, and as of June 19, 2009, the defaulted amount was $16,205.28.

On April 17, 2009, plaintiff filed the instant action alleging that defendants 1) violated the Truth in Lending Act ("TILA"), 15 U.S.C. 1601 et seq., by failing to provide two accurate copies of Notice of Right to Cancel and failing to timely respond to plaintiffs' rescission letter; 2) violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq. by likewise failing to respond to the same correspondence; 3) violated the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code § 1788 et seq., by continuing to try to collect on the relevant loan after receiving plaintiff's letter; 4) violated California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 et seq.; 5) breached the Implied Covenant of Good Faith and Fair Dealing; 6) are pursuing wrongful foreclosure; 7) have recorded documents impairing plaintiff's title, constituting slander of title; and 8) have taken actions and inaction that have impaired plaintiff's credit.

## STANDARDS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1974 (2007). Thus, a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the plaintiff's claims, even if the plaintiff's allegations are true.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

The court is permitted to consider material properly submitted as part of the complaint, documents not physically attached to the complaint if their authenticity is not

contested and the complaint necessarily relies on them, and matters of public record. <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001). Matters of public record include pleadings and other papers filed with a court. <u>Mack v. South Bay Beer Distributors</u>, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

Defendants request the court take judicial notice of the following documents recorded by the El Dorado County Recorder:

1. Plaintiff and his wife acquired title to 4048 Monte Verde Drive, El Dorado Hills, CA, by grant deed recorded on March 3, 2006.

2. Plaintiff and his wife obtained a mortgage loan for $500,000.00 secured by a deed of trust against said real estate recorded on March 3, 2006. The deed of trust identifies 1st National Lending Services as the lender, Mortgage Electronic Registration Systems, Inc. as the nominee beneficiary, and Greenhead Investments, Inc. as the trustee, with plaintiff and his wife as borrowers.

3. Plaintiff and his wife obtained a second mortgage loan in the sum of $45,000.00 on or about March 3, 2006. That deed of trust identifies 1st National as the lender, Greenhead as the trustee and plaintiff and his wife as the borrowers.

4. Notice of default was recorded on June 23, 2009.[2] The notice of default was signed by Clayton Goff for NDEx West, LLC as Agent for Beneficiary, and directed plaintiff to contact OneWest Bank, FSB, c/o NDEx West, LLC, 15000 Surveyor Boulevard, Suite 500, Addison, Texas 75001-9813 to "find out the amount [he] must pay, or to arrange for payment to stop the foreclosure, or if [the]

---

[2] Defendant avers plaintiff defaulted on or about January 1, 2009, and as of June 19, 2009, the defaulted amount was $16,205.28.

property is in foreclosure for any other reason." Id. Defendants' request for judicial notice will be granted.

## ANALYSIS

I. TILA

Plaintiff contends that, under TILA, he is entitled to rescind the home loans as a result of 1st National's original notice violations.

TILA's purpose is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). TILA and its regulations, issued by the Federal Reserve System, 12 C.F.R. §§ 226.1-.29 ("Reg Z"), contain detailed disclosure requirements for consumer loans. Semar v. Platte Valley Fed. Sav. & Loan Ass'n., 791 F.2d 699, 703-04 (9th Cir.1986).

Under TILA, "creditor" is defined as a person who:

> (f) The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. . . . Any person who originates 2 or more mortgages referred to in subsection (aa) of this section in any 12-month period or any person who originates 1 or more such mortgages through a mortgage broker shall be considered to be a creditor for purposes of this subchapter. . . .

15 U.S.C. § 1602.

Civil liability under TILA applies to creditors. See 15 U.S.C. § 1640(a) (2009) (establishing civil liability for "any creditor" for failure to comply with any requirement of "[15 U.S.C. §§ 1631 et seq.], including any requirement under section 125 [15 U.S.C. § 1635]."). Title 15 U.S.C. § 1641 provides that any TILA action (including a rescission claim) which may

be brought against a creditor may also be brought against the assignee of a creditor. In the next section, entitled "Liability of Assignees," TILA clearly contemplates that a court can levy damages against assignees if the disclosure violations made by the original lender are "apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a).[3]

However, under § 1641, loan servicers "shall not be treated as an assignee of [a consumer] obligation for purposes of this section unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f) (2009) (emphasis added). See also Marks v. Ocwen Loan Servicing, 2008 U.S. Dist. LEXIS 12175, at *4-5, 2008 WL 344210 (N.D.Cal. Feb. 6, 2008) ("Although TILA provides that assignees of a loan may be liable for TILA violations, loan servicers are not liable under TILA as assignees unless the loan servicer owned the loan obligation at some point.")

