Kimberlee A. Rode (State Bar No. 186132)
Law Office of Kimberlee A. Rode
9284 Jackson Road
Sacramento, CA  95826
Telephone: (916) 417-4564
Facsimile: (916) 244-7006

Attorney for Plaintiff Shaunn A. Fullmer

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shaunn A. Fullmer,<br><br>       Plaintiff,<br><br>    and<br><br>JPMorgan Chase Bank, NA., as successor and/or acquirer of assets and liabilities to/from Washington Mutual Bank  and LENDER DOE ONE and OneWest Bank, FSB as successor by acquisition of Indymac Federal Bank and LENDER DOE TWO<br><br>       Defendants | Case No.:  2:09-cv-01037-GEB-JFM<br><br>SECOND AMENDED COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL<br><br>1.    TRUTH IN LENDING ACT VIOLATIONS<br>2.    RESPA<br>3.    FAIR DEBT COLLECTION PRACTICES ACT VIOLATIONS (State)<br>4.    NEGLIGENCE (TORT)<br>5.    CIVIL CONSPIRACY (TORT)<br>6.    Constructive Fraud<br>7.    Deceit |

## I. INTRODUCTION

1.     This second amended complaint is made pursuant to the order of the Court filed on January 6, 2010 to file an amended complaint by February 4, 2010.

2.     This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1601, et seq., Bus. & Prof. Code § 17200, et seq., and other statutory and common laws in effect. Plaintiff Shaunn A. Fullmer ("Plaintiff"), brings this action against JPMorgan Chase Bank, N.A., as successor by merger to Washington Mutual Bank ("JPMORGAN"), LENDER DOE ONE ("DOE1"), OneWest Bank, FSB as successor by acquisition of Indymac Federal Bank

("OneWest") and LENDER DOE TWO ("DOE2") based, in part, on Defendants failure to properly rescind the loan of Plaintiff pursuant to the Truth In Lending Act subjecting Plaintiff to damages.

3.      Specifically, Defendants JPMORGAN and/or DOE1 and/or their predecessor, failed to properly provide two copies each of the Notice of Right to Cancel to plaintiff in violation of 12 C.F.R. §226.23, Reg. Z §226.4(a)(2)-1 and Reg. Z §226.4(b)(2).

4.      Defendant JPMORGAN, as agent for DOE1, failed to comply with the Federal Real Estate Settlement Procedures Act by properly responding to a Qualified Written Request.  12 U.S.C. §2605.

5.      Defendant JPMORGAN, as agent for DOE1, failed to comply with State Fair Debt Collection Practices by continually contacted Plaintiff after Plaintiff had requested the contact stop pursuant to State law.

6.      Specifically, Defendants ONEWEST and/or DOE2 and/or their predecessor, failed to properly provide two copies each of the Notice of Right to Cancel to plaintiff in violation of 12 C.F.R. §226.23, Reg. Z §226.4(a)(2)-1 and Reg. Z §226.4(b)(2).

7.      Defendant ONEWEST, as agent for DOE2, failed to comply with the Federal Real Estate Settlement Procedures Act by properly responding to a Qualified Written Request.  12 U.S.C. §2605.

8.      Defendant ONEWEST, as agent for DOE2, failed to comply with California Business and Professions Code §17200 et seq. by untimely responding to the Plaintiff's request for rescission, willfully failing to provide the name, address and telephone number of the owner of the obligation and systematically failing to act in any good faith with the Plaintiff's requests.

9.      Defendant ONEWEST, as agent for DOE2, failed to comply with State Fair Debt Collection Practices by continually contacted Plaintiff after Plaintiff had requested the contact stop pursuant to State law.

10.     Defendants ONEWEST and JPMorgan have willfully failed to comply with various federal and state law of which their failure to comply has resulted in constructive fraud against Plaintiff and harmed the Plaintiff.

## II. JURISDICTION

1.  Subject Matter Jurisdiction is conferred on this Court by 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331, 1337. The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201.

2.     The Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3.     This Court has personal jurisdiction over the parties in this action by the fact that Defendants are either individuals who reside in this District within California or are corporations duly licensed to do business in California.

4.     Venue is proper within this District and Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this district, and because there is personal jurisdiction in this district over the named Defendants because it regularly conducts business in this judicial district.

## III. PARTIES

5.     The Plaintiff, Shaunn A. Fullmer, is a natural person, (hereinafter referred to as "Fullmer") and was at all times relevant, residing at xxxxxxxxxxxx, El Dorado Hills, CA  95762  (the "Subject Property").

6.     Plaintiff believes that Defendant JPMorgan Chase Bank, NA., as successor and/or acquirer of assets and liabilities to/from Washington Mutual Bank , is or at all times relevant to this action was, a domestic corporation, business entity, and/or a "Doing Business As" entity with a mailing address of 1111 POLARIS PARKWAY, COLUMBUS, OH 43240.

7.      Plaintiff believes and thereon alleges that at all times relevant hereto, JPMorgan Chase Bank, NA., as successor and/or acquirer of assets and liabilities to/from Washington Mutual Bank ,

in the ordinary course of business, holds and services loans for consumers located nationwide, including California.

8.     Plaintiff believes that Defendant OneWest Bank, FSB as successor by acquisition of Indymac Federal Bank is, or at all times relevant to this action was, a domestic limited liability corporation, business entity, and/or a "Doing Business As" entity, with a mailing address of 888 East Walnut Street, Pasadena, CA 91101.

9.     Plaintiff believes and thereon alleges that at all times relevant hereto, OneWest Bank, FSB as successor by acquisition of Indymac Federal Bank, in the ordinary course of business, holds and services loans for consumers located nationwide, including California.

10.     Plaintiff believes that Defendant LENDER DOE ONE was, or at all times relevant to this action was, a domestic corporation, business entity, and/or a "Doing Business As" entity.  Plaintiff does not know the true name of LENDER DOE ONE as Defendant JPMORGAN has willfully failed to identify LENDER DOE ONE of which they service their loan and Plaintiff will amend this complaint once the identity of LENDER DOE ONE is discovered.

11.     Plaintiff believes that Defendant LENDER DOE TWO was, or at all times relevant to this action was, a domestic corporation, business entity, and/or a "Doing Business As" entity.  Plaintiff does not know the true name of LENDER DOE TWO as Defendant ONEWEST has willfully failed to identify LENDER DOE TWO of which they service their loan and Plaintiff will amend this complaint once the identity of LENDER DOE TWO is discovered.

### IV. PRELIMINARY ALLEGATIONS

12.     On or about February 22, 2006, Plaintiff entered into two consumer credit transactions, a first deed of trust in the amount of $500,000.00 (ONEWEST servicing Loan Number xxxxxxxx8477) and a second deed of trust in the amount of $45,000.00 (JPMORGAN servicing Loan Number xxxxx8775)  (collectively referred to as "Loan Transaction") with 1st National Lending Services  in which the extended consumer credit was subject to a finance charge and which was initially payable to 1st National Lending Services.  A true and correct copy of the Note and security instrument (First

Deed of Trust) provided to Plaintiff by 1st National Lending Services is attached as Exhibit "A".  A true and correct copy of the Note and security instrument (Second Deed of Trust) provided to Plaintiff by 1st National Lending Services is attached as Exhibit "B".