Plaintiff concedes that defendants are loan servicers. However, plaintiff argues that the common law Restatement of Agency should apply to bring defendants in the purview of TILA if they are in fact the servicers of the loans because defendants have intentionally withheld the identity of their principal note holder. The complaint identifies JPMorgan as successor and/or acquirer of assets and liabilities to/from Washington Mutual, and which holds and services loans, and OneWest as a bank that holds and services the loan and was successor to IndyMac Federal Bank. (Id. at 4.)

Agency is defined as "the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement 3d of Agency § 1.01 (2006). When an agent makes a contract with a third party on behalf of an

---

[3] Section 1641(c) explicitly states that § 1641 does not affect the right of a consumer to rescind a transaction against an assignee under § 1635. Thus, a consumer may rescind against an assignee to the full extent it would be able to rescind against the original creditor. The violation need not be apparent on the face of the statement in order to pursue a rescission remedy. Rowland v. Novus Financial Corp., 949 F.Supp. 1447, 1458-59 (D.Hawaii, 1996).

unidentified principal, the agent is party to that contract when acting with actual or apparent authority unless other agreements between the agent and the third party have been made. Restatement 3d of Agency § 6.02 (2006).

TILA carves out specific parties that can be liable for violations of the creditor. Specifically, an assignee of the original creditor is liable for any TILA violations where those violations are apparent on the face of the document in question. 15 U.S.C. §1641(a)(1). As previously mentioned, TILA specifically states that servicers are not to be treated as assignees, and therefore are not liable for damages. 15 U.S.C. §1641(f)(1). Plaintiff argues that defendant is actively concealing the identity of the lender and should therefore be liable under TILA through the common law doctrine of agency. However, plaintiff has provided no authority that extends the common law doctrine of agency to the servicer of a loan under a TILA claim. Further, had Congress meant to extend the common law doctrine of agency to TILA they could have done so explicitly. TILA carves out liability for specific parties and restricts liability to others. It was not Congressional intent to allow plaintiffs to bring servicers to court under the doctrine of agency when the Act specifically states that servicers are not liable for damages. Therefore, plaintiff fails to state a claim insofar as they assert that defendants are servicers of the loans.

Because OneWest and JP Morgan are loan servicers and not a creditor or assignee of the creditor, plaintiff's TILA claims against these defendants should be dismissed with prejudice. In light of this dismissal, the court need not address the issues of rescission, statute of limitations or tender. Plaintiff is granted leave to amend to substitute the true name or names of Lender Doe One and/or Lender Doe Two.

II. RESPA

Defendants also move to dismiss plaintiff's RESPA claim that defendants failed to respond to plaintiff's qualified written request ("QWR"), mailed January 14, 2009. RESPA states, in pertinent part:

      (1) Notice of receipt of inquiry

      (A) In general

      If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken within such period.

12 U.S.C. § 2605(e)(1)(A)(2009).  RESPA defines a QWR as:

      a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that-[¶] (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and [¶] (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B) (2009).  When a loan servicer receives a QWR, it must either correct the borrower's account or, after conducting an investigation, provide the borrower with a written explanation of:  (1) why the servicer believes the account is correct; or (2) why the requested information is unavailable.  See 12 U.S.C. § 2605(e)(2).

      On or about January 14, 2009, plaintiff mailed what he claims was a "Qualified Written Request" (as defined under RESPA) and a demand for rescission (under TILA) to the following:  Washington Mutual Bank, IndyMac Federal Bank, and 1st National Lending Services.  (Docket 14-2 at 57.)  Plaintiff alleges that defendants JP Morgan and OneWest are agents of the owner of the obligation and are therefore jointly and severally liable for the RESPA violations under a common law theory of agency.  (Complt. at 20.)

      However, as defendant OneWest points out, defendant OneWest was not served with a copy of the QWR and, in fact, wasn't even in existence on January 14, 2009, the date the QWR was mailed.  Plaintiff has failed to rebut this evidence.[4]  Defendant JP Morgan was also

---

[4] Plaintiff alleges that defendants JPMorgan and OneWest received the plaintiff's letter dated January 14, 2009, referencing Exhibits "C" and "D." (Complt. at 23.) However, review of

8

not mailed the QWR.  The complaint fails to allege facts sufficient for the court to draw a reasonable inference that either defendant OneWest or JP Morgan actually received the alleged QWR.  See 12 U.S.C. § 2605(e)(1)(A).