13.    1st National Lending Services was required to provide Plaintiff certain disclosures pursuant to the TILA and Reg. Z.

14.    Plaintiff's loans are subject to the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq., ("TILA") and its implementing regulations, 12 C.F.R. Part 226 ("Reg. Z") as 1st National Lending Services was a "creditor" pursuant to said Act.

15.    TILA grants a consumer a three-day right to cancel certain types of real estate loan transactions.  This three-day right to cancel applies to Plaintiff's loans with 1st National Lending Services now serviced by JPMORGAN and ONEWEST since the transaction was on the Plaintiff's principal residence and was a refinance transaction.

16.    Pursuant to 15 U.S.C. § 1635(a), the three-day cancellation period begins upon the later of the following events: (1) the "consummation of the transaction;" (2) the "delivery of the information and rescission forms" required by that section; or (3) delivery of accurate "material disclosures" required by TILA. 15 U.S.C. § 1635(a).

17.    If the required notices of cancellation (Notice of Right to Cancel) are not provided or provided inaccurately, then the right to cancel extends to three years after the date of the loan. 15 U.S.C. § 1635(f).

18.    If a consumer has the right to rescind against a creditor, the right will also apply to any assignees of that creditor. 15 U.S.C. § 1641(c).

19.    A consumer may exercise their right to cancel a transaction by delivery of a written notification of the consumer's wish to cancel the transaction to the creditor's place of business or upon notice to the assignee of the creditor.

20.    Notice is effective upon mailing and notice on the agent servicing the loan is effective notice on the holder of the mortgage. 12 C.F.R. § 226.23(a)(2).

21.    When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer is not liable for any amount, including any finance charge. 15 U.S.C. § 1635(b).

22.    Within twenty (20) days after the receipt of a consumer's election to cancel the transaction, the creditor must return to the consumer all money or property given, including all interest and finance charges paid, and shall take all action necessary or appropriate to reflect the termination of any security interest created under the transaction. 15 U.S.C. § 1635(b); 15 C.F.R. § 226.23(d).

23.    JPMorgan Chase acquired several of the assets of the former Washington Mutual Bank FSB from the FDIC in September 28, 2008, including the name of Washington Mutual. JPMorgan operated under the Washington Mutual name for the balance of 2008 and into early 2009. JPMorgan has converted and rebranded former Washington Mutual to the JPMorgan Chase name in 2009.  For all intents and purposes, from September 28, 2008 to date, Washington Mutual and JPMorgan Chase have been the same entity.

24.    Plaintiff contends that the subject loan currently serviced by JPMorgan Chase did not transfer ownership but that JPMorgan Chase only acquired the servicing rights to the Plaintiffs loan and that the FDIC did not in fact transfer the underlying loan itself as that is owned by an unknown party in which JPMorgan Chase refuses to disclose.

25.    OneWest Bank acquired several of the assets of the Indymac Federal Bank FSB from the FDIC on March 19, 2009. Indymac Federal Bank is the successor bank created by the FDIC from the failure of Indymac Bank on July 11, 2008.  Indymac Federal Bank was not the failed bank seized by the FDIC but was a new created by the FDIC.

26.    Plaintiff contends that the subject loan currently serviced by OneWest did not transfer ownership but that OneWest only acquired the servicing rights to the Plaintiffs loan and that the FDIC did not in fact transfer the underlying loan itself as that is owned by an unknown party in which OneWest refuses to disclose.

27.   By a letter dated January 14, 2009 (Exhibit "C" and Exhibit "D" attached and incorporated herein by reference), Plaintiff notified 1st National Lending Services (predecessor of JPMORGAN), and DOE1, through their agent JPMORGAN (using the former name of Washington Mutual that they acquired), and  DOE2, through their agent ONEWEST, that he was making a Qualified Written Request under RESPA, pointed out the deficient notices of right to cancel under the Truth In Lending Act and that Plaintiff was rescinding his loans pursuant to the Truth In Lending Act.

28.   1st National Lending Services was required to provide Plaintiff with two copies each of a completed Notice of Right to Cancel at the time of consummation or at the time of giving the final disclosures on both loans.

29.   1st National Lending Services violated TILA by failing to provide Plaintiff with two copies of the Notice of Right to Cancel on each loan.

30.   Said failure to provide the proper notices allows Plaintiff to rescind the loans as to the assignees, DOE1 and DOE2 herein.

31.   In January 2010, DOE2, by and through its agent, OneWest, sold the real property of the Plaintiff in a non-judicial foreclosure.  As such, Plaintiff can no longer be returned to the "status quo" as required under TILA but seeks damages from the owners of the obligation.

### FIRST CAUSE OF ACTION TRUTH IN LENDING ACT
### FOR DAMAGES AGAINST DOE1
### (Violations of Truth in Lending Laws)
### (Damages for violation of 15 U.S.C. §1635(g) and 15 U.S.C. §1640(a))

32.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

33.   This cause of action is applicable to DOE1.

34.   15 U.S.C. § 1601, et seq., is the Federal Truth in Lending Act ("TILA"). The Federal Reserve Board of Governors implements the Federal Truth in Lending Act through Regulation Z (1C.F.R. § 2) and its Official Staff Commentary. Compliance by lenders with Regulation Z became mandatory October 1, 1982. Likewise, Official Staff Commentary issued by the Federal Reserve Board is also binding on all lenders.

35. The purpose of TILA is to protect consumers. This is stated in 12 C.F.R. § 226.1.

36. Pursuant to 15 U.S.C. 1641, any civil action that may be brought against any creditor may also be brought against any assignee of the creditor.

    a. Typically such liability is limited to errors apparent on the face of the disclosure statement (15 U.S.C. 1641(e).

    b. However, 15 U.S.C. 1641(c) states that the assignee is subject to the rescission rights of the consumer even if there was not any error apparent on the face of the disclosures.

37. DOE1 loan to Plaintiff violates TILA because DOE1 predecessor failed to provide the Plaintiff the required two copies of a completed Notice of Right to Cancel with the accurate information as required by the statute.

38. As a result of the failure to provide accurate and true copies of the Notice of Right to Cancel for the loan transaction, Plaintiff is entitled to the extended three year right to rescind the loan transaction.

39. Plaintiff, on information and belief, presumes that the original Notice of Right to Cancel in the possession of the DOE1 is complete with a proper signature and dates completed.

40. Said completed Notice of Right to Cancel creates a rebuttable presumption under 15 U.S.C. 1635(c) that the Plaintiff actually received his two copies of the Notice of Right to Cancel.