In addition, plaintiff's efforts to hold these defendants vicariously liable for the QWR sent to IndyMac Federal Bank, FSB, also fail.  Defendant OneWest provided a copy of the July 11, 2008 Order by the United States Office of Thrift Supervision which closed IndyMac Bank, FSB, placed the failed thrift into receivership and appointed the FDIC as its receiver. (Deft. OneWest's RJN, Ex. 4 at 24.)  The order also approved the application of the FDIC to organize a new thrift, IndyMac Federal Bank, FSB, that was placed into a conservatorship operated by the FDIC.  (Id.)  RESPA specifically excludes from its definition of servicers the FDIC in its role as conservator or receiver of a thrift.  12 U.S.C. § 2605(i)(2)(A); Ibarra v. Plaza Home Mortgage, 2009 WL 2901637 *4 (S.D. Cal. 2009)(granting FDIC's motion for judgment on the pleadings, as receiver for IndyMac Bank, with respect to RESPA claim based on alleged qualified written request.)  IndyMac Federal Bank was operated by the FDIC at the time plaintiff sent the alleged QWR.

Finally, defendants argue that plaintiff's failure to allege actual damages is fatal to the RESPA claim.  A claim of a RESPA violation cannot survive a motion to dismiss when the plaintiff does not plead facts showing how the plaintiff suffered actual harm due to defendants' failure to respond to a qualified written response.  See Benham v. Aurora Loan Servs., 2009 U.S. Dist. LEXIS 91287, at **10-11 (N.D. Cal. Oct. 1, 2009); Singh v. Wash. Mut. Bank, 2009 U.S. Dist. LEXIS 73315, at *16 (N.D. Cal. Aug. 19, 2009).  While courts interpret this requirement liberally, the plaintiff must at least allege what or how the plaintiff suffered the pecuniary loss. See Yulaeva v. Greenpoint Mortgage Funding, Inc., 2009 U.S. Dist. LEXIS 79094, at *44 (E.D. Cal. Sept. 3, 2009) (holding that the plaintiff's claim was sufficient to survive a motion to

---

exhibits C & D reflect that the January 14, 2009 letter was mailed to Washington Mutual Bank, IndyMac Federal Bank, and 1st National Lending Services, not to JP Morgan or OneWest.

dismiss because the plaintiff alleged that she was made to pay a referral fee that was prohibited by RESPA); Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) (holding that the plaintiffs adequately pled actual damages when they alleged that they suffered "negative credit ratings on their credit reports [and] the inability to obtain and borrow another mortgage loan and other financing"). Here, plaintiff's vague claim that he suffered harm because he was unable to name the real party in interest to this suit is insufficient to demonstrate plaintiff suffered actual damages as a result of defendants' failure to respond to the QWR. Therefore, plaintiff has not sufficiently pled facts showing a cognizable RESPA violation.

        Accordingly, plaintiff's RESPA claims should be dismissed.

## III. Joinder

        Plaintiff asks the court to order JP Morgan and One West to identify and join the real party in interest, the loan creditor or creditors, under Fed. R. Civ. P. 19.

> (a) Persons Required to Be Joined if Feasible.
>
> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>     (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
>     (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>         (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
>         (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
>
> (2) Joinder by Court Order. If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

Id.

During the hearing, counsel for plaintiff argued that counsel for JP Morgan also represents Lender Doe One, as evidenced by the reply, and thus should be required to join that creditor to this action. Counsel for JP Morgan clarified that he does not represent Lender Doe One. He set forth "JP Morgan Chase Bank, N.A., as an acquirer of certain assets and liabilities of Washington Mutual Bank from the FDIC acting as receiver, erroneously sued as JPMorgan Chase Bank, NA, as successor and/or acquirer of assets and liabilities to/from Washington Mutual Bank and LENDER DOE ONE," to make clear that plaintiff had erroneously named this defendant, and to emphasize this defendant had acquired certain assets from the FDIC acting as receiver.

While plaintiff argues that the creditor is absent and, as a real party in interest, must be joined, plaintiff has named the creditor as a doe defendant: Lender Doe One. The creditor is not a necessary party to the TILA claims as to the other defendants; plaintiff's sole relief under TILA is against the creditor, not the servicer defendants. This is not a situation where inequitable relief would be granted as against defendants in the absence of the creditor. However, plaintiff may propound discovery to determine the identity of the creditor or creditors from defendants. Accordingly, plaintiff's request for joinder will be denied.