41. Plaintiff rebuts such written knowledge in that the only copies of the Notice of Right to Cancel he has ever received are contained as a true and correct copy of the Notice of Right to Cancel as Exhibit "F" of which the dates are blank as to the date of the transaction and when the right of rescission expires.

42. The blank date copies were provided to DOE1 in the letter dated January 14, 2009 (Exhibit "D" attached and incorporated herein by reference) to Washington Mutual (now known as JPMorgan), the agent for DOE1.

43. In light of this rebuttable evidence, DOE1 has never provided Plaintiff with any supplemental extrinsic evidence to further support that the proper copies were provided to Plaintiff.

44.    Plaintiff contends that the delivery of the Notice of Right to Cancel is factually in dispute as DOE1 has a copy with a written acknowledgement and completed dates yet Plaintiff has a copy that the dates are omitted.

45.    Plaintiff contends that upon receipt of the Notice of Right to Cancel, the next steps required were required by DOE1. Specifically, the Official Staff Commentary to Regulation Z states under § 226.23(d)(3),  "*the creditor is responsible for seeing the process through to completion.*"

46.    Plaintiff contends that DOE1s did not begin the process as stated above and did not make a request for tender.

47.    Plaintiff has always been and continues to be willing and able to tender as required under TILA.

48.    By failing to properly act on the rescission request within the 20 days as required by 15 U.S.C. §1635, Plaintiffs was additionally harmed by the reduction in property value.

49.    DOE1, by and through its agent, JPMorgan, began reporting the credit of Plaintiff negatively which additionally harms Plaintiff.

50.    A rescission of the Plaintiff's loan requires that all the parties be brought back to the "status quo ante" as follows under 15 U.S.C. §1635(b):

      a.   Return of all fees and costs paid at the time the loan was originated, this includes title, escrow, all loan fees, etc.

      b.   All finance portion of the payments made from the date of inception until the date of tender.

51.    However, as a further complication, the first mortgage holder, DOE2, serviced by OneWest, completed a non-judicial foreclosure which prevents DOE1 from returning the Plaintiff back to status quo ante.

52.    To date, DOE1, by and through its agent, JPMorgan, put every impediment in the way to prevent a tender completely inconsistent with the rescission requirements of 15 U.S.C. §1635.

a.   The acts of DOE1 and its agent, JPMorgan, is wholly inconsistent with the consumer protections of the Truth In Lending Act which requires creditors to make proper disclosure and grants rescission rights when the creditor fails to provide proper disclosures.

53.   DOE1,  by and through its agent, JPMorgan, know that by not acting on the request in a declining market causes further harm to Plaintiff and their ability to tender.

54.   DOE1, by and through its agent, JPMorgan, are reporting a loan delinquency on this loan to the credit bureaus when they know that by reporting the negative credit, the Plaintiff's ability to tender will become much more difficult.

55.   DOE1 has never told Plaintiff the amount they deem is necessary to tender.

56.   Plaintiff contends that DOE1, by and through its agent, JPMorgan, are engaging in an unlawful and unfair manner, as stated herein, knowing they will make tender an issue of the rescission request, even though they took steps to prevent tender and did not act on the request timely, thereby systematically rewarding their bad behavior of not properly acting on the request required within the law and foreclosing on the property knowing that said actions were intended to further harm Plaintiff.

57.   At the time the letter was sent, January 14, 2009 (Exhibit "D" attached and incorporated herein by reference), and within the time period the DOE1 was required to act (within 20 days of receipt) Plaintiff was ready, willing and able to tender upon knowing the amounts required to tender, including offsets as required under 15 U.S.C. §1635 as pled herein

58.   Plaintiff was denied rescission and damaged under 15 U.S.C. §1640 and was forced to file this suit to address DOE1, by and through its agent, JPMorgan, failure to do their part under the rescission process.

59.   Plaintiff alleges that the improper providing of rescission forms is a prevalent problem in the lending industry, known by DOE1 of which they willfully fail to put in place proper controls to

ensure their obligations under the Truth In Lending Act, i.e. providing rescission rights and notices, is met by the agents and the predecessors in interest they employ.

60.     Plaintiff contends that creditors and assignees compliance with providing proper and completed rescission forms to consumers is a relatively simple task with proper controls but that creditors and assignees are negligently failing to meet their obligations.

61.     Plaintiff further contends that DOE1 and their agent regularly fail to respond to rescission requests in a timely manner as they know they will use their financial dominance in the marketplace to prevent consumers from rescinding loans and will take their chances with the court system to raise tender defenses aggravated by their own actions and dominance thereby thwarting the consumer protections of the Truth In Lending Act.

62.     Plaintiff further contends, while not their responsibility but the responsibility of the creditor, they lack the proper expertise to properly calculate business days as on information and belief, business day for rescission purposes is different than a lay persons belief of what a business day is and therefore needs a complete form with the actual dates completed to be given proper disclosure of when their right to cancel begins and ends.

63.     Plaintiff further contends that DOE1, by and through its predecessor, keep the loan closing process complicated and use agents to meet DOE1 (or their predecessor) requirements which provide the Plaintiff a stack of documents approximately one inch thick in which the Plaintiff executes the documents and are promised copies at the closing.

64.     A  review of the extensive copies provided at the closing has the appearance of being true and complete copies but the copies provided the Plaintiff herein appear are made in advance without them completed.

65.     Plaintiff has exercised common and ordinary care as is typical of an average consumer in reviewing the copies provided for the limited time involved.

66.     Plaintiff lacks the experience to review the copies provided without specifically reviewing side by side each document to ensure each page executed matches the corresponding page of each

copy which, considering the agent controlling the closing has promised copies, is not reasonable and substantially exceeds the standard of care of an ordinary consumer would exercise especially considering this shifts the responsibility of providing the proper copies to the Plaintiff from DOE1 (or their predecessor)  (who are required to ensure compliance) back to the consumer, the Plaintiff herein.

67.     Plaintiffs extended right to rescind on the first deed of trust was in effect on January 14, 2009 (Exhibit "D" attached and incorporated herein by reference) when Plaintiff validly rescinded the transaction by sending to DOE1's agent, the demand for rescission as alleged herein.

68.     Said demand was sent to the servicing agent of DOE1, JPMorgan, who is authorized to receive notices on behalf of DOE1 under State agency laws, pursuant to the Truth In Lending Act.

69.     Assignees are fully liable for rescission, regardless of whether the underlying disclosure violations are apparent on the face of the documents.  15 U.S.C. § 1641(c).

70.     The Statute of Limitations for rescission of a loan transaction is three years from the date of consummation.  15 U.S.C. § 1635(f).

   a.    The letter of rescission attempted to mitigate damages to DOE1 in that it offered rescission and alternative methods to resolve the rescission without litigation.

   b.    Plaintiff did so in a belief she was obligated to attempt to mitigate the damages to DOE1.

   c.    In addition, the notice was timely sent within the 3 years but shortly before the 3 years was set to expire.  As such, under the concept of equitable tolling, as the letter was sent before the 3 years was to expire.