IV. RFDCPA

Defendants move to dismiss plaintiff's claims under the RFDCPA arguing that a loan servicer on a mortgage secured by real estate cannot be held liable under the RFDCPA. However, defendants rely on federal law, which excludes loan servicers. The RFDCPA definition of a debt collector is broader than the federal definition. Izenberg v. ETS Services, LLC, 589 F.Supp.2d 1193, 1199 (C.D. Cal. 2008). Under California law, a debt collector is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). In the first amended complaint, plaintiff alleges that defendants are debt collectors within the meaning of the RFDCPA.

1      The court acknowledges that the activity of foreclosing on a property pursuant to a
2 deed of trust is not the collection of a debt within the meaning of the RFDCPA. Izenberg v. ETS
3 Servs., LLC, 589 F.Supp.2d 1193, 1199 (C.D.Cal.2008); Walker v. Equity 1 Lenders Group,
4 2009 U.S. Dist. LEXIS 40991, at *19-20, 2009 WL 1364430 (S.D.Cal. May 14, 2009); Ines v.
5 Countrywide Home Loans, Inc., 2009 U.S. Dist. LEXIS 21016, at *10-11, 2009 WL 690108
6 (S.D.Cal. Mar. 12, 2009); Tina v. Countrywide Home Loans, Inc., 2008 U.S. Dist. LEXIS 88302,
7 at *17-19, 2008 WL 4790906 (S.D.Cal. Oct. 30, 2008).  See also Fuentes v. Deutsche Bank,
8 2009 U.S. Dist. LEXIS 57931 (S.D.Cal. July 8, 2009) (granting defendant's motion for judgment
9 "[s]ince a residential mortgage is not a debt and a home foreclosure is not debt collection within
10 the meaning of the statute"); Gamboa v. Trustee Corps., 2009 WL 656285 (N.D.Cal. March 12,
11 2009) ("[T]he law is clear that foreclosing on a property pursuant to a deed of trust is not a debt
12 collection within the meaning of the RFDCPA.").
13     The RFDCPA, however, precludes a debt collector from collecting or attempting
14 to collect from a debtor on a consumer debt in a threatening or harassing manner.  See Cal. Civil
15 Code § 1788, et seq.  Specifically, the RFDCPA prohibits threats (Cal. Civil Code § 1788.10);
16 obscenity (Cal. Civil Code § 1788.11); misleading or false communications (Cal. Civil Code
17 § 1788.12 and overreaching (Cal. Civil Code § 1788.14-16).
18     Here, plaintiff alleges that defendants "repeatedly contacted plaintiff attempting to
19 collect the debt by a high volume of phone calls and written correspondence."  (Complt. at 23.)
20 While the federal rules contemplate a short and plain statement of plaintiff's claims, the
21 allegations must be sufficiently pled to allow the court to determine whether the conduct violates
22 the statute and to enable defendants to respond.  A "high volume of phone calls and written
23 correspondence" does not provide guidance as to how defendants allegedly violated the
24 RFDCPA, nor does it recite the specific code section defendants allegedly violated.  Thus,
25 plaintiff's claims under the RFDCPA should be dismissed with leave to amend.
26 /////

V.  UCL

Plaintiff's Unfair Competition Law claims are preempted by federal law and will be dismissed with prejudice.  Garza v. American Home Mortg., 2009 WL 188604 at *5 (E.D.Cal.); Adams v. SCME Mortg. Bankers, Inc., 2009 WL 1451715 at *10 (E.D.Cal.).

VI.  Good Faith and Fair Dealing

Plaintiff's claim under the implied covenant of good faith and fair dealing fails as well.  "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract."  Smith v. City and County of San Francisco, 225 Cal.App.3d 38, 49 (1990).  Plaintiff has not properly alleged any contractual relationship with either defendant; indeed, in the most recent opposition, plaintiff concedes that JP Morgan has no contract with plaintiff.  Thus, plaintiff's instant claim cannot survive.  Moreover, California has rejected a rule that would apply tort recovery for breach of the implied covenant in "'normal commercial banking transactions.'"  Velazquez v. GMAC Mortg. Corp., 605 F. Supp. 2d 1049, 1072 (C.D. Cal., 2008) (quoting Mitsui Mfrs. Bank v. Superior Court, 212 Cal.App.3d 726, 729 (1989)).  Plaintiff has presented no authority to the contrary.  Thus, defendants' motion to dismiss plaintiff's claim under the implied covenant of good faith and fair dealing should be granted.