71.     Equitable Tolling is applicable in this case as the Plaintiff:

   a.    Gave timely notice of her rescission notice within the 3 year statute of limitations.

   b.    The offer of mitigating damages by offering alternative to rescission was not prejudicial to DOE1 but was actually a benefit which would have reduced financial harm to the DOE1.

c.   In doing so, the Plaintiff acted in extreme good faith toward the DOE1 by attempting to mitigate damages.

72.   A timely rescission notice revives the initial one year Statute of Limitations period for DOE1's willful failure to comply with consumer's exercise of the Right to Cancel. 15 U.S.C. § 1640(a) and 15 U.S.C. § 1635(g).

73.   The Truth In Lending Act allows recoupment under State Law pursuant to 15 U.S.C. § 1635 (i)(3).  Violation of the Truth In Lending Act is also a violation of California Business and Professions Code Section 17200 as an unfair business practice and Plaintiff is entitled to recoupment of the unjust enrichment of the DOE1 for the violation of the Truth In Lending Act.

74.   DOE1 has failed to rescind the loans which form the subject loan transaction.

75.   Acting within the 20 days of the notice under 15 U.S.C. §1635 renders the DOE1 strictly liable for their failure.

76.   Plaintiff was on a fragile ground and even a minor violation of the statute by DOE1 could cause the Plaintiff harm.  However, had DOE1 done all the things they were legally required to do, Plaintiff/Plaintiff would have been able to successfully tender and neither Plaintiff or DOE1 would have been harmed and the parties would have been returned to the status quo.

77.   Non-compliance with the rescission request is a violation of the act which gives rise to a claim for actual and statutory damages under 15 U.S.C. §1640.

78.   TILA rescission does not only cancel a security interest in the property but it also cancels any liability to pay finance and other charges, including accrued interest, points, broker fees, closing costs and provides that the lender must refund all fees paid.

79.   While the Plaintiff properly rescinded the loan within the 3 year statute of limitations for said remedy, Plaintiff hereby requests damages, costs and attorney fees pursuant to both 15 U.S.C. §1635 and 15 U.S.C. §1640.

80.   Plaintiff requests damages from DOE1 in any other alternative relief the court deems fit and proper to effectuate the self executing process of 15 U.S.C. §1635.

81.   Plaintiff requests damages from DOE1 in the form of all costs and attorney fees incurred related to this action as allowed by 15 U.S.C. §1640.

82.   Plaintiff requests statutory damages from DOE1 of $4,000.00 for failing to act on the rescission of the loan as required by TILA.

83.   Plaintiff requests damages from DOE1 for the return of all fees, interest and finance charges related to the DOE1 loan.

84.   Plaintiff requests the court grant Declaratory Relief perfecting that Plaintiff timely rescinded their loan within the statutory 3 year period pursuant to 15 U.S.C. §1635.

**SECOND CAUSE OF ACTION TRUTH IN LENDING ACT**
**FOR DAMAGES AGAINST DOE2**
**(Violations of Truth in Lending Laws)**
**(Damages for violation of 15 U.S.C. §1635(g) and 15 U.S.C. §1640(a))**

85.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

86.   This cause of action is applicable to DOE2.

87.   15 U.S.C. § 1601, et seq., is the Federal Truth in Lending Act ("TILA"). The Federal Reserve Board of Governors implements the Federal Truth in Lending Act through Regulation Z (1C.F.R. § 2) and its Official Staff Commentary. Compliance by lenders with Regulation Z became mandatory October 1, 1982. Likewise, Official Staff Commentary issued by the Federal Reserve Board is also binding on all lenders.

88.   The purpose of TILA is to protect consumers. This is stated in 12 C.F.R. § 226.1.

89.   Pursuant to 15 U.S.C. 1641, any civil action that may be brought against any creditor may also be brought against any assignee of the creditor.

     c.   Typically such liability is limited to errors apparent on the face of the disclosure statement (15 U.S.C. 1641(e).

     d.   However, 15 U.S.C. 1641(c) states that the assignee is subject to the rescission rights of the consumer even if there was not any error apparent on the face of the disclosures.

90.    DOE1 loan to Plaintiff violates TILA because DOE2 predecessor failed to provide the Plaintiff the required two copies of a completed Notice of Right to Cancel with the accurate information as required by the statute.

91.    As a result of the failure to provide accurate and true copies of the Notice of Right to Cancel for the loan transaction, Plaintiff is entitled to the extended three year right to rescind the loan transaction.

92.    Plaintiff, on information and belief, presumes that the original Notice of Right to Cancel in the possession of the DOE2 is complete with a proper signature and dates completed.

93.    Said completed Notice of Right to Cancel creates a rebuttable presumption under 15 U.S.C. 1635(c) that the Plaintiff actually received his two copies of the Notice of Right to Cancel.

94.    Plaintiff rebuts such written knowledge in that the only copies of the Notice of Right to Cancel he has ever received are contained as a true and correct copy of the Notice of Right to Cancel as Exhibit "E" of which the dates are blank as to the date of the transaction and when the right of rescission expires.

95.    The blank date copies were provided to DOE2 in the letter dated January 14, 2009 (Exhibit "C" attached and incorporated herein by reference) to Indymac (the servicing rights of which were acquired by OneWest), the agent for DOE2.

96.    In light of this rebuttable evidence, DOE2 has never provided Plaintiff with any supplemental extrinsic evidence to further support that the proper copies were provided to Plaintiff.

97.    Plaintiff contends that the delivery of the Notice of Right to Cancel is factually in dispute as DOE2 has a copy with a written acknowledgement and completed dates yet Plaintiff has a copy that the dates are omitted.

98.    Plaintiff contends that upon receipt of the Notice of Right to Cancel, the next steps required were required by DOE2. Specifically, the Official Staff Commentary to Regulation Z states under § 226.23(d)(3),  "*the creditor is responsible for seeing the process through to completion.*"

99.   Plaintiff contends that DOE2 did not begin the process as stated above and did not make a request for tender.

100.   Plaintiff has always been and continues to be willing and able to tender as required under TILA.

101.   By failing to properly act on the rescission request within the 20 days as required by 15 U.S.C. §1635, Plaintiffs was additionally harmed by the reduction in property value.

102.   DOE2, by and through its agents, Indymac and OneWest, began reporting the credit of Plaintiff negatively which additionally harms Plaintiff.

103.   A rescission of the Plaintiff's loan requires that all the parties be brought back to the "status quo ante" as follows under 15 U.S.C. §1635(b):

   a.   Return of all fees and costs paid at the time the loan was originated, this includes title, escrow, all loan fees, etc.

   b.   All finance portion of the payments made from the date of inception until the date of tender.

104.   However, as a further complication, the OneWest, acting on behalf of DOE2, completed a non-judicial foreclosure which prevents DOE2 from returning the Plaintiff back to status quo ante.