VII.  Wrongful Foreclosure

Plaintiff's claim for wrongful foreclosure fails for want of tender:

> "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."  Karlsen v. American Sav. & Loan Assn., 15 Cal.App.3d 112,117 (Cal.App.2d Dist.1971). The overwhelming majority of California district courts utilize the Karlsen rationale in examining wrongful foreclosure claims.  Anaya v. Advisors Lending Group, 2009 U.S. Dist. LEXIS 68373 (E.D.Cal. August 3, 2009) ("Plaintiff offers nothing to indicate that she is able to tender her debt to warrant disruption of non-judicial foreclosure"); Alicea v. GE Money Bank, 2009 U.S. Dist. LEXIS 60813 (N.D.Cal. July 16, 2009) ("When a debtor is in default of a home mortgage loan, and

a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for foreclosure."); Montoya v. Countrywide Bank, 2009 U.S. Dist. LEXIS 53920 (N.D. Cal. June 25, 2009) ("Under California law, the "tender rule" requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the secured debt"). The application of the "tender rule" prevents "a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property." Williams v. Countrywide Home Loans, 1999 U.S. Dist. LEXIS 14550 (N.D.Cal. Sept. 15, 1999).

Keen v. American Home Mortg. Servicing, Inc., ____ F.Supp.2d ____, 2009 WL 3380454 (E.D.Cal. 2009) at *10.

Plaintiff alleges no facts in support of his ability to tender any payment in the first amended complaint. In his opposition, plaintiff states he will be highly prejudiced by the sale of the property, and claims "any possibility of tender to either OneWest or JP Morgan will be impossible." (Opp'n at 30.) However, plaintiff does not aver an ability or willingness to tender, even in light of the December 10, 2009 trustee sale presently scheduled. Defendants' motion to dismiss this claim should be granted.

VIII.  Slander of Title and Credit

Plaintiff's claims for "slander of title" and "slander of credit" fail to state a cognizable claim as written and will be dismissed.

IX.  Punitive Damages

Plaintiff concedes he sought punitive damages in error. Defendant's motion to strike plaintiff's request for punitive damages with respect to the RESPA and TILA claims is granted. In all other respects, defendants' motion to strike is denied.

X.  Injunctive Relief

Finally, plaintiff also alleges that defendants violated 15 U.S.C. § 1641(f)(2). Plaintiff contends defendant violated this section by not providing the name, address, and telephone number of the owner of the obligation after plaintiff requested this information in a

letter mailed January 14, 2009.  Plaintiff concedes defendants are servicers of the loans but argues liability under an agency theory.  Regardless of the status of defendant, liability cannot lie under section 1641(f)(2).  Subsection (f)(2) requires the servicer to provide the name, address, and telephone number of the owner of the obligation.  That subsection further provides that a servicer is expressly exempted from being considered as the owner of the obligation.  TILA, however, establishes a private right of action and provides for statutory damages for violations of TILA only against the creditor (the owner of the obligation) and assignees.  15 U.S.C. § 1640(a). Injunctive relief is not a remedy provided in the statute and should not be read into it.  See Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19 (1979) ("elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it"); see also Religious Technology Center v. Wollersheim, 796 F.2d 1076, 1088 (9th Cir. 1986) (no private right to injunctive relief under civil RICO).  Thus, section 1640(a) precludes an action against a servicer, whether plaintiff seeks damages or injunctive relief.  As noted above, application of a common law theory of agency is not appropriate in light of these statutes.

        Accordingly, IT IS HEREBY ORDERED that:

        1. Defendants' August 31, 2009 requests for judicial notice (#21, 22) are granted.

        2. Defendant OneWest's motion to strike plaintiff's requests for punitive damages (#22) is granted; in all other respects, the motion to strike is denied.

        3. Defendant JP Morgan's August 31, 2009 (#20) motion to dismiss is granted in part and denied in part, as set forth above.

        4. Defendant OneWest's August 31, 2009 (#23) motion to dismiss is granted in part and denied in part, as set forth above.

/////

/////

/////

5. To the extent plaintiff may be able to cure the deficiencies noted above, plaintiff may file, no later than thirty days from the date of this order, a second amended complaint.

DATED: January 5, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

/001; fullmer.mtd3