105.   To date, DOE2, by and through its agent, OneWest, put every impediment in the way to prevent a tender, including selling the subject property at a foreclosure sale while this matter was pending, completely inconsistent with the rescission requirements of 15 U.S.C. §1635.

   a.   The acts of DOE2 and its agent, OneWest, is wholly inconsistent with the consumer protections of the Truth In Lending Act which requires creditors to make proper disclosure and grants rescission rights when the creditor fails to provide proper disclosures.

106.   DOE2,  by and through its agent, OneWest, know that by not acting on the request in a declining market causes further harm to Plaintiff and their ability to tender.

107.   DOE2, by and through its agent, OneWest, are reporting a loan delinquency on this loan to the credit bureaus when they know that by reporting the negative credit, the Plaintiff's ability to tender will become much more difficult.

108.   DOE2 has never told Plaintiff the amount they deem is necessary to tender.

109.   Plaintiff contends that DOE2, by and through its agent, OneWest, are engaging in an unlawful and unfair manner, as stated herein, knowing they will make tender an issue of the rescission request, even though they took steps to prevent tender and did not act on the request timely, thereby systematically rewarding their bad behavior of not properly acting on the request required within the law and foreclosing on the property knowing that said actions were intended to further harm Plaintiff.

110.   At the time the letter was sent, January 14, 2009 (Exhibit "C" attached and incorporated herein by reference), and within the time period the DOE2 was required to act (within 20 days of receipt) Plaintiff was ready, willing and able to tender upon knowing the amounts required to tender, including offsets as required under 15 U.S.C. §1635 as pled herein

111.   Plaintiff was denied rescission and damaged under 15 U.S.C. §1640 and was forced to file this suit to address DOE2, by and through its agent, OneWest, failure to do their part under the rescission process.

112.   Plaintiff alleges that the improper providing of rescission forms is a prevalent problem in the lending industry, known by DOE2 of which they willfully fail to put in place proper controls to ensure their obligations under the Truth In Lending Act, i.e. providing rescission rights and notices, is met by the agents and the predecessors in interest they employ.

113.   Plaintiff contends that creditors and assignees compliance with providing proper and completed rescission forms to consumers is a relatively simple task with proper controls but that creditors and assignees are negligently failing to meet their obligations.

114.   Plaintiff further contends that DOE2 and their agent regularly fail to respond to rescission requests in a timely manner as they know they will use their financial dominance in the marketplace

to prevent consumers from rescinding loans and will take their chances with the court system to raise tender defenses aggravated by their own actions and dominance thereby thwarting the consumer protections of the Truth In Lending Act.

115.   Plaintiff further contends, while not their responsibility but the responsibility of the creditor, they lack the proper expertise to properly calculate business days as on information and belief, business day for rescission purposes is different than a lay persons belief of what a business day is and therefore needs a complete form with the actual dates completed to be given proper disclosure of when their right to cancel begins and ends.

116.   Plaintiff further contends that DOE2, by and through its predecessor, keep the loan closing process complicated and use agents to meet DOE2 (or their predecessor) requirements which provide the Plaintiff a stack of documents approximately one inch thick in which the Plaintiff executes the documents and are promised copies at the closing.

117.   A  review of the extensive copies provided at the closing has the appearance of being true and complete copies but the copies provided the Plaintiff herein appear are made in advance without them completed.

118.   Plaintiff has exercised common and ordinary care as is typical of an average consumer in reviewing the copies provided for the limited time involved.

119.   Plaintiff lacks the experience to review the copies provided without specifically reviewing side by side each document to ensure each page executed matches the corresponding page of each copy which, considering the agent controlling the closing has promised copies, is not reasonable and substantially exceeds the standard of care of an ordinary consumer would exercise especially considering this shifts the responsibility of providing the proper copies to the Plaintiff from DOE2 (or their predecessor)  (who are required to ensure compliance) back to the consumer, the Plaintiff herein.

120.   Plaintiffs extended right to rescind on the first deed of trust was in effect on January 14, 2009 (Exhibit "C" attached and incorporated herein by reference) when Plaintiff validly rescinded the transaction by sending to DOE2's agent, the demand for rescission as alleged herein.

121.   Said demand was sent to the servicing agent of DOE2, Indymac, who is authorized to receive notices on behalf of DOE2 under State agency laws, pursuant to the Truth In Lending Act.

122.   Assignees are fully liable for rescission, regardless of whether the underlying disclosure violations are apparent on the face of the documents.  15 U.S.C. § 1641(c).

123.   The Statute of Limitations for rescission of a loan transaction is three years from the date of consummation.  15 U.S.C. § 1635(f).

   a.   The letter of rescission attempted to mitigate damages to DOE2 in that it offered rescission and alternative methods to resolve the rescission without litigation.

   b.   Plaintiff did so in a belief she was obligated to attempt to mitigate the damages to DOE2.

   c.   In addition, the notice was timely sent within the 3 years but shortly before the 3 years was set to expire.  As such, under the concept of equitable tolling, as the letter was sent before the 3 years was to expire.

124.   Equitable Tolling is applicable in this case as the Plaintiff:

   a.   Gave timely notice of her rescission notice within the 3 year statute of limitations.

   b.   The offer of mitigating damages by offering alternative to rescission was not prejudicial to DOE2 but was actually a benefit which would have reduced financial harm to the DOE2.

   c.   In doing so, the Plaintiff acted in extreme good faith toward the DOE2 by attempting to mitigate damages.

125.   Since DOE2 completed a non-judicial foreclosure on the property and loan, this further shows bad faith on their part as they did not attempt to mitigate any of the damages to Plaintiff nor to DOE1, of which both are now harmed.

126.   A timely rescission notice revives the initial one year Statute of Limitations period for DOE1's willful failure to comply with consumer's exercise of the Right to Cancel. 15 U.S.C. § 1640(a) and 15 U.S.C. § 1635(g).

127.   The Truth In Lending Act allows recoupment under State Law pursuant to 15 U.S.C. § 1635 (i)(3).  Violation of the Truth In Lending Act is also a violation of California Business and Professions Code Section 17200 as an unfair business practice and Plaintiff is entitled to recoupment of the unjust enrichment of the DOE2 for the violation of the Truth In Lending Act.

128.   DOE2 has failed to rescind the loans which form the subject loan transaction.

129.   Acting within the 20 days of the notice under 15 U.S.C. §1635 renders the DOE2 strictly liable for their failure.

130.   Plaintiff was on a fragile ground and even a minor violation of the statute by DOE2 could cause the Plaintiff harm.  However, had DOE2 done all the things they were legally required to do, Plaintiff would have been able to successfully tender and neither Plaintiff, DOE1 or DOE2 would have been harmed and the parties would have been returned to the status quo.

131.   Non-compliance with the rescission request is a violation of the act which gives rise to a claim for actual and statutory damages under 15 U.S.C. §1640.

132.   TILA rescission does not only cancel a security interest in the property but it also cancels any liability to pay finance and other charges, including accrued interest, points, broker fees, closing costs and provides that the lender must refund all fees paid.

133.   While the Plaintiff properly rescinded the loan within the 3 year statute of limitations for said remedy, Plaintiff hereby requests damages, costs and attorney fees pursuant to both 15 U.S.C. §1635 and 15 U.S.C. §1640.

134.   Plaintiff requests damages from DOE2 in any other alternative relief the court deems fit and proper to effectuate the self executing process of 15 U.S.C. §1635.

135.   Plaintiff requests damages from DOE2 in the form of all costs and attorney fees incurred related to this action as allowed by 15 U.S.C. §1640.

136.    Plaintiff requests statutory damages from DOE2 of $4,000.00 for failing to act on the rescission of the loan as required by TILA.

137.    Plaintiff requests damages from DOE2 for the return of all fees, interest and finance charges related to the DOE2 loan.

138.    Plaintiff requests the court grant Declaratory Relief perfecting that Plaintiff timely rescinded their loan within the statutory 3 year period pursuant to 15 U.S.C. §1635.

### THIRD CAUSE OF ACTION FOR REAL ESTATE SETTLEMENT PROCEDURES ACT VIOLATIONS AGAINST JPMORGAN AND DOE1
### (Violations of Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. – Failing to Properly Respond to a QWR)

139.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

140.    JPMorgan is the agent of the owner of the obligation of DOE1.

141.    JPMorgan acquired several of the assets of the former Washington Mutual Bank FSB from the FDIC in September 28, 2008, including the name of Washington Mutual. JPMorgan operated under the Washington Mutual name for the balance of 2008 and into early 2009. JPMorgan has converted and rebranded former Washington Mutual to the JPMorgan Chase name in 2009. For all intents and purposes, from September 28, 2008 to date, Washington Mutual and JPMorgan Chase have been the same entity.

142.    Violation of RESPA applies to servicing agents related to their servicing activities.

143.    DOE1, as the principal to their agency with JPMorgan is liable for the acts of their agent under agency law and such, Plaintiff contends that DOE1 is liable for damages stated herein.

144.    The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA") was enacted on December 22, 1974.

145.    RESPA applies to "federally related mortgage loans," which is defined at 12 U.S.C. § 2602(1). RESPA initially applied only to certain first liens on residential real property. On October 28, 1992, the law was amended to cover subordinate liens and loans used to prepay or pay off an existing loan secured by the same property. 12 U.S.C. § 2602(1); 24 C.F.R. § 3500.2.

146.   Plaintiff's January 14, 2009 (Exhibit D) was sent via a Certificate of Mailing with the United States Post Office.

147.   JPMorgan/Washington Mutual did not properly respond to Plaintiffs request.

148.   Plaintiff's request is consistent with a Qualified Written Request under 12 U.S.C. § 2605(e), which imposes upon "loan servicers" the duty to timely respond to a "qualified written request" from a borrower.

149.   A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that –

    a.   includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

    b.   includes a statement of the reasons for <u>the belief of the borrower</u>, not the belief of the servicer, to the extent applicable, that the account is in error **<u>or provides sufficient detail to the servicer regarding other information sought by the borrower</u>**.

150.   Plaintiff contends that notice of a loan subject to rescission creates a servicing error as the amount of payments and collection of said payments is in dispute.

**151.**   Further, RESPA allows, <u>in addition</u> to a request being related to a servicing error, to seek other information sought by the borrower in connection with the loan, 12 U.S.C. § 2605(e)(1)(B)(ii), "**(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error <u>or provides sufficient detail to the servicer regarding other information sought by the borrower</u>.**"

152.   Plaintiff's January 14, 2009 letter (Exhibit D) was sent via a Certificate of Mailing with the United States Post Office did provide sufficient detail to the servicer of information related to servicing the loan and other information sought by the borrower as required in 12 U.S.C. §2605(e)(1(B)(ii), supra.

153.   As a result of JPMorgan/Washington Mutual's failure to act on the request, they reported the credit of the Plaintiff, which is prohibited by RESPA, which resulted in credit harm by credit lines being reduced or eliminated by other creditors.

154.   As a result of JPMorgan/Washington Mutual's failure to act on the request, Plaintiff was unable to resolve the matters pending with DOE1, unable to obtain the amounts necessary to tneder, unable to tender and as a direct result, the first mortgage holder sold the property thereby harming the Plaintiff by the loss of the property.

     a.   Had JPMorgan/Washington Mutual properly responded,  Plaintiff would have been returned to the status quo and would not have lost his property.

155.   Pursuant to 12 U.S.C. 2605 (f), Plaintiffs are entitled from DOE1 actual damages, statutory penalty of $1,000.00 and attorney fees and costs.

### FOURTH CAUSE OF ACTION FOR
### FAIR DEBT COLLECTION PRACTICES ACT VIOLATIONS
### AGAINST ALL DEFENDANTS
### (Violations of Rosenthal Fair Debt Collection Practices Act
### California Civil Code §§ 1788-1788.32)

156.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

157.   Rosenthal Fair Debt Collection Practices Act (RFDCPA), California Civil Code §§ 1788 - 1788.32 extends the debt collector activity to creditors and more broadly against persons or entities who are collecting debts of another.

158.   DOE1 hired JPMorgan as its servicing agent.

159.   JPMorgan is the agent of DOE1 which makes DOE1 their principal.

160.   DOE2 hired OneWest as its servicing agent.

161.   OneWest is the agent of DOE2 which makes DOE2 their principal.

162.   Under common law and California Civil Code §2334, a principal is bound by acts of his agent to third parties.

163.    The principal of an agency is presumed to have notice of all notices to the agent under common law and California Civil Code §2332, as against a principal, both principal and agent are deemed to have notice of whatever either has notice of.

    a.    As to OneWest, the original notice was sent to Indymac Bank (Ex. C), which imparted notice to their principal, DOE2.  When OneWest acquired the servicing rights of Indymac and its principal, DOE2, Plaintiff contends, under Ca. Civ. Code §2332, they were deemed to have notice of the Plaintiffs demands under the Rosenthal Fair Debt Collection Practices Act.

164.    The Rosenthal Fair Debt Collection Practices Act in § 1788.17 requires that all debt collectors, as defined under § 1788.2(c), which includes a creditor or anyone else collecting a debt on behalf of themselves or others, must comply with the provisions of 15 U.S.C. §1692b -§1692j and subject to the remedies of 15 U.S.C. § 1692k.

165.    Plaintiff contends that DOE1, by and through its agent, JPMorgan, and DOE2, by and through its agent, OneWest, is collecting a debt under the RFDCPA pursuant to 1788.2(d)  as the subject loan transaction meets the definition of a "debt" as contained in said statute as is it a loan of money:

**(d) The term "debt" means money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person.**

166.    Plaintiff contends that DOE1, by and through its agent, JPMorgan, and DOE2, by and through its agent, OneWest, is collecting a consumer credit transaction under the RFDCPA pursuant to 1788.2(e) as the subject loan transaction meet the definition as contained in said statutes in that the loan was used for personal, family or household purposes:

**(e) The term "consumer credit transaction" means a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes.**

167.   Plaintiff contends that DOE1, by and through its agent, JPMorgan, and DOE2, by and through its agent, OneWest, is collecting a consumer debt and or consumer credit under the RFDCPA pursuant to 1788.2(f) as the subject loan transaction meets the definition as contained in said statutes in that the loan was a consumer credit transaction:

**(f) The terms "consumer debt" and "consumer credit" mean money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction.**

*168.*   Plaintiff contends that DOE1, by and through its agent, JPMorgan, and DOE2, by and through its agent, OneWest, is a person under the RFDCPA pursuant to 1788.2(g) in the subject loan transaction as they meet the definition as contained in said statutes:

**(g) The term "person" means a natural person, partnership, corporation, limited liability company, trust, estate, cooperative, association or other similar entity.**

169.   DOE1, by and through its agent, JPMorgan (Washington Mutual), and and DOE2, by and through its agent, Indymac, received the Plaintiff's letter dated January 14, 2009 (Exhibits C and D and incorporated herein by reference).  Plaintiffs' letter stated, in part:

**"… have exercised their rights under the State and Federal Fair Debt Collection Practices Act and demanded you not contact them to collect the debt …"**

170.   The letter was consistent with her TILA rescission claim which terminates all finance charges on the account which thereby renders any obligation to continue payments as inconsistent with 15 U.S.C. §1635.

171.   Since the letter was sent to JPMorgan (when they were operating as Washington Mutual), who was the servicing agent of DOE1, notice under California agency laws was given to DOE1 (California Civil Code §2332).

172.   Since the letter was sent to Indymac, who was the servicing agent of DOE2, notice under California agency laws was given to DOE2 (California Civil Code §2332).

173.   Despite said notification, DOE1, by and through its agent, JPMorgan, repeatedly contacted Plaintiff attempting to collect the debt (outside of the statutorily required notices under Civil Code 2924 et seq. related to non-judicial foreclosure).

a.   Documented phone calls (partial list):

   i.   1/28/2009, 2:34 p.m.

   ii.   2/2/2009, 6:43 p.m.

   iii.   2/4/2009, 9:10 a.m.

   iv.   2/12/2009, 8:47 a.m.

174.   Despite said notification, DOE2, by and through its agent, OneWest, repeatedly contacted Plaintiff attempting to collect the debt (outside of the statutorily required notices under Civil Code 2924 et seq. related to non-judicial foreclosure).

a.   Documented phone calls (partial list):

   v.   3/22/2009, 1:39 p.m.

   vi.   3/28/2009, 5:13 p.m.

   vii.   4/6/2009, 6:10 p.m.

   viii.   4/8/2009, 10:42 a.m.

175.   DOE2, as the principal to their agency with OneWest is liable for the acts of their agent under agency law and as such, Plaintiff contends that is liable for damages stated herein as caused by their agent.

176.   Plaintiff's counsel has several other cases similar to Plaintiff and repeated violations of the RFDCPA are a common complaint which support that ignoring the RFDCPA is the common business practice of the Defendants.

177.   Such violation is a willful disregard for the rights of the Plaintiff and pursuant to California Civil Code § 1788.30 Plaintiff is entitled to actual damages, statutory penalty of no less than $100.00 and no more than $1,000.00 and actual attorney fees.

178.   Plaintiff contends that Defendants do not have in place reasonable procedures necessary to avoid such a violation and their acts were therefore willful and they should not be allowed to avoid said damages and awards by claiming their acts were merely a bona fide error.

///

## FIFTH CAUSE OF ACTION FOR NEGLIGENCE (TORT)
### AS TO ALL DEFENDANTS
#### (Common Law and California Civil Code §1714(a))

179.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

180.   Under Common Law and California Civil Code §1714(a) a Defendant is liable to a Plaintiff for damages caused by the negligence of Defendant.

181.   To be liable, Defendant must owe a legal duty of care to a Plaintiff. By various statutes Defendants violated several statutes and is thereby strictly liable for the damages caused therein.

   a.   JPMorgan and DOE1 was notified and Plaintiff did request under 15 U.S.C. §1641 for the name, address and telephone number of DOE1.  JPMorgan and DOE1 did not comply with said statute and provide said information.

   b.   DOE1, by and through their agent, JPMorgan (Washington Mutual) herein, was required under 15 U.S.C. §1635 to respond to Plaintiffs request for rescission within 20 days. DOE1 did not.

   c.   JPMorgan (Washington Mutual) herein, was required under to respond to a Qualified Written Request under RESPA.  JPMorgan did not.

   d.   DOE1, by and through their agent, JPMorgan (Washington Mutual), herein, was required under the Rosenthal Fair Debt Collection Practices Act to curtail contact that was not statutorily allowed and DOE1, by and through their agent, JPMorgan (Washington Mutual), did contact which was statutorily prohibited.

   e.   Indymac and DOE2 was notified and Plaintiff did request under 15 U.S.C. §1641 for the name, address and telephone number of DOE2.  When OneWest took over the loan servicing obligation of Indymac and DOE2, the request was pending and they were obligated to provide said information.  Indymac, OneWest and DOE2 did not comply with said statute and provide said information.

   f.   DOE2, by and through their agents, herein, was required under 15 U.S.C. §1635 to respond to Plaintiffs request for rescission within 20 days.  DOE2 and their agents did not.

g.  DOE2, by and through their agent, OneWest, herein, was required under the Rosenthal Fair Debt Collection Practices Act to curtail contact that was not statutorily allowed and DOE2, by and through their agent, OneWest, did contact which was statutorily prohibited.

182.  To be liable, Defendants must conduct an act or omission by Defendants that is a breach of the duty owed to Plaintiff.

a.  Defendants herein, was required under 15 U.S.C. §1635 to respond to Plaintiffs request for rescission within 20 days.  Defendants did not.

b.  Defendants JPMorgan and DOE1, was required under RESPA to respond within statutory period, 20 business days to acknowledge receipt of a QWR and 60 days to provide a final answer.  Defendants JPMorgan and DOE1 did not.

c.  Defendants herein, was required under the Rosenthal Fair Debt Collection Practices Act to curtail contact that was not statutorily allowed and Defendants did contact which was statutorily prohibited.

183.  To be liable, the Plaintiff must sustain some injury and damages.

a.  DOE1 and OneWest have caused the real property security under the Plaintiffs loan to be sold under a power of sale under the Deed of Trust thereby causing the Plaintiff to lose his home, move and impair his credit.

b.  Plaintiff has been harassed by Defendants by repeatedly making phone calls as prohibited under the Rosenthal Fair Debt Collection Practices Act.  This has caused the Plaintiff apprehension and emotional distress causing the Plaintiff to be afraid to answer the phone and be subjected to further harassment.

184.  To be liable, Defendants breach must be a proximate cause of Plaintiff's injury and damage.

a.  Since Defendants obligation were based on statutes which they violated, Defendants are strictly liable as there is a presumption of negligence when a Defendant violates a statute, ordinance or regulation.

b.   Plaintiff contends that Defendants did not act reasonably with intent to obey the law.

185.   Plaintiff further contends that pursuant to California Civil Code §2338, principals are vicariously liable for the torts of their agents while transacting business of the agency.

186.   As a result of Defendants conduct, Plaintiff has suffered harm as proven hereto before and to be proven at trial.

187.   WHEREFORE, Plaintiff is entitled to all damages proximately caused by Defendants negligence as alleged herein, costs of suit and other relief as the Court deems just and proper.

### SIXTH CAUSE OF ACTION FOR CIVIL CONSPIRACY (TORT) AS TO ALL DEFENDANTS
**(Common Law and California Civil Code §1714(a))**

188.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

189.   A civil conspiracy is an agreement between two or more parties to deprive a third party of legal rights or deceive a third party to obtain an illegal objective.

190.   It is not necessary that the conspirators be involved in all stages of planning or be aware of all details.

191.   Plaintiff claims that they were harmed by Defendants intentional act that upon receipt of a TILA rescission request which contained a Qualified Written Request under RESPA and the assertion of rights under the Rosenthal Fair Debt Collection Practices Act, to delay any response thereby forcing the Plaintiff into litigation and to commit violations of various consumer protection statutes thereby using their financial dominance to prevent Plaintiff from asserting their consumer protection rights.

192.   A conspiracy is an agreement by two or more persons to commit a wrongful act. Such an agreement may be made orally or in writing or may be implied by the conduct of the parties.

193.   As a result of Defendants conduct, Plaintiff has suffered harm as proven hereto before and to be proven at trial.

194.   Most notable in the conspiracy is the absolute failure to provide the names of Defendants DOE1 and DOE2 by JPMorgan and OneWest, respectively, in an attempt to keep the Plaintiff from

exercising the rescission right under TILA.  OneWest has even gone as far as to complete the

foreclosure on the property all the while still not disclosing who the owner of the obligation is.  All

of the Defendants are systematically conspiring to evade all of the consumer protection statutes and

delay and evade in order to foreclose the Plaintiffs consumer protection statutes.

195.   WHEREFORE, Plaintiff is entitled to all damages proximately caused by Defendants civil

conspiracy as alleged herein, costs of suit and other relief as the Court deems just and proper.

**SEVENTH CAUSE OF ACTION FOR DECEIT**
**AS TO ALL JPMORGAN AND ONEWEST**
**(Common Law and California Civil Code §1709)**

196.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

197.   Deceit is when a Defendant willfully deceives another with the intent to alter his position to

his injury or risk and the Defendant is liable to the Plaintiff for the damages suffered as a result of

the deceit.

198.   Plaintiff contends that the category of deceit by Defendants is stated in Civ. Code §1710 as

the "suppression of a fact, by one who is bound to disclose it or who gives information of other

facts which are likely to mislead for want of communication of that fact, commonly referred to as

concealment."

199.   Specifically, JPMorgan and OneWest have continually refused to give the name, address and

telephone number of the owners of the obligation to which Plaintiff is obligated.  Plaintiff was

entitled to know that fact as stated under common law and specifically under 15 U.S.C. §1641(f)(2).

As such, they are bound to disclose said information and in concealing said information, Plaintiff

was unable to address this complaint with the real parties in interest and OneWest sold the property

at a foreclosure sale.

200.   As a direct result of the JPMorgan and OneWest's deceit, Plaintiff has lost his property and

credit and OneWest rushed to foreclose before disclosing who the real parties in interest were in an

attempt to foreclose the Plaintiffs action herein.

201.   WHEREFORE, Plaintiff is entitled to all damages proximately caused by Defendants deceit as alleged herein and should be required to return the Plaintiff back to a status quo, restitution, costs of suit and other relief as the Court deems just and proper.

### EIGHT CAUSE OF ACTION FOR CONSTRUCTIVE FRAUD
### AS TO ALL JPMORGAN AND ONEWEST
**(Common Law and California Civil Code §1573)**

202.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

203.   Constructive fraud consists of "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him…"

204.   Specifically, JPMorgan and OneWest have continually refused to give the name, address and telephone number of the owners of the obligation to which Plaintiff is obligated.  Plaintiff is entitled to know that fact as stated under common law and Defendants have a specific duty under 15 U.S.C. §1641(f)(2) to disclose said information under the statute .

205.   Their failure is done so as to gain an advantage over the Plaintiff and keep him from availing his consumer protection rights under the law.

206.   As such, they are bound to disclose said information and in concealing said information, Plaintiff was unable to address this complaint with the real parties in interest and OneWest sold the property at a foreclosure sale.

207.   As a direct result of the JPMorgan and OneWest's deceit, Plaintiff has lost his property and credit and OneWest rushed to foreclose before disclosing who the real parties in interest were in an attempt to foreclose the Plaintiffs action herein.

208.   WHEREFORE, Plaintiff is entitled to all damages proximately caused by Defendants constructive fraud as alleged herein and should be required to return the Plaintiff back to a status quo, restitution, costs of suit and other relief as the Court deems just and proper.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against each DOE1, jointly and severally, as follows:

1  A. For actual damages according to proof;

2  B. For compensatory damages as permitted by law;

3  C. For consequential damages as permitted by law;

4  D. For statutory damages as permitted by law;

5  E. For rescission;

6  F. For equitable relief, including restitution;

7  G. For restitutionary disgorgement of all profits DOE1 obtained as a result of their unfair

8  competition;

9  H. For interest as permitted by law;

10  I.  Injunctive relief

11  J. For reasonable attorneys' fees and costs; and

12  K. For such other relief as is just and proper.

13

14  Dated:  February 3, 2010          By:  /s/ Kimberlee A. Rode
                                       Kimberlee A. Rode, Attorney for
15                                     Shaunn A. Fullmer

**Exhibits**

| | |
|---|---|
| Exhibit A | Note and Deed of Trust to Winstar, currently owned by FHLMC |
| Exhibit B | September 30, 2008 letter to JPMorgan (QWR) and for rescission pursuant to TILA.  Certificate of Mailing from U.S. Post Office included. |
| Exhibit C | Statement from Chase |
| Exhibit D | Defective Notices of Right to Cancel provided Plaintiffs |
| Exhibit E | January 12, 2009 follow-up letter on QWR |
| Exhibit F | November 18, 2008 follow-up letter on QWR |
| Exhibit G | February 5, 2009 letter in response to QWR |

Constructive fraud consists:
   1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or,
   2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.

claims in which the defendant's actual or constructive awareness of an actual or potential Y2K failure is an element of the claim under applicable law do not include claims for negligence but do include claims such as fraud, constructive fraud, breach of fiduciary duty, negligent misrepresentation, and interference with contract or economic advantage.

Read more: http://vlex.com/vid/state-mind-bystander-liability-control-19231727#ixzz0eV9VzPvv